1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BERRY LYNN ADAMS, | Case No.: 10-CV-00602-LHK |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |
| v. | |
| DANIEL L. KRAFT, PHILLIP HAUCK, KIRK LINGENFELTER, K. P. BEST, J. I. STONE, CHIP BOCKMAN, R. CALLISON, and SCOTT SIPES, | |
| Defendants. | |

Plaintiff Berry Lynn Adams filed his First Amended Complaint (Dkt. No. 80, "FAC") on December 6, 2010. Defendants Best, Bockman, Callison, Hauck, Kraft, Lingenfelter, Sipes, and Stone (collectively "Defendants") move to dismiss Adams' FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 81 ("Mot."); *see also* Dkt. No. 91 ("Reply"). Adams opposes. Dkt. No. 89 ("Opp'n"). Pursuant to Civil Local Rule 7-1(b), the Court deems Defendants' motion suitable for disposition without oral argument. After considering the parties' submissions and the relevant legal authorities, the Court hereby GRANTS in part and DENIES in part Defendants' motion to dismiss.

## I. BACKGROUND

Plaintiff claims that Defendants, all California State Park Rangers, violated his constitutional rights. He alleges that his problems with California State Park Rangers began when,

1

United States District Court
For the Northern District of California

in 1985, the Rangers replaced the Santa Cruz Sheriff's Office in patrolling Seacliff State Park Beach and Pier.  FAC ¶ 5.  Plaintiff, a longtime surf fisher at Seacliff, claims that he never had any problems with the Sheriff's Office.  *Id.*  He alleges, however, that the Rangers have been, in contrast to the Sheriff's Office, oppressive and overbearing, especially towards those who regularly fish at Seacliff, and have sought to justify their continued employment by writing citations for even the most minor offenses.  *Id.*

Plaintiff's first claimed interaction with the Defendants occurred on February 15, 2008.  *Id.* ¶ 6.  Defendant Best issued a ticket to Plaintiff for unlawful possession of alcohol while he was parked in a public parking lot.  Best also allegedly commented to Plaintiff and others present that they were "all a bunch of criminals."  *Id.*  Plaintiff claims that due to evidence that Plaintiff was in fact drinking root beer, Best rescinded the ticket on March 3, 2008.  *Id.*  Best thereafter told Plaintiff that he had never before rescinded a ticket and that he would be watching Plaintiff in the future.  *Id.*

According to Plaintiff, his encounter with Best, a supervisor over several of the other Defendants, caused Best, Kraft, Hauck, Stone, Bockman, Callison, and Sipes to cooperate in a planned effort to punish Plaintiff for humiliating Best.  *Id.* ¶ 7.  As part of this alleged plan, Plaintiff claims that Rangers subjected him to nearly daily harassment and that Best, Kraft, Hauck, Stone, Bockman, Callison, and Sipes all called Plaintiff degrading names in front of others.  *Id.* Plaintiff also alleges several other specific incidents that resulted from Defendants' plan to exact revenge on behalf of Best.

First, on June 15, 2008, Kraft and Callison walked into the ocean in their uniforms to search Plaintiff's backpack.  *Id.*  During the search, Kraft allegedly told Plaintiff that, "My boss [Best] has not forgotten you."  *Id.*  Second, on July 8, 2008, Stone issued Plaintiff a parking citation for parking after the park had closed.  *Id.*  Plaintiff claims that Stone issued the citation without announcing that the park had closed and without issuing a warning.  *Id.*  Plaintiff further alleges that Stone refused to give citations to other parked vehicles and told Plaintiff that he was one of the park's worst offenders and needed to be taught a lesson.  *Id.*  Third, when Plaintiff attempted to warn Rangers of potential safety issues related to children jumping off the pier, Rangers rudely told

2

United States District Court
For the Northern District of California

Plaintiff to mind his own business. *Id.* Finally, on May 12, 2009, Stone and another Ranger accused Plaintiff of injuring a sea bird. *Id.* According to Plaintiff, if it had not been for eyewitnesses who spoke on his behalf, Stone would have arrested Plaintiff. *Id.* In response to these problems, Plaintiff claims that he contacted the Rangers' supervisor, Defendant Lingenfelter. *Id.* ¶ 8. Plaintiff alleges that Lingenfelter, instead of correcting the problem, did nothing to stop the other Defendants from harassing him. *Id.*

Plaintiff's next alleged negative interaction with Defendants occurred after he gave an interview to a news channel on June 22, 2009. *Id.* ¶ 9. Plaintiff told the interviewer that the state of California could save a lot of money by getting rid of State Park Rangers and returning beach patrolling responsibility to the Sheriff's Office. *Id.* In the interview, Plaintiff claims to have been highly critical of the way the Rangers patrolled Seacliff. *Id.* After the interview, he crossed paths with Greg Inloes. *Id.* ¶ 10. Plaintiff claims to have been upset with Inloes because Inloes had shared, without Plaintiff's permission, information about Plaintiff's new fishing lure with the Western Outdoor News. *Id.* According to Plaintiff, the two argued, and Plaintiff threatened to sue Inloes if he ever mentioned his name to the Western Outdoor News again. *Id.*

Plaintiff alleges that Inloes subsequently complained to Kraft two days later and that Kraft, Best, and Lingenfelter encouraged Inloes to provide the Rangers a statement. *Id.* ¶ 11. According to Plaintiff, Inloes' resulting 9-page statement was filled with lies. *Id.* Plaintiff claims that had Kraft, Best, Lingenfelter, and Hauck investigated the truth of Inloes' statement, they would have discovered that it contained false allegations. *Id.* In addition, Plaintiff alleges that the statement, even taken as true, did not contain any grounds for instituting criminal charges against Plaintiff. Nevertheless, according to Plaintiff, Kraft, Hauck, Stone, Sipes and Bockman, along with three other Rangers, arrived at the pier where Plaintiff was fishing and asked Plaintiff to come with them. *Id.* ¶ 14. After Plaintiff refused, Hauck then informed Plaintiff that they were arresting him for having made a criminal threat. *Id.*

Once informed that he was under arrest, Plaintiff attempted to put down his bag of potato chips. *Id.* ¶ 16. Plaintiff alleges that as he did so, Kraft kicked Plaintiff's right hand and injured Plaintiff's wrist. *Id.* When Plaintiff asked Kraft about the kick, Kraft allegedly grabbed Plaintiff

3

by the left arm and forced him into a pain compliance hold.  *Id.* ¶ 17.  According to Plaintiff, none of the other Rangers intervened.  *Id.*  Hauck and Kraft then arrested Plaintiff for resisting arrest.  *Id.* A Superior Court judge later dismissed the charges against Plaintiff for resisting arrest and for disturbing the peace.  *Id.*

Plaintiff claims that Kraft, Hauck, Lingenfelter, and Best all agreed to and did in fact misrepresent to the Santa Cruz District Attorney the facts regarding Plaintiff's confrontation with Inloes.  *Id.* ¶ 19.  According to Plaintiff, Kraft, Hauck, Lingenfelter, and Best suppressed Inloes' actual 9-page complaint to ensure that the District Attorney prosecuted Plaintiff's case.  *Id.*  The existence of Inloes' complaint was only revealed inadvertently by Kraft during Plaintiff's September 2009 jury trial.  *Id.*  Plaintiff also claims that Kraft and Lingenfelter wrote letters to the District Attorney insisting that the District Attorney bring a restraining order action against Plaintiff to bar him from entering public beaches at Seacliff, Rio del Mar, and New Brighton.  *Id.* ¶ 21.  According to Plaintiff, the letters were full of lies.  *Id.*  The judge refused to issue the injunction.  *Id.*

The last alleged incident occurred on July 31, 2009 while Plaintiff was fishing with others at Seacliff.  *Id.* ¶ 22.  Apparently, Plaintiff complained to a State Park Lifeguard that another fisherman was crossing his line with the lines of Plaintiff and others on the pier.  *Id.*  Plaintiff alleges that after expressing his complaint, Kraft, Best, and Callison told Plaintiff that he was being ejected from Seacliff for disturbing the peace and shouting at the lifeguards.  *Id.*  Despite the claims of witnesses that Plaintiff had not yelled or disturbed the peace, Kraft, Best, and Callison ejected Plaintiff from Seacliff.  *Id.*

Based on these allegations, Plaintiff makes four claims for relief.  First, against all Defendants, Plaintiff seeks damages for violations of the First, Fourth, and Fourteenth Amendments of the United States Constitution and of Article 1 Sections 1, 2, 3, 7, 13, and 25 of the Constitution of the State of California.  Second, against Kraft, Hauck, Stone, Sipes, Bockman, Best, and Lingenfelter, Plaintiff seeks damages for false arrest.  Third, Plaintiff seeks damages for Bane Act violations against all Defendants.  Fourth, Plaintiff seeks damages against Lingefelter, Best, and Kraft for failure to train/supervise.

4

## II.  LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955; 167 L. Ed. 2d 929 (2007) (citations omitted).  "[D]ismissal for failure to state a claim is 'proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.'"  *Shroyer v. New Cingular Wireless Servs.*, 606 F.3d 658, 664 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citations and alterations omitted).  "[A] complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to 'state a claim to relief that is plausible on its face.'"  *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949 (citation omitted).  "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."  *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)) (quotation marks and alterations omitted).

"[I]n dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'"  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  However, "a district court does not err in denying leave to amend where the amendment would be futile."  *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004)

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDATS' MOTION TO DISMISS

1  (quoting *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991)) (quotation marks and alterations

2  omitted).

### III.  ANALYSIS

4  Defendants represent that they are willing to answer Plaintiff's complaint to the extent that

5  it asserts a Fourth Amendment violation against Hauck and Kraft for excessive force and false

6  arrest.  Mot. 2.  As to Plaintiff's other causes of action, Defendants move to dismiss those claims

7  with prejudice.  *Id.*  Defendants make a number of arguments in favor of their motion.  Because the

8  Court's acceptance of some of these arguments negates the need to consider others, the Court will

9  only fully address those arguments necessary to resolving Defendants' pending motion.

### A.  First Amendment

11  Defendants argue that Plaintiff fails to allege sufficient facts to support his claim for

12  violations of the First Amendment.  Mot. 3-4.  Defendants claim that Plaintiff's "contentions are

13  conclusory, speculative, and call for unreasonable inferences."  *Id.* at 4.

14  In his FAC, Plaintiff alleges that Defendants deprived him of and punished him for the

15  exercise of his First Amendment rights, including the right to publicly criticize the State Park

16  Rangers without fear of retaliation, the right to meet and assemble, and the right to petition for

17  redress of his grievances.  FAC ¶ 24.  "The First Amendment forbids government officials from

18  retaliating against individuals for speaking out."  *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th

19  Cir. 2010) (citing *Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L. Ed. 2d 441

20  (2006); *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)).  A claim under § 1983 for

21  such retaliation has three elements: (1) the plaintiff engaged in activity that is constitutionally

22  protected; "(2) as a result, he was subjected to adverse action by the defendant that would chill a

23  person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a

24  substantial causal relationship between the constitutionally protected activity and the adverse

25  action."  *Id.* (citing *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)); *see also*

26  *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006) (holding that "[t]o

27  demonstrate retaliation in violation of the First Amendment," a plaintiff "must ultimately prove

28  first that" the defendant "took action that 'would chill or silence a person of ordinary firmness from

6

1  future First Amendment activities[,]' and second that the defendant's "desire to cause the chilling

2  effect was a but-for cause of the defendant's action." (footnotes omitted)).  Among the

3  "prototypical" plaintiffs described by the court in *Blair* were "citizens who are allegedly targeted

4  by law enforcement because of their political speech activities."  *Id.* at 544 (citing *Mendocino*

5  *Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1288-89 (9th Cir. 1999)).

6      In his FAC, Plaintiff claims that he engaged in several forms of protected speech, including

7  criticizing the State Park Rangers and petitioning their supervisor for a change in the Rangers'

8  patrol behavior.  These activities constitute protected speech, *see CarePartners LLC v. Lashway*,

9  545 F.3d 867, 876-77 (9th Cir. 2008) (holding that the right to petition the government for redress

10  of grievances is a protected First Amendment right); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d

11  1310, 1314 (9th Cir. 1989) (observing that it was undisputed that the plaintiff had a protected

12  interest in commenting on the actions of government officials), a fact that Defendants do not

13  appear to contest.  Thus, Plaintiff appears to be a prototypical plaintiff as described by the court in

14  *Mendocino*.

15      Nevertheless, Defendants argue that Plaintiff has failed to make sufficient factual

16  allegations to support the third element of his claim: that Defendants' actions were substantially

17  caused by Plaintiff's protected speech activities.  The central theory of Plaintiff's First Amendment

18  claim is that Defendants knew of Plaintiff's criticism of the Rangers and, as a result, retaliated

19  against Plaintiff.  Although Plaintiff concludes at several points in his FAC that Defendants knew

20  of his criticisms, *see* FAC ¶¶ 7, 9, 21, none of these statements is supported by factual allegations

21  as to what Plaintiff was saying and how Defendants would have learned of his complaints.  Even

22  though Plaintiff need not support his claim with detailed allegations, Plaintiff fails to provide even

23  circumstantial allegations that there was a substantial relationship between Plaintiff's criticism and

24  Defendants' alleged conduct.  As a result, the Court cannot reasonably conclude based on the

25  allegations in Plaintiff's FAC that Plaintiff's criticism was a substantial cause of Defendants'

26  alleged conduct.

27      In his opposition, Plaintiff claims that his FAC alleges facts showing that Best did in fact

28  possess a personal reason to direct his subordinates to harass Plaintiff.  Opp'n 5.  Plaintiff points to

**United States District Court**
For the Northern District of California

7

United States District Court
For the Northern District of California

the alleged incident where Best was forced to rescind a citation that he had issued to Plaintiff and argues that his complaints led to the rescission.  Plaintiff further claims that Best thereafter led a concerted effort to exact revenge on Plaintiff.  Even though this theory would present a much stronger claim against Best, the allegations in Plaintiff's FAC do not support this theory.  In his FAC, Plaintiff alleges that Best "was forced to rescind the ticket due to 'Office Error' . . . on account of the overwhelming evidence from eyewitnesses."  FAC ¶ 6.  Plaintiff does not, however, allege that he personally sought redress or participated in the effort to have the ticket rescinded.  Because he does not allege that he engaged in a constitutionally protected activity that led to Best's retaliatory actions, Plaintiff's argument fails to support his First Amendment retaliation claim.

Accordingly, Plaintiff's First Amendment claim against all Defendants is dismissed with leave to amend.  If Plaintiff chooses to amend this claim, he must allege facts that allow the Court to reasonably infer that each individual Defendant acted to chill Plaintiff's speech because of Plaintiff's constitutionally protected activities.[1]  Moreover, any amended complaint must contain facts showing that each individual Defendant committed acts that would chill a person of ordinary firmness from continuing to engage in protected speech activities.

**B.  Conspiracy to Violate the First Amendment**

Defendants move to dismiss Plaintiff's claim that Defendants conspired to violate Plaintiff's First Amendment rights.  Mot. 5-7.  Defendants argue that Plaintiff fails to allege sufficient facts to support his claim.  *Id.*  Plaintiff contends that his allegations are sufficient to state a claim.  Opp'n 7-8.  In his FAC, Plaintiff alleges that several Defendants entered into a conspiracy after Best was forced to rescind the citation that he had issued to Plaintiff.  FAC ¶ 7.  According to

---

[1] It also appears that Plaintiff may be pleading a First Amendment retaliatory prosecution claim. "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695; 164 L. Ed. 2d 441 (2006) (citing *Crawford-El v. Britton*, 523 U.S. 574, 592, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998)).  Thus, a plaintiff can maintain a § 1983 claim for First Amendment retaliatory prosecution against non-prosecutor officials only if a plaintiff alleges facts to support the inference that the defendants "secured his . . . prosecution without probable cause and were motivated by retaliation against the plaintiff's protected speech."  *See Beck v. City of Upland*, 527 F.3d 853, 863-64 (9th Cir. 2008) (interpreting *Hartman*).  Plaintiff's First Amendment retaliatory prosecution claim fails because he has not pled sufficient facts showing that each individual Defendant was motivated by retaliation against his protected speech.

1    Plaintiff's FAC, this conspiracy was a plan to "punish and retaliate against" Plaintiff for

2    humiliating Best and speaking critically of the Rangers that patrolled Seacliff.  *Id.*

3         "To establish liability for a conspiracy in a § 1983 case, a plaintiff must 'demonstrate the

4    existence of an agreement or meeting of the minds' to violate constitutional rights." *Crowe v.*

5    *Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Mendocino Envtl. Ctr.*, 192 F.3d at

6    1301).  "Such an agreement need not be overt, and may be inferred on the basis of circumstantial

7    evidence such as the actions of the defendants." *Id.* (quoting *Mendocino Envtl. Ctr.*, 192 F.3d at

8    1301) (quotation marks omitted).  "Whether defendants were involved in an unlawful conspiracy is

9    generally a factual issue . . . ." *Mendocino Envtl. Ctr.*, 192 F.3d at 1301-02 (citation omitted).

10   Nevertheless, "the plaintiff must state specific facts to support the existence of the claimed

11   conspiracy." *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989) (citing *Coverdell v. Dept.*

12   *of Social and Health Servs.*, 834 F.2d 758, 769 (9th Cir. 1987)); *see also Maceachern v. City of*

13   *Manhattan Beach*, 623 F. Supp. 2d 1092, 1110 (C.D. Cal. 2009) (citing *Burns* and holding the

14   same).  "To be liable, each participant in the conspiracy need not know the exact details of the

15   plan, but each participant must at least share the common objective of the conspiracy." *Id.*

16   (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989)

17   (en banc)) (quotation marks omitted).  In addition, a plaintiff must show that an "actual deprivation

18   of his constitutional rights resulted from the alleged conspiracy." *See Hart v. Parks*, 450 F.3d

19   1059, 1071-72 (9th Cir. 2006) (quoting *Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1126 (9th

20   Cir. 1989)) (quotation marks omitted).

21        Here, Plaintiff's claim fails because he does not allege sufficient facts to support a

22   reasonable inference that Defendants entered into an agreement to deprive him of his First

23   Amendment rights.  Plaintiff's FAC does provide circumstantial allegations supporting the

24   existence of an agreement between Best and his subordinates to punish Plaintiff for the rescinded

25   ticket.  Even accepting that this agreement occurred, however, it is not clear why this leads to a

26   reasonable inference that Defendants agreed to violate Plaintiff's First Amendment rights.

27   Defendants could have agreed to punish Plaintiff in many ways without agreeing to violate any of

28   his constitutional rights.

9

**United States District Court**
For the Northern District of California

1    Plaintiff's other theory, that Best and others conspired to punish Plaintiff for criticizing the

2    Rangers, is a stronger foundation for a First Amendment conspiracy claim.  "[G]overnment

3    officials violate [the First Amendment] when their acts 'would chill or silence a person of ordinary

4    firmness from future First Amendment activities.'"  *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir.

5    2000) (quoting *Mendocino Envtl. Ctr.*, 192 F.3d at 1300); *see also Petersen v. Cazemier*, 164 F.

6    Supp. 2d 1217, 1222-23 (D. Or. 2001) (holding that actions which would chill an individual's

7    exercise of his First Amendment rights constitutes a deprivation of that individual's First

8    Amendment rights).  If Best and others did conspire to punish Plaintiff for openly complaining

9    about the Rangers, it would be reasonable to infer that the purpose of such an agreement was to

10   keep Plaintiff from speaking out against the Rangers in the future.  This would be an agreement to

11   violate Plaintiff's First Amendment rights.  As outlined in the Court's discussion of Plaintiff's First

12   Amendment claim above, however, Plaintiff has not alleged facts supporting a reasonable inference

13   that Plaintiff's outspoken criticism of the Rangers caused Defendants to enter into an agreement.

14   Without sufficient allegations to support this inference, Plaintiff's FAC does not support a theory

15   that Defendants conspired to silence him from making future statements.  Thus, Plaintiff has not

16   alleged sufficient facts to support a reasonable inference that Defendants conspired to chill his

17   speech and thereby deprive him of his First Amendment rights.

18        As a result, Plaintiff's First Amendment conspiracy claim is dismissed with leave to amend.

19   If Plaintiff chooses to amend this claim, he must allege specific facts to support a reasonable

20   inference that each individual Defendant entered into an agreement with the others to deprive

21   Plaintiff of his First Amendment rights.

22        **C. Fourth Amendment**

23        Plaintiff alleges in his FAC that Defendants' actions deprived him of his Fourth

24   Amendment rights "to be free from unlawful, unreasonable, discriminatory and excessive force,

25   harassment, search, seizure and retaliatory criminal prosecution."  FAC ¶ 27.  Defendants argue

26   that the Fourth Amendment provides no basis for a retaliatory criminal prosecution claim against

27   Defendants, Mot. 9, and Plaintiff provides no legal support or argument in defense of his Fourth

28   Amendment retaliatory prosecution claim, *see* Opp'n 8-9.  Although there is authority that a

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDATS' MOTION TO DISMISS

**United States District Court**
For the Northern District of California

1  plaintiff may maintain a § 1983 claim for retaliatory prosecutions against investigating officers

2  who wrongfully caused the prosecution,[2] the Court is not aware of any authority holding that

3  individuals have a Fourth Amendment right to be free from "retaliatory criminal prosecution."

4  Therefore, Plaintiff's Fourth Amendment retaliatory criminal prosecution claim is dismissed with

5  prejudice.

6       Plaintiff's Fourth Amendment search claim also fails.  "The Fourth Amendment protects

7  the 'right of the people to be secure in their persons, houses, papers, and effects, against

8  unreasonable searches and seizures.'"  *Freece v. Clackamas Cnty.*, 442 F. Supp. 2d 1080, 1086 (D.

9  Or. 2006).  "To show that an official has violated the Fourth Amendment, a plaintiff must show

10  that a search or seizure occurred, and that the search or seizure was unreasonable." *Id.* (citing

11  *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989)).  Even

12  though Plaintiff does allege that Kraft and Callison searched his backpack, FAC ¶ 7, Plaintiff has

13  not alleged supporting facts that the search was unreasonable or unconstitutional.  Therefore,

14  Plaintiff's Fourth Amendment search claim is dismissed with leave to amend as to Kraft and

15  Callison.  Plaintiff's Fourth Amendment search claim is dismissed with prejudice as to the other

16  Defendants.

17       What remains of Plaintiff's Fourth Amendment claims are Plaintiff's unlawful arrest and

18  excessive force claims, which arise out of his June 24, 2009 arrest.  "A claim for unlawful arrest is

19  cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without

20  probable cause or other justification." *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959,

21  964-65 (9th Cir. 2001) (citing *Larson v. Neimi*, 9 F.3d 1397, 1400 (9th Cir. 1993)).  Warrantless

22  arrests also require probable cause. *See United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir.

23  2007) ("Under the Fourth Amendment, a warrantless arrest requires probable cause." (citing

24  *Michigan v. Summers*, 452 U.S. 692, 700, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981))); *United

25  States v. Brobst*, 558 F.3d 982, 990 (9th Cir. 2009) ("[A] 'warrantless arrest satisfies the

26  Constitution so long as the officer has probable cause to believe that the suspect has committed or

27  is committing a crime.'" (quoting *Virginia v. Moore*, 553 U.S. 164, 128 S. Ct. 1598, 1605, 170 L.

28

---

[2] *See supra* Part III.A note 1.

11

Ed. 2d 559 (2008)).  "Probable cause exists when, at the time of arrest, the agents know reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense."  *Allen v. City of Portland*, 73 F.3d 232, 237 (9th Cir. 1996) (citing *Delgadillo-Velasquez*, 856 F.2d 1292, 1296 (9th Cir. 1988)).

In analyzing a Fourth Amendment claim of excessive force, the court balances "the 'nature and quality of the intrusion' on a person's liberty with the 'countervailing governmental interests at stake' to determine whether the use of force was objectively reasonable under the circumstances."  *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (quoting *Graham v. Connor*, 490 U.S. 386, 396, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989)).  "Determining whether a police officer's use of force was reasonable or excessive therefore 'requires careful attention to the facts and circumstances of each particular case' and a 'careful balancing' of an individual's liberty with the government's interest in the application of force."  *Id.* (quotation omitted).

Defendants do not challenge the sufficiency of Plaintiff's pleadings as to his Fourth Amendment excessive force and unlawful arrest claims against Hauck and Kraft.  Mot. 7.  They do, however, dispute that Plaintiff has properly stated an excessive force or unlawful arrest claim against the other Defendants.  *Id.*  Defendants argue that besides Hauck and Kraft, the other Defendants alleged to have been at the pier were mere bystanders and are not liable under § 1983 for the actions of Hauck and Kraft.  *Id.* at 8.

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States."  *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988) (citations omitted).  "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which the plaintiff complains.'"  *Id.* at 633 (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)) (alterations omitted).  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  *Id.*

12

United States District Court
For the Northern District of California

1    The Ninth Circuit has "reject[ed] the idea that mere presence at a search or membership in a

2  group, without personal involvement in and a causal connection to the unlawful act, can create

3  liability under section 1983." *Jones v. Williams*, 297 F.3d 930, 939 (9th Cir. 2002).  As a result,

4  the Ninth Circuit "require[s] 'integral participation' by each officer as a predicate to liability."

5  *Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004) (citation omitted).  Nevertheless,

6  "'integral participation' does not require that each officer's actions themselves rise to the level of a

7  constitutional violation." *Id.*  "But it does require some fundamental involvement in the conduct

8  that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th

9  Cir. 2007) (citing *Boyd*, 374 F.3d at 780).  Furthermore, "police officers have a duty to intercede

10  when their fellow officers violate the constitutional rights of a suspect or other citizen."

11  *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (quotation and quotation marks

12  omitted).  "Importantly, however, officers can be held liable for failing to intercede only if they had

13  an opportunity to intercede." *Id.* at 1289-90 (citations omitted).

14    Here, only Hauck and Kraft are alleged to have had any direct contact with Plaintiff on June

15  24, 2009.  Hauck allegedly informed Plaintiff that he was under arrest for having made a criminal

16  threat, and Kraft allegedly kicked Plaintiff and placed him in a pain compliance hold.  FAC ¶¶ 14-

17  17.  Plaintiff alleges that Defendants Stone, Sipes, and Bockman, along with three other Rangers,

18  arrived at the pier along with Hauck and Kraft.  Plaintiff also claims that Lingenfelter and Best had

19  supervisory authority over the other Defendants.  Plaintiff, however, makes no allegations

20  connecting Callison to the June 24, 2009 arrest.  The question then is whether Plaintiff's FAC

21  states a Fourth Amendment claim against Stone, Sipes, Bockman, Lingenfelter, Best, or Callison

22  under either an "integral participation" or "duty to intercede" theory.

23    Plaintiff has stated an unlawful arrest claim against not only Kraft and Hauck, but also

24  against Stone, Sipes, and Bockman.  Plaintiff alleges in his FAC that Kraft and Hauck ultimately

25  arrested him for resisting arrest, a charge he claims was entirely baseless.  FAC ¶¶15-17.  In

26  addition, Plaintiff claims that Sipes, Stone, and Bockman witnessed his arrest.  *See id.* ¶ 18.

27  Accepting Plaintiff's allegations as true, Sipes, Stone, and Bockman all had the opportunity to

28  intercede and stop Hauck and Kraft from allegedly arresting Plaintiff without probable cause.

13

United States District Court
For the Northern District of California

1   Therefore, Plaintiff has stated a Fourth Amendment unlawful arrest claim against Sipes, Stone, and

2   Bockman.[3]  Plaintiff's unlawful arrest claims against Best, Lingenfelter, and Callison fail because

3   they are not alleged to have played a fundamental role or had an opportunity to intercede in

4   Plaintiff's arrest.  Because Plaintiff claims that Best and Lingenfelter had a supervisory role of

5   some of the Defendants, his unlawful arrest claims against them are dismissed with leave to amend.

6   Plaintiff, however, makes no allegations connecting Callison to the arrest.  As a result, Plaintiff's

7   unlawful arrest claim against Callison is dismissed with prejudice.

8        Plaintiff's excessive force claim against Defendants other than Hauck and Kraft fails

9   because Plaintiff's FAC does not allege facts showing that the Defendants other than Hauck and

10  Kraft had an opportunity to intercede when Hauck and Kraft allegedly violated Plaintiff's Fourth

11  Amendment rights.  Plaintiff alleges in his FAC that after Hauck told Plaintiff that Plaintiff was

12  under arrest, Kraft kicked Plaintiff's right hand and forced Plaintiff into a pain compliance hold.

13  FAC ¶¶ 16-17.  Although it is possible that Kraft could have held Plaintiff in the compliance hold

14  for long enough that Stone, Sipes, and Bockman could have interceded, Plaintiff's FAC fails to

15  provide factual allegations to support this theory.  As for Kraft's kick to Plaintiff's hand, Stone,

16  Sipes, and Bockman would not have had an opportunity to intercede because the alleged

17  constitutional violation occurred quickly and without warning.  Therefore, Plaintiff's excessive

18  force claims against Stone, Sipes, and Bockman are dismissed with leave to amend.  Even though

19  Lingenfelter and Best were not present at the arrest, Plaintiff alleges that Best and Lingenfelter may

20  be liable for Fourth Amendment violations under supervisor and failure to train theories.

21  Therefore, Plaintiff's excessive force claims against Best and Lingenfelter are dismissed with leave

22  to amend.  Because Plaintiff's FAC contains no allegations connecting Callison to the June 24,

23  2009 arrest, Plaintiff's excessive force claim against Callison is dismissed with prejudice.

24

25  [3] Plaintiff alleges in his FAC that Hauck told him that he was under arrest for a felony violation of
26  California Penal Code § 422.  FAC ¶ 14.  It is not clear from Plaintiff's FAC, however, whether the
    Rangers actually arrested and charged Plaintiff on June 24, 2009 for his alleged felony violation of
27  § 422.  Even assuming that the Rangers did arrest Plaintiff for a felony violation of § 422, Plaintiff
    has not pled facts showing that Stone, Sipes, and Bockman were aware of the alleged lack of
28  probable cause for this arrest.  Therefore, Plaintiff has stated an unlawful arrest claim against
    Stone, Sipes, and Bockman only for the arrest based on Plaintiff's resistance to arrest.

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDATS' MOTION TO DISMISS

**United States District Court**
For the Northern District of California

1    In summary, Defendants' motion to dismiss Plaintiff's Fourth Amendment unlawful arrest

2    claims against Stone, Sipes, and Bockman is denied.  Plaintiff's Fourth Amendment excessive

3    force and unlawful arrest claims against Lingenfelter and Best are dismissed with leave to amend.

4    Plaintiff's Fourth Amendment claims for excessive force against Stone, Sipes, and Bockman are

5    also dismissed with leave to amend.  Plaintiff's Fourth Amendment excessive force and unlawful

6    arrest claims against Callison are dismissed with prejudice.

7        **D. Fourteenth Amendment**

8        Defendants argue that there is no basis for Plaintiff's Fourteenth Amendment claim.  Mot.

9    4-5.  In response, Plaintiff cites Article 1, Section 25 of the California Constitution[4] and argues that

10   Defendants' conduct violated his substantive due process right to be free to fish upon and from the

11   public land of the state.  Opp'n 9-10.  Defendants point out in their reply brief that Plaintiff did not

12   allege substantive due process in his complaint.  Reply 4-5.  Rather, Plaintiff's claims in his FAC

13   that Defendants deprived him of his Fourteenth Amendment "rights to the pursuit of happiness and

14   the right to due process to pursue his means of providing food for him and his mother."  FAC ¶ 28.

15   Thus, it is not entirely clear what is the basis for Plaintiff's Fourteenth Amendment claim.  As a

16   result, Plaintiff fails to give Defendants proper notice of his claim against them.  Therefore,

17   Plaintiff's Fourteenth Amendment claim is dismissed with leave to amend.

18       Even accepting that Plaintiff's FAC alleges a substantive due process basis for his

19   Fourteenth Amendment claim, it is not clear that Plaintiff has stated a valid claim for relief.

20   "Substantive due process forbids the government from depriving a person of life, liberty, or

21   property in such a way that 'shocks the conscience' or 'interferes with the rights implicit in the

22   concept of ordered liberty.'"  *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (quoting *Nunez*

23   *v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998)) (internal quotation marks omitted).  "To

24   establish a violation of substantive due process, a plaintiff must first show a deprivation of some

---

[4] "The people shall have the right to fish upon and from the public lands of the State and in the
waters thereof, excepting upon lands set aside for fish hatcheries, and no land owned by the State
shall ever be sold or transferred without reserving in the people the absolute right to fish thereupon;
and no law shall ever be passed making it a crime for the people to enter upon the public lands
within this State for the purpose of fishing in any water containing fish that have been planted
therein by the State; provided, that the Legislature may by statute, provide for the season when and
the conditions under which the different species of fish may be taken."  CAL. CONST. art. I, § 25.

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDATS' MOTION TO DISMISS

1   fundamental right or liberty interest that is 'deeply rooted in this Nation's history and tradition.'"

2   *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1061 (9th Cir. 2006) (quoting *Washington v.*

3   *Glucksberg*, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 117 S. Ct. 2302, 138 L. Ed. 2d 772 (1997)).

4   Plaintiff has not cited any authority for the proposition that the right to fish is a liberty or property

5   interest protected by the Fourteenth Amendment of the United States Constitution.

6      **E.  Supervisor Liability and False Arrest**

7      Defendants argues that Plaintiff's claims for supervisor liability (under Plaintiff's First

8   Claim for Damages), false arrest (Plaintiff's Second Claim for Damages), and failure to

9   train/supervise (Plaintiff's Fourth Claim for Damages) should be dismissed.  Mot. 10-11.

10   Defendants claim that Plaintiff has failed to specify in those claims exactly what right Defendants

11   violated and that this renders Defendants unable to assert their qualified immunity defenses.  *Id.*

12   This lack of specificity is most obviously true of Plaintiff's Second Claim for Damages – False

13   Arrest.  Although Plaintiff argues in its opposition brief that his Second Claim is clearly a claim for

14   false arrest under state law, Opp'n 12, the Court finds no statement in Plaintiff's FAC that clearly

15   announces the basis for Plaintiff's false arrest claim.  Therefore, Plaintiff's Second Claim for

16   Damages against Kraft, Hauck, Stone, Sipes, Bockman, Best, and Lingenfelter is dismissed with

17   leave to amend.

18      Defendants' first argument is not as clearly applicable to Plaintiff's claims for supervisor

19   liability.  Although Plaintiff's supervisor liability claim against Best, Lingenfelter, and Kraft could

20   be drafted more artfully, the claim does reference "the constitutional deprivations of which plaintiff

21   complained" and "the herein before stated constitutional injuries."  *See* FAC ¶ 31.  This would

22   seem to incorporate Plaintiff's earlier allegations that Defendants violated his First, Fourth, and

23   Fourteenth Amendment rights.

24      Nevertheless, the Court is sympathetic to Defendants' interest in having their alleged

25   constitutional violations clearly outlined in Plaintiff's complaint.  "Government officials who

26   perform discretionary functions generally are entitled to qualified immunity from liability for civil

27   damages 'insofar as their conduct does not violate clearly established statutory or constitutional

28   rights of which a reasonable person would have known.'"  *Flores v. Morgan Hill Unified Sch.*

United States District Court
For the Northern District of California

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDATS' MOTION TO DISMISS

*Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  "The plaintiff bears the initial burden of proving that the right was clearly established."  *Sweaney v. Ada Cnty.*, 119 F.3d 1385, 1388 (9th Cir. 1997) (citing *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991)).  By not clearly delineating which constitutional violations Best, Lingenfelter, and Kraft supervised, Plaintiff has made it unnecessarily difficult for Defendants to determine whether they can assert their qualified immunity defense before taking on the burden of discovery.  In his opposition brief, Plaintiff showed that he is quite capable of detailing the constitutional bases for his supervisor liability claim.  *See* Opp'n 11.  Similarly, Plaintiff has failed to identify the alleged constitutional violations of Best, Lingenfelter, and Kraft in Plaintiff's Fourth Claim for Damages – Failure to Train/Supervise.  Accordingly, Plaintiff's claims against Best, Lingenfelter, and Kraft for supervisor liability and failure to train/supervise are dismissed with leave to amend.[5]

### F. Claim Compliance

Defendants argue that Plaintiff's state law causes of action must be dismissed because Plaintiff has failed to plead that he filed a claim in compliance with California Government Code § 945.4. Mot. 12-13.  Section 945.5 requires that those who wish to sue a public employee based on acts or omissions within the scope of the employee's employment must first file a claim against that employee's public-entity employer.  *See Briggs v. Lawrence*, 230 Cal. App. 3d 605, 612-13 (1991); *see also Dennis v. Thurman*, 959 F. Supp. 1253, 1264 (C.D. Cal. 1997) ("When defendants are public employees, the plaintiff must first submit a written claim to the public entity that employs them before filing a lawsuit seeking monetary damages for violations of California law." (citing CAL. GOV'T CODE §§ 945.4, 950.2)).  Failure to allege compliance with § 945.5 results in dismissal of the plaintiff's state law claims.  *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988) (dismissing plaintiff's claims against public employees and entities for failure to allege compliance with California tort claim procedures).

---

[5] If Plaintiff chooses to amend these claims, he should note Defendants' contention that there are insufficient factual allegations that Best, Kraft, and Lingenfelter were responsible to train or supervise those officers who allegedly violated Plaintiff's constitutional rights.  *See* Mot. 11.

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDATS' MOTION TO DISMISS

1    Plaintiff concedes that pleading claim compliance is necessary and claims that his failure to

2    allege compliance with § 945.4 was a mere oversight.  Opp'n 13.  Because Plaintiff has not alleged

3    compliance with § 945.4, all of Plaintiff's state law claims are dismissed with leave to amend.  If

4    Plaintiff chooses to amend his complaint and reassert his state law claims, he shall do so

5    recognizing the requirements of California Government Code § 911.2.  That section requires that if

6    Plaintiff's state law claims are for injury to his person or personal property, they must have been

7    presented in accordance with § 945.4 not later than six months after the accrual of the cause of

8    action.  CAL. GOV'T. CODE § 911.2(a).  If Plaintiff's state law claims relate to any other cause of

9    action, they must have been presented in accordance with § 945.4 not later than one year after the

10   accrual of the cause of action.  *Id.*

11   **G.  Bane Act**

12    In his Third Claim for Damages, Plaintiff alleges that all Defendants violated the Bane Act,

13   California Civil Code § 52.1(b).[6]  FAC ¶¶ 42-44.  "The essence of a Bane Act claim is that the

14   defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did

15   prevent the plaintiff from doing something he or she had the right to do under the law or to force

16   the plaintiff to do something that he or she was not required to do under the law."  *Austin B. v.*

17   *Escondido Union School Dist.*, 149 Cal. App. 4th 860, 883, 57 Cal. Rptr. 3d 454 (2007) (citation

18   omitted).  Defendants argue that Plaintiff's Bane Act claim against all Defendants other than

19   Hauck and Kraft must be dismissed because Plaintiff fails to allege that Defendants engaged in any

20   conduct other than speech.  Mot. 11-12.  Under California Civil Code § 52.1(j),[7] unless "the speech

21

22   _____

[6] "Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the
23   United States, or of rights secured by the Constitution or laws of this state, has been interfered
     with, or attempted to be interfered with, as described in subdivision (a) [by threats, intimidation, or
24   coercion], may institute and prosecute in his or her own name and on his or her own behalf a civil
     action for damages, including, but not limited to, damages under Section 52, injunctive relief, and
25   other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or
     rights secured."  CAL. CIV. CODE § 52.1(b).
26   [7] "Speech alone is not sufficient to support an action brought pursuant to subdivision (a) or (b),
     except upon a showing that the speech itself threatens violence against a specific person or group
27   of persons; and the person or group of persons against whom the threat is directed reasonably fears
     that, because of the speech, violence will be committed against them or their property and that the
28   person threatening violence had the apparent ability to carry out the threat."  CAL. CIV. CODE
     § 52.1(j).

18

1   . . . threatens violence against a specific person," "[s]peech alone is not sufficient to support an

2   action brought pursuant to" the Bane Act.

3       Plaintiff does not dispute the requirement that he must allege conduct beyond speech to

4   sustain a Bane Act claim.  Rather, Plaintiff argues that he has alleged in his FAC that Defendants

5   retaliated against him using more than just words.  Opp'n 12-13.  Plaintiff claims that Defendants

6   conspired to punish him for his outspoken criticism of the Rangers.  *Id.*  According to Plaintiff, this

7   punishment included searching his backpack without probable cause, selectively issuing him

8   citations, ordering him to leave Seacliff Beach on threat of arrest, and arresting him without

9   probable cause.  *Id.* at 13.  Plaintiff claims that all of these actions were meant to intimidate him

10  from exercising his free speech claims.  *Id.*

11      Because Plaintiff's Bain Act claim is based on the same theory as his First Amendment

12  claim, it too fails.  Accordingly, this claim is dismissed with leave to amend.  Plaintiff must allege

13  sufficient facts to create a reasonable inference that each individual Defendant acted to threaten,

14  intimidate, or coerce Plaintiff from exercising his First Amendment rights.

15      **H.  *Noerr-Pennington* Immunity**

16      Defendants argue that *Noerr-Pennington* immunity bars Plaintiff from bringing claims

17  against Lingenfelter and Kraft based on their letters to the Santa Cruz County District Attorney.

18  Mot. 13-14.  "The *Noerr-Pennington* doctrine ensures that those who petition the government for

19  redress of grievances remain immune from liability for statutory violations, notwithstanding the

20  fact that their activity might otherwise be proscribed by the statute involved."  *White v. Lee*, 227

21  F.3d 1214, 1231 (9th Cir. 2000) (citing *Professional Real Estate Investors, Inc. v. Columbia*

22  *Pictures Indus., Inc.*, 508 U.S. 49, 56, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993)).  "The doctrine

23  immunizes petitions directed at any branch of government, including the executive, legislative,

24  judicial and administrative agencies."  *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090,

25  1092 (9th Cir. 2000) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92

26  S. Ct. 609, 30 L. Ed. 2d 642 (1972)).  "Although the *Noerr-Pennington* doctrine originally

27  immunized individuals and entities from antitrust liability, *Noerr-Pennington* immunity now

28  applies to claims under § 1983 that are based on the petitioning of public authorities."  *Empress*

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDATS' MOTION TO DISMISS

*United States District Court*
For the Northern District of California

United States District Court
For the Northern District of California

1  *LLC v. City & Cnty. of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005) (citation omitted).

2  Government officials acting in their official capacities can be protected from § 1983 liability by

3  *Noerr-Pennington* immunity.  *See Manistee Town Ctr.*, 227 F.3d at 1093-94.  "*Noerr-Pennington* is

4  a label for a form of First Amendment protection; to say that one does not have *Noerr-Pennington*

5  immunity is to conclude that one's petitioning activity is unprotected by the First Amendment."

6  *Empress LLC*, 419 F.3d at 1056 (quotation and quotation marks omitted).

7      Although Plaintiff concedes that *Noerr-Pennington* immunity extends beyond the antitrust

8  arena, he argues that Defendants have failed to cite a single case applying the doctrine to the

9  circumstances at issue here.  Opp'n 14.  In addition, Plaintiff claims that the Supreme Court and the

10  Ninth Circuit have allowed claims similar to his to proceed.  *Id.*  Defendants provide no meaningful

11  argument in response.  *See* Reply 7.  Instead, Defendants simply repeat the basic principles of the

12  *Noerr-Pennington* doctrine.  *Id.*

13      The Court sees merit in both side's arguments.  On the one hand, letters from police officers

14  to district attorneys appear to fall within the bounds of *Noerr-Pennington* protection.  In writing

15  letters to the district attorney, Kraft and Lingenfelter were petitioning the Santa Cruz County

16  District Attorney, a member of the executive branch, in their official capacities.

17      On the other hand, the Supreme Court's treatment of the plaintiff's claim in *Hartman v.*

18  *Moore*, 547 U.S. 250; 126 S. Ct. 1695; 164 L. Ed. 2d 441(2006) and the Ninth Circuit's ruling in

19  *Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008) suggest that *Noerr-Pennington* immunity may

20  not apply here.  In *Hartman*, the Supreme Court considered the plaintiff's First Amendment

21  retaliatory prosecution claims against five postal inspectors.  The plaintiff claimed, among other

22  things, that the postal inspectors had targeted him for his lobbying activities and that they pressured

23  the United States Attorney's Office to have him indicted.  *Hartman*, 547 U.S. at 254.  Although the

24  Supreme Court reversed the lower court's denial of the defendants' motion for summary judgment,

25  it did so on the grounds that the plaintiff had failed to show that no probable cause supported the

26  prosecution.  *Id.* at 265-66.  The Supreme Court's opinion suggests that if the inspectors had

27  induced (i.e., successfully petitioned) the U.S. Attorney's Office to prosecute the plaintiff without

28

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDATS' MOTION TO DISMISS

United States District Court
For the Northern District of California

1  probable cause, then they could be held liable for a violation of the plaintiff's First Amendment

2  rights.

3  The Ninth Circuit's holding in *Beck* leads to the same conclusion.  There, the Ninth Circuit

4  considered the plaintiff's First Amendment retaliatory arrest claim, brought pursuant to § 1983,

5  against several defendants, including certain police officers.  *Beck*, 527 F.3d at 856-57.  The

6  plaintiff claimed that the police targeted him because of his outspoken criticism of the police and

7  his protests against a city contract granted to one of his competitors.  *Id.*  According to the plaintiff,

8  the police secured an arrest warrant from the district attorney using a police report that allegedly

9  contained false information and omitted key information.  *Id.* at 868.  The court reversed the

10  district court's grant of summary judgment in favor of the defendants and remanded the case for

11  trial.  *Id.* at 873.  Once again, the court did not suggest in any way that the police officer defendants

12  could not be held liable for retaliating against the plaintiff by petitioning the district attorney for an

13  arrest warrant that lacked probable cause.

14  Nevertheless, these decisions do not resolve the issue as to whether *Noerr-Pennington*

15  immunity applies because it does not appear that either the Supreme Court or the Ninth Circuit

16  considered the *Noerr-Pennington* doctrine when they issued the rulings discussed above.  Thus, the

17  question as to whether the *Noerr-Pennington* doctrine can immunize police officers from First

18  Amendment retaliatory prosecution claims appears to be an unanswered one.[8]  Because the Court

19  has already dismissed Plaintiff's First Amendment claims, the Court finds it unnecessary to resolve

20  this issue at this time.  If Plaintiff chooses to file an amended First Amendment claim, then the

21  parties may raise the issue again.[9]

---

[8] At least one district court recently opined that there are some limits to the protection afforded
government actors under the *Noerr-Pennington* doctrine.  That court reasoned that "a government
actor may not be entitled to the full measure of First Amendment protection in the face of claims
that it engaged in 'selective' petitioning in violation of the Equal Protection Clause."  *Mosdos
Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 601 (S.D.N.Y. 2010).  The court
also went on to suggest that government actors are only afforded *Noerr-Pennington* immunity
when they exercise their right to petition lawfully "(i.e. when they are in compliance with other
applicable constitutional provisions)."  *Id.* at 601-02.

[9] The Court notes that none of the parties briefed the possibility that any of the "sham" exceptions
to the *Noerr-Pennington* doctrine apply here.  A defendant's activities may fall into one of these
exceptions "if they include making intentional misrepresentations to the court that then 'deprives
the litigation of its legitimacy.'"  *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir.

21

**I.  Prosecutorial Immunity**

Defendants argue that California Government Code § 821.6 bars Plaintiff's state law claims, except for false arrest or false imprisonment,[10] against Hauck, Kraft, Best, and Lingenfelter based on their alleged communications with the Santa Cruz County District Attorney and suppression of evidence.  Mot. 14-15.  Under § 821.6, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  "Acts taken during an investigation prior to the institution of a judicial proceeding are also protected by section 821.6 because investigations are essential steps toward the institution of formal proceedings."  *Cnty. of Los Angeles v. Superior Court*, 181 Cal. App. 4th 218, 229, 104 Cal. Rptr. 3d 230 (2009) (citations omitted).  In addition, "conduct during an ongoing prosecution" is covered by § 821.6.  *Randle v. City and Cnty. of San Francisco*, 186 Cal. App. 3d 449, 456, 230 Cal. Rptr. 901 (1986) (footnote and citations omitted).  This immunity applies not only to prosecutors but investigating officers as well.  *See Cnty. of Los Angeles v. Superior Court*, 181 Cal. App. 4th at 228, 104 Cal. Rptr. 3d 230 (citation omitted).  "The immunity applies even if the officers abused their authority," *Gillan*, 147 Cal. App. 4th at 1048, 55 Cal. Rptr. 3d 158 (citation omitted), or suppressed evidence, *see Randle*, 186 Cal. App. 3d at 456-58, 230 Cal. Rptr. 901 (applying prosecutorial immunity to a police officer whose alleged liability involved improper suppression of evidence).

In response, Plaintiff cites to *Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008) and argues that the Ninth Circuit's holding in that case requires the same result here.  Opp'n 15-16.  In *Beck*, the Ninth Circuit reversed the district court's grant of summary judgment against the plaintiff on his state law causes of action.  *Beck*, 527 F.3d at 872.  The plaintiff in *Beck* protested against the City of Upland for granting his competitor a city contract.  *Id.* at 856.  During the course of his

---

2009) (quoting *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998)) (alterations omitted).
[10] "Section 821.6 . . . provides no immunity from liability for false arrest or false imprisonment." *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1048, 55 Cal. Rptr. 3d 158 (2007) (footnote and citation omitted); *see Blankenhorn v. City of Orange*, 485 F.3d 463, 487-88 (9th Cir. 2007) ("Because [the plaintiff's] assault and battery, negligence, and intentional infliction of emotional distress claims are based on acts that allegedly happened during his arrest, not pursuant to an investigation into his guilt, section 821.6 does not confer immunity from those claims upon Defendants." ).

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDATS' MOTION TO DISMISS

1  dispute with the city, the plaintiff confronted two city police officers about the city's allegedly

2  unfair treatment towards him.  *Id.*  Six days later, the plaintiff was arrested pursuant to a warrant

3  for two felony violations of a California statute prohibiting threats of violence against police

4  officers.  *Id.* at 856-57.  All charges were eventually dismissed and found by the state courts to

5  have been without probable cause.  *Id.* at 857.  The plaintiff brought suit under § 1983 for

6  violations of his First and Fourth Amendment rights and under California law for negligence,

7  assault and battery, false imprisonment and intentional infliction of emotional distress.  *Id.* at 857,

8  860.  The district court granted summary judgment against the plaintiff on his state law causes of

9  action, relying on California Civil Code § 43.55(a).  *Id.* at 872.

10         While Plaintiff is correct that there is some similarity between the facts at issue in *Beck* and

11  those of the instant case, the holding in *Beck* is inapposite here.  In *Beck*, the Ninth Circuit did not

12  address prosecutorial immunity under California Government Code § 821.6.  Rather, the court

13  reversed the district court's decision to apply a completely different statutory source of immunity,

14  California Civil Code § 43.55(a).  Section 43.55(a) deals, in part, with immunity for arrests made

15  by a peace officer pursuant to a warrant when the peace officer acts without malice.  Defendants

16  are not arguing for the type of immunity created by § 43.55 immunity.  In fact, Defendants have

17  conceded that § 821.6 does not apply to claims for false arrest.  Plaintiff's reliance on *Beck* is,

18  therefore, ultimately unpersuasive.

19         Plaintiff also argues that the court's discussion in *Beck* of *Smiddy v. Varney*, 665 F.2d 261

20  (9th Cir. 1981) precludes Hauck, Kraft, Best, and Lingenfelter from escaping liability under

21  § 821.6.  Opp'n 15-16.  This argument is also unpersuasive.  The *Beck* court's discussion of

22  *Smiddy* was applicable to federal First and Fourth Amendment claims brought under § 1983.

23  Because Defendants argue that they are immune from liability for claims brought under state, not

24  federal, law, that discussion has no relevance here.

25         Accordingly, Hauck, Kraft, Best, and Lingenfelter are immune from liability under state

26  law for their alleged communications with the Santa Cruz County District Attorney and their

27  alleged suppression of evidence prior to and during Plaintiff's criminal trial.

28  ///

### J.  California's Anti-SLAPP Statute

Defendants argue that California's anti-SLAPP[11] statute bars Plaintiff from bringing state-law claims based on Defendants' statements or writings in connection with Plaintiff's arrest or prosecution.  Mot. 15.  Under California Civil Procedure Code § 425.16(b)(1):

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

These special motions to strike are available in federal court.  *See Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005) (anti-SLAPP motions to strike are available in federal court).

Defendants, however, have not brought a motion to strike pursuant to § 425.16.  Rather, they seek to invoke the protection of § 425.16 through a Rule 12(b)(6) motion to dismiss.  It is not clear to the Court that Defendants' use of § 425.16 is procedurally correct.  Although California's anti-SLAPP statute and Federal Rule of Civil Procedure 12 do have some overlap, "California's 'special motion to strike' adds an additional, unique weapon to the pretrial arsenal . . . ."  *See United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999).  Moreover, California courts have established a distinct process for evaluating anti-SLAPP motions to strike.  This process involves two steps.  "First, the defendant moving to strike must make a threshold showing that the act or acts of which the plaintiff complains were taken in furtherance of the defendant's right of petition or free speech under the United States or California Constitution in connection with a public issue."  *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010) (quoting *Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 124 Cal. Rptr. 2d 507, 52 P.3d 685, 694 (2002)) (alterations and quotation marks omitted).

"Second, if the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim."  *Id.* (quoting *Navellier v. Sletten*, 29 Cal. 4th 82, 124 Cal. Rptr. 2d 530, 52 P.3d 703, 708 (2002)) (alterations and quotation marks omitted).  "Put another way, the plaintiff must demonstrate that the complaint

---

[11] SLAPP is an acronym for "Strategic Lawsuit Against Public Participation."  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003).

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDATS' MOTION TO DISMISS

is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Id.* (quoting *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 123 Cal. Rptr. 2d 19, 50 P.3d 733, 739 (2002)) (internal quotation marks omitted).  "Though the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." *Id.* (quotation and quotation marks omitted).

Because the Court has already dismissed Plaintiff's state law claims, the Court need not decide whether Defendants have properly moved to strike some of Plaintiff's state-law claims pursuant to California's anti-SLAPP statute by relying on § 425.16 in a Rule 12(b)(6) motion to dismiss.  If Plaintiff amends his complaint and includes state law causes of action that Defendants believe are prohibited by California's anti-SLAPP statute, Defendants may move to strike those pursuant to § 425.16.

### K.  Absolute Litigation Privilege

Finally, Defendants argue that California's litigation privilege, California Civil Code § 47, bars Plaintiff's state-law claims to the extent they arise from statements, writings or oral communications. Mot. 16.  Because the Court has already dismissed Plaintiff's state-law causes of action, the Court need not address Defendants' invocation of California's litigation privilege.

### L.  Documents Considered by the Court

Defendants have attached four exhibits to their motion and request that this Court consider those exhibits in resolving their motion. Mot. 2 n.1.  Defendants argue that the Court can consider the documents under the incorporation by reference doctrine. *Id.* (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).  Plaintiff objects to the Court considering the documents to the extent that Defendants are requesting that the Court take judicial notice of the contents of the exhibits. Dkt. No. 90.  Plaintiff does not dispute that Defendants wrote these documents but denies the statements therein are truthful. *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555

25

United States District Court
For the Northern District of California

(9th Cir. 1989) (citing *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 552 (9th Cir. 1984)).  "There are, however, . . . exceptions to the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  "If the documents are not physically attached to the complaint, they may be considered if the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998)).  In addition, "under Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record.'"  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (citing *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).

Defendants not only try to use both exceptions to allow the Court to consider the four documents attached to their motion to dismiss, Defendants also argue that Plaintiff has waived his right to object to Defendants' exhibits.  Dkt. No. 92.  According to Defendants, Plaintiff failed to object to Defendants' exhibits when Defendants supplied them in connection with Defendants' motion for judgment on the pleadings, renoticed before this Court on October 1, 2010.  Dkt. No. 66.  The Court, however, never ruled on the merits of Defendants' October 1, 2010 motion because Plaintiff moved to amend his complaint on October 25, 2010.[12]  *See* Dkt. No. 68.  Because the Court never had an opportunity to rule on Defendants' exhibits, the Court finds it appropriate to consider Plaintiff's objections.

Two of Defendants' exhibits are police reports.  Mot, Exs. A, D.  The contents of these documents are not the proper subject of judicial notice.  *See United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (citing *Pina v. Henderson*, 752 F.2d 47, 50 (2d Cir. 1985) for the proposition that the existence and content of a police report are not properly the subject of judicial notice); *Daniel v. Holiday Inn Select*, 2008 U.S. Dist. LEXIS 2719, *5-7 (E.D. Cal. June 14, 2008) (refusing to consider a police report of the incident in dispute on a motion to dismiss); *Standish v. Woods*, 2004 U.S. Dist. LEXIS 11612, *8-9 (D. Or. 2004) (holding that the facts contained in a

---

[12] The Court denied Defendants' motion for judgment on the pleadings as moot when it granted Plaintiff's motion to amend his complaint.  *See* Dkt. No. 77.

26

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDATS' MOTION TO DISMISS

United States District Court

For the Northern District of California

police report are not the proper subject of judicial notice).  Moreover, even if Plaintiff's FAC relies on these police reports, Plaintiff disputes the truthfulness of their contents.  Accordingly, the Court will not consider the contents of these documents in ruling on Defendants' motion.

Defendants' two other exhibits are letters from Kraft and Lingenfelter to the Santa Cruz County District Attorney.  These letters are not public records and the authenticity of their contents is not capable of accurate and ready determination.  Thus, they are not the proper subject of judicial notice.  Moreover, Plaintiff disputes the accuracy of their contents.  The Court, therefore, will not consider the contents of these exhibits in ruling on Defendants' motion to dismiss.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss as follows:

**The Court dismisses the following claims with prejudice:**

Plaintiff's claims against all Defendants for violation of Plaintiff's claimed Fourth Amendment right to be free from retaliatory prosecution;

Plaintiff's claims against Hauck, Stone, Lingenfelter, Best, Bockman, and Sipes for violation of Plaintiff's Fourth Amendment right to be free from unreasonable searches;

Plaintiff's Fourth Amendment unlawful arrest and excessive force claims for damages against Callison.

**The Court dismisses the following claims with leave to amend:**

Plaintiff's First Amendment claims against all Defendants;

Plaintiff's Fourth Amendment search claims against Kraft and Callison;

Plaintiff's Fourth Amendment unlawful arrest and excessive force claims against Lingenfelter and Best;

Plaintiff's Fourth Amendment excessive force claims against Stone, Bockman, and Sipes;

Plaintiff's Fourteenth Amendment claims against all Defendants;

Plaintiff's claims for damages against all Defendants for violation of the California Constitution, Article 1, Sections 1, 2, 3, 7, 13, 25;

Plaintiff's claims for false arrest against Kraft, Hauck, Stone, Sipes, Bockman, Best, and Lingenfelter;

Plaintiff's Bane Act claims against all Defendants;

Plaintiff's claims for damages against Lingenfelter, Best, and Kraft for failure to train or supervise and for liability based on training or supervision.

**The Court denies Defendants' motion to dismiss the following claims:**

Plaintiff's Fourth Amendment unlawful arrest claims against Stone, Bockman, and Sipes.

Plaintiff shall file an amended complaint, if any, within thirty (30) days of the date of this Order to cure the deficiencies discussed herein.  Plaintiff may not add new causes of action or parties without leave of Court or by stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: March 8, 2011

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDATS' MOTION TO DISMISS