United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

BERRY LYNN ADAMS,

Plaintiff,

v.

DANIEL L. KRAFT, PHILLIP HAUCK, KIRK LINGENFELTER, K. P. BEST, J. I. STONE, CHIP BOCKMAN, R. CALLISON, SCOTT SIPES,

Defendants.

Case No.: 5:10-CV-00602-LHK

ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND; AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Plaintiff Berry Lynn Adams filed his Second Amended Complaint (Dkt. No. 110-11, "SAC") on April 7, 2011. Defendants Daniel L. Kraft ("Kraft"), Phillip Hauck ("Hauck"), Kirk Lingenfelter ("Lingenfelter"), K. P. Best ("Best"), J. I. Stone ("Stone"), Chip Bockman ("Bockman"), R. Callison ("Callison"), and Scott Sipes ("Sipes") (collectively "Defendants") moved to dismiss Adams' SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 116 ("Mot."); *see also* Dkt. No. 122 ("Reply"). Adams opposes. Dkt. No. 123 ("Opp'n"). Plaintiff has also filed a motion for leave to amend, which Defendants oppose. Pursuant to Civil Local Rule 7-1(b), the Court deems both motions suitable for disposition without oral argument. As explained below, the Court hereby GRANTS in part and DENIES in part Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint; and DENIES Plaintiff's motion for leave to file a Third Amended Complaint.

United States District Court
For the Northern District of California

## I. BACKGROUND

### A. Procedural History and Court's March 8, 2011 Order

On March 8, 2011, this Court issued an Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"). *See* Dkt. No. 96. The long procedural history leading up to the March 8, 2011 Order helps shed light on the Court's analysis of Defendants' present Motion. Plaintiff, at that time represented by Attorney M. Van Smith, filed his initial complaint on February 10, 2010, making broad allegations regarding alleged "violations of civil rights" against various State Park Rangers and the State of California. Plaintiff's initial complaint included seven claims: 1) "Violation of Civil Rights" (discussing an "unreasonable seizure"); 2) "Violation of Civil Rights" (discussing "excessive force"); 3) False Arrest; 4) Battery; 5) Violation of California Bane Act (discussing a "false arrest"); 6) "Violation of Civil Rights" (discussing an "unreasonable seizure"); and 7) Violation of California Bane Act (discussing an "interference with free speech"). Defendants answered on March 17, 2010.

On June 9, 2010, prior to the filing of any motion by the current Defendants,[1] Plaintiff's current counsel, Attorney Kate Wells, moved to be substituted as counsel because Plaintiff's former counsel, Attorney M. Van Smith, had serious health issues. The Honorable James Ware granted Plaintiff's motion to substitute counsel on July 19, 2010. *See* Dkt. No. 53. Defendants had already filed a motion for judgment on the pleadings as to the initial complaint on July 14, 2010, and then, on July 30, 2010, Defendants moved for sanctions.

This action was reassigned to the undersigned on August 2, 2010. On November 30, 2010, the Court issued two Orders. In the first, the Court, over Defendants' strenuous opposition that they had already spent significant resources in bringing their motion for judgment on the pleadings and that Plaintiff had unreasonably delayed in amending his complaint without good cause, granted Plaintiff's motion for leave to file an amended complaint and denied as moot Defendants' motion for judgment on the pleadings. *See* Dkt. No. 77, November 30, 2010 Order Granting Plaintiff's

[1] On May 28, 2010, Former Defendant Greg Inloes moved to dismiss for failure to state a claim. That motion became moot, however, when the Court granted the parties' stipulation to dismiss Defendant Greg Inloes with prejudice. *See* Dkt. No. 64, September 23, 2010 Order Granting Stipulation to Dismiss Defendant Greg Inloes With Prejudice.

Motion for Leave to File Amended Complaint and Denying as Moot Defendants' Motion for Judgment on the Pleadings. That Order stated:

> The Court acknowledges Defendants' efforts in bringing their motions and is sympathetic to Defendants' position that Plaintiff could have amended his complaint earlier. Defendants, however, have not established that allowing leave to amend at this point amounts to substantial prejudice. The case is still at an early stage, as the parties have not engaged in any discovery, and discovery has not yet closed. Moreover, this is *Plaintiff's first attempt* at amending his complaint.

*Id*. at 6 (emphasis added). Defendants' Motion for Judgment on the Pleadings had extensively detailed the problems in Plaintiff's original Complaint. At that time, however, there was no case schedule and no discovery or trial deadlines. In the second order of November 30, 2010, the Court denied Defendants' motion for sanctions. *See* Dkt. No. 78, November 30, 2010 Order Denying Motion for Sanctions. Although the Court found Plaintiff's original Complaint to be "poorly organized" and "confusing," the Court determined that those deficiencies did not merit sanctions but instead "the potential deficiencies highlighted by Defendants are more appropriately raised in a motion to dismiss." *Id*. at 5.

On December 2, 2010, the Court held a case management conference and issued a Case Management Order providing, among other things, for a July 31, 2011 deadline for the close of all discovery; an August 11, 2011 deadline to file dispositive motions, with the hearing on any such motions to be heard on September 15, 2011; a November 2, 2011 pretrial conference; and a November 14, 2011 jury trial start date. *See* Dkt. No. 79. Plaintiff's counsel, Ms. Wells, was present at the December 2, 2010 case management conference and was given the opportunity to provide input on the case schedule adopted by the Court.

Plaintiff filed the FAC on December 6, 2010. *See* Dkt. No. 80. On December 23, 2010, Defendants filed a Motion to Dismiss, again laying out numerous challenges to Plaintiff's allegations. This motion resulted in the aforementioned March 8, 2011 Order. In that Order, the Court exhaustively catalogued Plaintiff's claims and analyzed all of Plaintiff's allegations and Defendants' challenges. The March 8, 2011 Order *again* gave Plaintiff leave to amend certain claims, and provided extensive guidance as to the deficiencies that must be remedied for those claims to stand. The Court ended with the following summary:

United States District Court
For the Northern District of California

**The Court dismisses the following claims with prejudice:**

Plaintiff's claims against all Defendants for violation of Plaintiff's claimed Fourth Amendment right to be free from retaliatory prosecution;

Plaintiff's claims against Hauck, Stone, Lingenfelter, Best, Bockman, and Sipes for violation of Plaintiff's Fourth Amendment right to be free from unreasonable searches;

Plaintiff's Fourth Amendment unlawful arrest and excessive force claims for damages against Callison.

**The Court dismisses the following claims with leave to amend:**

Plaintiff's First Amendment claims against all Defendants;

Plaintiff's Fourth Amendment search claims against Kraft and Callison;

Plaintiff's Fourth Amendment unlawful arrest and excessive force claims against Lingenfelter and Best;

Plaintiff's Fourth Amendment excessive force claims against Stone, Bockman, and Sipes;

Plaintiff's Fourteenth Amendment claims against all Defendants;

Plaintiff's claims for damages against all Defendants for violation of the California Constitution, Article 1, Sections 1, 2, 3, 7, 13, 25;

Plaintiff's claims for false arrest against Kraft, Hauck, Stone, Sipes, Bockman, Best, and Lingenfelter;

Plaintiff's Bane Act claims against all Defendants;

Plaintiff's claims for damages against Lingenfelter, Best, and Kraft for failure to train or supervise and for liability based on training or supervision.

**The Court denies Defendants' motion to dismiss the following claims:**

Plaintiff's Fourth Amendment unlawful arrest claims against Stone, Bockman, and Sipes.

*See* March 8, 2011 Order at 27-28.

On April 7, 2011, Plaintiff filed the operative SAC. On April 26, 2011, Defendants moved to dismiss the SAC, aside from certain claims against certain officers as explained below. *See* Dkt. No. 116. Plaintiff filed a timely Opposition on June 22, 2011, and Defendants filed a Reply on June 29, 2011. Dkt. Nos. 119, 122. On June 24, 2011, however, Plaintiff also filed a Motion for leave to file a now Third Amended Complaint. *See* Dkt. No. 121.

**B. Factual Allegations in SAC**

Plaintiff alleges that Defendants, all California State Park Rangers, violated his constitutional rights while acting in their individual capacity and under the color of state law. SAC ¶ 5. He alleges that his problems with California State Park Rangers began in 1985, when the Rangers replaced the Santa Cruz Sheriff's Office in patrolling Seacliff State Park Beach and Pier ("Seacliff"). *Id*. at ¶ 8. Plaintiff, a self-proclaimed "expert" surf fisher with 25 years of experience fishing at Seacliff, claims that he never had any problems with the Sheriff's Office. *Id*. at ¶ 7.

Plaintiff's first claimed interaction with the Defendants occurred on February 15, 2008. *Id*. at ¶ 10. Defendant Best issued a ticket to Plaintiff for unlawful possession of alcohol while he was parked in a public parking lot. *Id.* Plaintiff claims that in light of evidence that Plaintiff was in fact drinking ginger ale, Best rescinded the ticket two to three days later. *Id*. at ¶ 12. However, this allegation is inconsistent with Plaintiff's FAC, which alleged that the ticket was rescinded on March 3, 2008. FAC ¶ 6. While rescinding his citation, Best allegedly told Plaintiff that he had never before rescinded a ticket and that he would be watching Plaintiff in the future. SAC ¶ 12. According to Plaintiff, his encounter with Best, a supervisor over several of the other Defendants, caused Best, Kraft, Lingenfelter, Hauck, Stone, Bockman, Callison, and Sipes to cooperate in a planned effort to punish Plaintiff for "humiliating" Best. *Id.*

Plaintiff also describes several other incidents that resulted from Defendants' plan to exact revenge on behalf of Best. First, on June 15, 2008, Kraft and Callison "walked into Monterey Bay" in their uniforms and "demanded to search ADAM's [sic] backpack." *Id*. at ¶ 13. During the search, Kraft allegedly told Plaintiff that, "My boss [Best] has not forgotten you." *Id.* Second, Plaintiff states "on numerous occasions KRAFT approached ADAMS and required ADAMS to

produce his water bottle to KRAFT so that KRAFT could sniff the liquid contents (water) to confirm that it was not alcohol." *Id*. at ¶ 14.

Third, on July 8, 2008, Stone issued Plaintiff a parking citation for parking at Seacliff after it had closed. *Id*. at ¶ 15. Plaintiff does not contest the validity of the citation, but instead alleges that Stone issued the citation without the usual custom of announcing that the park had closed and without issuing a warning. *Id.* Plaintiff further alleges that Stone did not give citations to other parked vehicles and told Plaintiff that he was "one of the locals who were the worst offenders and needed to be taught a lesson." *Id.*

Plaintiff claims that he contacted, on unspecified dates, the Rangers' supervisor, Defendant Lingenfelter, to complain about this "harassment." *Id*. at ¶ 17. Plaintiff alleges that Lingenfelter did nothing to stop the other Defendants from harassing him. *Id.* Furthermore, he alleges Lingenfelter took retaliatory actions by requesting that the District Attorney obtain a court order prohibiting Plaintiff from being present on several beaches, including Seacliff. *Id.* Specifically, Plaintiff alleges Lingenfelter wrote a July 23, 2009 letter to the District Attorney, which claimed Plaintiff was lodging baseless complaints about State Park Peace Officers and consuming the officers' time, and that Plaintiff was causing disturbances, which Lingenfelter believed would continue to occur. *Id.* Plaintiff alleges the disturbances were almost always in response to being erroneously accused, with subsequent public outcry at how the Rangers were treating him. *Id*. According to Plaintiff, the District Attorney sought a stay away order, but the Superior Court refused. *Id.*

Plaintiff's next alleged interaction with Defendants occurred after he gave an interview to a news channel on June 22, 2009 during a rally at Seacliff opposing proposed budget cuts to the State Parks System. *Id*. at ¶ 19. Plaintiff told the interviewer that the State of California could save a lot of money by returning beach patrolling responsibility to the Sheriff's Office. *Id.* Plaintiff, on information and belief, alleges that the broadcast was either viewed or reported to all the Park Rangers, which allegedly made them more resolved than ever to harass Plaintiff. *Id*.

Also on June 22, 2009, Plaintiff crossed paths with Greg Inloes. *Id*. at ¶ 20. In his initial complaint, Plaintiff alleged he was upset with Inloes because Inloes had shared information about

Plaintiff's new fishing lure with the Western Outdoor News, without Plaintiff's permission. Compl. ¶¶ 8-10. The two argued, and Plaintiff threatened to sue Inloes if he did not refrain from certain conduct in relation to fishing journalism. SAC ¶ 20. In his SAC, Plaintiff alleges he did not threaten any physical violence towards Inloes at any time. *Id.* However, in his initial complaint, Plaintiff acknowledged that Mr. Inloes complained that Plaintiff threatened to put him in the intensive care unit if Mr. Inloes continued writing about Plaintiff. Compl. ¶ 9.

Plaintiff believes Inloes subsequently complained to Kraft on June 24, 2009. SAC ¶ 21. Plaintiff alleges Inloes informed him that Kraft, Best, and Lingenfelter "demanded" Inloes provide the Rangers with a written statement against Plaintiff, which Inloes did. *Id*. Plaintiff states Judge Almquist, who presided over the jury trial, dismissed all charges because "if you read Inloes' letter, he wasn't afraid that anything was going to happen immediately or imminently. He waited 48 hours to even make a complaint about this to law enforcement." *Id.* According to Plaintiff, Inloes's nine-page statement was a rambling, incoherent, and ultimately exculpatory diatribe containing contradictory allegations about alleged threats. *Id*. Plaintiff, however, does not contest that he made potentially threatening statements to Inloes, but only notes his belief that his statements were not sufficiently "immediate" or "imminent" enough to constitute a criminal threat.

According to Plaintiff, on June 24, 2009, Defendants Kraft, Hauck, Stone, Sipes and Bockman, along with three other unnamed Rangers, arrived at the pier where Plaintiff was fishing. *Id*. at ¶ 22. Hauck then informed Plaintiff that they were arresting him. *Id.* Once informed that he was under arrest, Plaintiff alleges he attempted to put down his bag of potato chips. *Id*. at ¶ 23. Plaintiff alleges that as he did so, Kraft kicked Plaintiff's right hand and wrist. *Id.* Kraft allegedly then grabbed Plaintiff by the left arm and forced him into a pain compliance hold. *Id*. at ¶ 24. According to Plaintiff, none of the other Rangers intervened. *Id.* Hauck and Kraft then arrested Plaintiff for resisting arrest. *Id.* A Superior Court judge later dismissed the charges against Plaintiff for resisting arrest and for threatening Inloes. *Id*. at ¶ 26.

Plaintiff also alleges that Defendants Kraft, Hauck, Lingenfelter, and Best did not forward or disclose Inloes's nine-page complaint to the District Attorney who prosecuted Plaintiff. *Id*. at ¶ 25. The existence of Inloes's complaint was only revealed inadvertently during Plaintiff's

September 2009 criminal trial for violating California Penal Code § 422 and § 148. *Id.* Plaintiff was acquitted on "both charges pursuant to a California Penal Code § 1118.1 motion that the prosecution's evidence failed to establish a *prima facie* case of guilt." *Id.* at ¶ 26. Plaintiff alleges the withholding of Inloes's statements from the District Attorney was in retaliation for the various actions Plaintiff took to redress grievances and for speaking out in public against the officers. *Id*. at ¶ 27.

The last alleged incident occurred on July 31, 2009 while Plaintiff was fishing at Seacliff. *Id*. at ¶ 28. Plaintiff yelled at another fisherman who was violating "the protocol and law of fishing" by crossing his line with the lines of Plaintiff and others on the pier. *Id.* Plaintiff alleges that after expressing his complaint to a Lifeguard, Defendants Kraft, Best, and Callison ejected Plaintiff from Seacliff for disturbing the peace. *Id.* No other fisherman was ejected and several witnesses, apparently friends of Plaintiff, told the Rangers of Plaintiff's innocence. *Id.*

Plaintiff alleges he filed a California Government Code § 945.4 claim with the state on December 16, 2009 against all Defendants. The claim was denied on February 18, 2010.

Based on these allegations, Plaintiff makes four claims for relief. First, against all Defendants, Plaintiff seeks damages for violation of his rights under the First and Fourteenth Amendments of the United States Constitution and of Article 1, Sections 1, 2, 3, 7, 15, and 25 of the Constitution of the State of California. Second, against Defendants Kraft, Hauck, Best, and Lingenfelter, Plaintiff seeks damages for false arrest under the Fourth Amendment of the United States Constitution. Third, Plaintiff seeks damages for excessive force against Defendants Kraft, Hauck, Stone, Sipes and Bockman under the Fourth Amendments of the United States Constitution, and for failure to intervene against Defendants Stone, Sipes, and Bockman. Finally, Plaintiff seeks damages against Defendants Kraft and Callison for an unlawful search.

## II. LEGAL STANDARDS

### A. Standard for Motion to Dismiss

Dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Services, Inc*., 606 F.3d 658, 664 (9th Cir. 2010)

(quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). In considering whether the complaint is sufficient to state a claim, the court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.*), 536 F.3d 1049, 1055 (9th Cir. 2008). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.

**B. Standard for § 1983 Claims**

Under Section 1983, the plaintiff must demonstrate that (1) the action occurred "under color of state law" and (2) the action resulted in the deprivation of a constitutional right or federal statutory right. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). In the instant action, there is no dispute that the officers were acting under color of state law. The disputes in this case are whether Defendants violated Plaintiff's First, Fourth, and Fourteenth Amendment rights.

## III. ANALYSIS

**A. Plaintiff's Third Amended Complaint**

As a preliminary matter, the Court notes that Plaintiff filed a Third Amended Complaint ("TAC") two days after filing his Opposition to Defendants' Motion to dismiss the SAC, and before the Court had decided Defendants' motion. Pursuant to Rule 15 of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course, either twenty-one days after serving it or within twenty-one days after service of a responsive pleading or a motion under 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). Otherwise, a party may only amend its complaint with the opposing party's permission or with leave from the court. Fed. R. Civ. P. 15(a)(2). Here, as the time to amend the complaint as a matter of course has passed, Plaintiff may only amend his complaint with the opposing party's written consent or the Court's

leave. As the Court has not given Plaintiff leave to file an amended complaint, this new complaint will be given no weight in this Order.[2] Moreover, were the Court to consider the TAC in the context of deciding Defendants' motion to dismiss the SAC, the Court would arguably be improperly converting the motion into one for summary judgment by considering a matter outside the pleadings before it. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Rule 15(a) states that leave shall be freely given "when justice so requires." Fed. R. Civ. P. 15(a). In general, the Court considers five factors in assessing a motion for leave to amend: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Not all of the factors merit equal weight; it is the consideration of prejudice to the opposing party that carries the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see also Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave [to amend] need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay."). The Court has broad discretion over whether to grant leave to amend, where it has previously granted such leave.

A year and a half into this litigation, Plaintiff's SAC is the third attempt to state cognizable claims and is now fully briefed and ripe for decision. Plaintiff directs Defendants and this Court to "the more detailed account . . . contained in plaintiff's [sic] TAC, attached as Exhibit A . . . ." *See* Pl.'s Opp'n at 16. However, Plaintiff, represented by counsel throughout these proceedings, has already been given three chances to adequately plead allegations in support of his claims, with specific instructions from the Court as to the facts necessary to properly plead the claim. Each of

[2] Under Federal Rule of Civil Procedure 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." The Case Scheduling Order in this action provides a close of discovery of July 31, 2011 and a dispositive motion filing deadline of August 11, 2011. Presumably, Plaintiff's proposed TAC would necessitate a modification of the Case Scheduling Order. However, Plaintiff has not sought leave for such a modification. In any event, as explained in the text, the Court declines to consider Plaintiff's proposed TAC under Rule 15 in light of the substantial prejudice to Defendants, Plaintiff's unexplained and undue delay in seeking leave just before the close of discovery and other filing deadlines, and numerous prior amendments to the complaint over the past year and a half.

these attempts at proper pleading was followed by a motion by Defendants, which represented substantial time and effort to parse the issues diligently. Defendants have already addressed three iterations of Plaintiff's complaint. Forcing them to respond to yet another version of Plaintiff's claims is substantially prejudicial and unwarranted in these circumstances, where Plaintiff provides absolutely no reason for not providing a "more detailed account" of his allegations sooner.

Furthermore, the fact discovery deadline in this case is July 11, 2011, the dispositive motion filing deadline is August 11, 2011, and a trial by jury in this case is set for November 24, 2011. These deadlines were set, with input from Plaintiff's counsel, nearly eight months ago, at the Case Management Conference of December 2, 2010. *See* Dkt. No. 79. Yet another amended complaint would create undue delay, as the case schedule and trial deadlines would almost certainly have to be delayed even further. With due respect for the nature of Plaintiff's serious allegations, justice does not require granting Plaintiff yet another chance to amend his complaint this late in the litigation, especially where, as here, the amendment would only provide a "more detailed account" of the allegations and not add any additional allegations that Plaintiff became apprised of in the midst of litigation. Rather, the Court finds that the ends of justice will be served by proceeding with this litigation on the basis of Plaintiff's SAC and reaching a resolution of the claims therein.

Accordingly, the Court denies Plaintiff's motion for leave to file a TAC and does not rely upon the TAC in the analysis and conclusions below.

**B. Analysis of Constitutional Claims in Plaintiff's SAC**

Plaintiff's SAC consists of four claims: (1) Claim for Damages based on Violation of Constitutional Rights related to Free Speech against all Defendants; (2) Claim for Damages based on False Arrest against Defendants Kraft, Hauck, Best, and Lingenfelter; (3) Claim for Damages based on Excessive Force against Defendants Kraft, Hauck, Stone, Sipes and Bockman; and (4) Claim for Damages based on Unlawful Search against Defendants Kraft and Callison. Defendants respond that they are agreeable to answering Plaintiff's SAC to the extent it asserts a Fourth Amendment violation against Kraft and Hauck for false arrest (i.e., Claim 2), and a Fourth

11

Case No.: 10-CV-00602-LHK
ORDER REGARDING MOTION FOR LEAVE TO AMEND AND MOTION TO DISMISS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Amendment violation against Kraft only for excessive force. *See* Defs.' Mot. at 3. However, Defendants seek dismissal of the SAC in all other respects.

Much of the Court's analysis is guided by the Ninth Circuit's decision in *Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008). In *Beck*, the plaintiff, Mr. Beck, alleged that City of Upland police officers retaliated against him by engineering a false arrest due to his outspoken criticism of a city contract granted to one of his competitors. According to Mr. Beck's allegations, he was arrested for telling officers "you don't know who you're dealing with," which the officers later alleged (wrongly) was a threat of violence. The Ninth Circuit held that, in order to state a claim for false arrest under either a First Amendment-retaliation or Fourth Amendment rationale, "a plaintiff seeking to sue non-prosecutorial officials alleged to be responsible post-complaint for the arrest or prosecution [must] show the absence of probable cause." *Id*. at 865.

In *Beck*, the Ninth Circuit also went on to hold that "if a plaintiff can prove that the officials secured his arrest or prosecution without probable cause and were motivated by retaliation against the plaintiff's protected speech, the plaintiff's First Amendment suit can go forward" despite the rebuttable presumption that a prosecutor's filing of a criminal complaint constitutes "independent judgment" and breaks the chain of causation between arrest and prosecution. *Id*. at 863-64. Regarding Mr. Beck's First Amendment cause of action, the Ninth Circuit stated: "Arresting someone in retaliation for their exercise of free speech rights was violative of law clearly established at the time of Beck's arrest. By 1990, it was 'well established . . . that government officials in general, and police officers in particular, may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity.'" *Id*. at 871 (internal citation omitted). Because the plaintiff, Mr. Beck, sufficiently alleged the absence of probable cause and retaliatory motive, the Ninth Circuit reversed the district's court grant of summary judgment to defendants.

Thus, here, as in *Beck*, a crucial issue for both the First Amendment retaliation and Fourth Amendment false arrest claims is the presence or absence of probable cause.

**1. Determination of Probable Cause**

Plaintiff alleges that he was arrested on June 24, 2009 as a result of trumped up charges by a Mr. Greg Inloes. Although not in the SAC, a prior version of Plaintiff's complaint noted that

Plaintiff yelled at Inloes, apparently a writer, for putting Plaintiff's name in an article for the *Western Outdoor News*. *See* Compl. ¶¶ 8-9. Plaintiff acknowledged "threatening to put him [Inloes] in the intensive care unit if he [Inloes] continued to write for the Western Outdoor News about the pier at Seacliff State Park." *Id*. Plaintiff alleged that, even if truthful, his statement to Inloes was not an "immediate" threat of physical violence as required by California Penal Code § 422, and thus the State Park Rangers did not have probable cause to arrest him. Moreover, Plaintiff alleges that the lack of an "immediate" threat was the basis for the dismissal of his criminal suit in Santa Cruz County Superior Court.

As noted above, Defendants do not challenge Plaintiff's Fourth Amendment false arrest claim as to Defendants Kraft and Hauck. In order to succeed on this claim, Plaintiff must establish a lack of probable cause. By not challenging the Fourth Amendment false arrest claim as to the arresting officers, Kraft and Hauck, Defendants are necessarily acknowledging that Plaintiff has, at least for purposes of a motion to dismiss for failure to state a claim, sufficiently alleged the absence of probable cause. This concession by Defendants is crucial to the Court's analysis below.

**2. First Amendment -- Retaliation**

Plaintiff claims that he has been retaliated against for exercising his right to free speech, free press, petition for redress of grievances, freedom of association, and has been deprived of his pursuit of happiness. SAC ¶ 31. Plaintiff alleges that the State Park Rangers retaliated against him for (1) his efforts to get his citation rescinded, (2) his complaints to Lingenfelter about the behavior of subordinate Rangers, and (3) the interview Plaintiff granted to a television journalist.

As discussed in the Court's March 8, 2011 Order:

> A claim under § 1983 for such retaliation has three elements: (1) the plaintiff engaged in activity that is constitutionally protected; '(2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.'

Dkt. No. 96, at 6 (citing *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010)). In order to sufficiently allege his § 1983 claim against Defendants, Plaintiff must sufficiently allege each of the above elements.

United States District Court
For the Northern District of California

**a. Constitutionally Protected Activity**

Plaintiff asserts he was engaged in three protected activities: the right to petition for redress of grievances when asking Defendant Best to rescind his citation, free speech when complaining to Defendant Lingenfelter about other Defendants' actions, and free speech when being interviewed by the press.

Plaintiff alleges that the Park Rangers retaliated against him for speaking out against Defendant Best to rescind his citation of Plaintiff. SAC ¶ 12. Defendants concede that, were Plaintiff engaged in the act of filing a petition to have this citation vacated, this would "fall[] within Adams's First Amendment right to petition." Defs.' Mot. at 6. However, Defendants contend that Plaintiff was not engaged in filing a petition at the time Defendant Best rescinded the citation, and he therefore "did not engage in constitutionally protected activity." *Id*.

Defendants elevate form over substance. Regardless whether the Court construes Plaintiff's actions as petitioning for redress or as engaging in speech, his actions are protected under the First Amendment. "'The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.' The freedom of individuals to oppose or challenge police action verbally . . . is one important characteristic by which we distinguish ourselves from a police state." *Duran v. Douglas*, 904 F.2d 1372, 1377 (9th Cir. 1990) (citing *Houston v. Hill*, 482 U.S. 451, 461 (1987)); *see also Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (observing it was undisputed that the plaintiff had a protected interest in commenting on the actions of government officials). Were the Court to construe Plaintiff as engaging in speech, rather than in the act of filing a petition, this activity would still be a protected challenge to police action.

Plaintiff states that he contacted Defendant Best's supervisor, Defendant Lingenfelter, to "complain[] of the ongoing harassment" he received from Park Rangers. SAC ¶ 17. Plaintiff contends that a subsequent letter from Defendant Lingenfelter to the Santa Cruz County District Attorney was in retaliation for this complaint, and was also part of the ongoing program of harassment following his challenge of Defendant Best. *Id*. Plaintiff's SAC fails to specify the content or even the date of his complaints to Defendant Lingenfelter, making it difficult for the Court to assess whether this speech is of the type that would be protected by the First Amendment.

*See id*. However, Defendants have conceded that Plaintiff's complaints were protected, and the Court will accept them as such on this basis. Defs.' Mot. at 6.

Finally, Plaintiff alleges that Defendants retaliated against him for his exercise of free speech in an interview. On June 22, 2009, Plaintiff was interviewed by KCBA-TV during a rally protesting budget cuts. SAC ¶ 19. In this broadcasted interview, Plaintiff suggested the State of California should return control of Seacliff beach to the Santa Cruz County Sheriff's Office. *Id*. The Court finds that Plaintiff engaged in a protected activity in expressing his opinions to the press.

Accordingly, Plaintiff has fulfilled the first element of his claim that he was retaliated against for the exercise of his First Amendment rights, as he appears to have been exercising his rights to free speech and to petition for redress of grievances.

**b. Adverse Action**

Plaintiff must next prove that he was subjected to adverse action that would discourage the ordinary person from further engagement in the protected activity. Here, Plaintiff alleges that Defendants targeted him for harassment in the form of: illegal searches by Defendants Kraft and Callison on June 15, 2008 and other unknown dates (SAC ¶¶ 13-14); an unfair citation by Defendant Stone on July 8, 2008 (*Id*. at ¶ 15); a false arrest by Defendants Hauck and Kraft on June 24, 2009 (*Id*. at ¶ 24); a baseless injunction (e.g., "stay away" order) requested by Defendant Lingenfelter (*Id*. at ¶ 17); and withholding of Inloes's complaint (*Id*. at ¶¶ 25, 27). As Plaintiff fails to allege which Defendants withheld Inloes's complaint, he has failed to sufficiently plead a claim for this last alleged transgression against any Defendant.

Plaintiff asserts he was subjected to an ongoing campaign of harassment in response to his exercise of his First Amendment rights. Although these events are spread out in time, appear only loosely connected, and involve different sets of actors, the Court recognizes that, if true, this pattern of behavior culminating in the June 24, 2009 false arrest, constitutes substantial adverse action that would discourage Plaintiff from challenging the behavior of Park Rangers in the future. *See Beck*, 527 F.3d at 868 (plaintiff's allegations that officers unlawfully arrested him in retaliation for criticism was sufficient to plead a First Amendment retaliation and Fourth Amendment false arrest claims). Plaintiff has therefore fulfilled the second element of this claim.

**c. Substantial Causal Relationship**

Finally, Plaintiff must prove a substantial causal relationship between his protected activity and the alleged retaliation of Defendants.

**i. Defendants Kraft and Best**

Plaintiff has alleged that on June 15, 2008, while conducting an illegal search, Defendant Kraft informed him, "My boss [Defendant Best] has not forgotten you." SAC ¶ 13. If true, this could indicate a causal relationship between Defendant Best's statement "that he would never forget Adams" at the time of rescinding the citation, and Defendant Kraft's search of Plaintiff. *Id.* at ¶ 12. Moreover, Plaintiff has alleged, and Defendants do not challenge as to Hauck and Kraft, that he was arrested without probable cause in retaliation for his speaking out against the State Park Rangers. Kraft's repeating Best's alleged threat establishes a causal relationship between Plaintiff's exercise of his right to petition for redress of grievances, and this allegedly retaliatory search. Plaintiff has pled sufficient facts for the Court to infer that Defendants Kraft and Best intended to retaliate against him for his exercise of his First Amendment rights. The Court therefore denies Defendants' Motion to Dismiss, as to Plaintiff's first claim against Defendants Best and Kraft.

**ii. Defendant Lingenfelter**

Plaintiff claims that Defendant Lingenfelter retaliated against him by requesting an injunction preventing Plaintiff from going to various beaches around Santa Cruz, and in soliciting the criminal complaint against Plaintiff by Inloes. SAC ¶¶ 17, 21. These allegedly retaliatory actions took place on July 23 and June 24, 2009, respectively. *Id.*

In his discussion of Defendant Lingenfelter's letter, Plaintiff relies solely on the fact that this letter was written after several instances of Plaintiff exercising his First Amendment rights. *See id.* at ¶ 17. Based on this chronology, Plaintiff concludes that Defendant Lingenfelter's letter was retaliatory. While theoretically possible, Plaintiff has alleged no facts indicating that Defendant Lingenfelter intended to retaliate against Plaintiff for the exercise of his First Amendment rights. Plaintiff has not referenced any threatening statements made to him by Defendant Lingenfelter, any statements made to others by Defendant Lingenfelter that implied a

United States District Court
For the Northern District of California

desire to retaliate, or even that Defendant Lingenfelter knew of Plaintiff's exercising his First Amendment rights. The sparse and confusing facts Plaintiff does provide indicate that Defendant Lingenfelter was requesting an injunction in response to the disturbances Plaintiff had caused at Seacliff. *See id.* (where Plaintiff acknowledges creating at least three disturbances). On these allegations, Plaintiff has not established a causal connection between Plaintiff's actions and Defendant Lingenfelter's letter citing disturbances created by Plaintiff at Seacliff, disturbances which Plaintiff does not deny.[3]

While Defendant Lingenfelter's letter does not appear retaliatory, the alleged pressure he and other Defendants placed on Inloes to pursue his criminal complaint against Plaintiff may be retaliatory. Plaintiff points out that his arrest occurred "just 2 days after" his interview on June 22, 2009, asking the Court to infer that the arrest and the criminal complaint leading to it were retaliatory. Opp'n. at 11. That Plaintiff's arrest *followed* this interview does not mean that these events were *because of* Plaintiff's interview. Further, the Court notes that Defendants had been approached by Inloes, on June 22, 2009, with a complaint that Plaintiff had threatened Inloes with bodily harm. SAC ¶ 21. While Plaintiff argues that Defendants "'demanded' [Inloes] make a written statement," he does not allege that Defendants improperly sought out this criminal complaint. *Id.*

The Court agrees with Defendants that the Inloes complaint provides an equally plausible explanation for Plaintiff's June 24, 2009 arrest. However, there remain Plaintiff's allegations that Defendants, including Defendant Lingenfelter, pressured Inloes into pursuing this criminal complaint. *Id.* On a motion to dismiss, the court is required to "read the complaint charitably, [and] to take all well-pleaded facts as true." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994). While Plaintiff's allegations are subject to serious dispute by Defendants, the allegations regarding the pressure placed on Inloes are well-pleaded, and support the inference that Lingenfelter could have been retaliating against Plaintiff based on Plaintiff's constitutionally

[3] As Defendant Lingenfelter's letter is not a basis for Plaintiff's retaliation claim, Defendants' argument for *Noerr-Pennington* immunity is moot.

17

Case No.: 10-CV-00602-LHK
ORDER REGARDING MOTION FOR LEAVE TO AMEND AND MOTION TO DISMISS

United States District Court
For the Northern District of California

protected activity. The Court therefore denies Defendants' Motion as to Plaintiff's first claim against Defendant Lingenfelter.

**iii. Defendant Hauck**

While Plaintiff does not specifically state a First Amendment claim against Defendant Hauck, the Court assumes Defendant Hauck was meant to be included in the allegation that all Defendants punished Plaintiff for the exercise of his First Amendment rights. *See* SAC ¶ 31.

Plaintiff alleges that Defendant Hauck was actively involved in his arrest. Specifically, Defendant Hauck informed Plaintiff he was under arrest, and then assisted Defendant Kraft in the completion of the arrest. *Id*. at ¶¶ 22-24. Plaintiff further alleges that Defendant Hauck used excessive force against him. *Id*. at ¶ 24. Plaintiff has thus sufficiently alleged that Defendant Hauck participated in what Plaintiff claims, and Defendants concede, was an arrest without probable cause.

The second issue to be resolved is whether Defendant Hauck intentionally took part in the alleged campaign of harassment against Plaintiff, in perpetuating this arrest. While Plaintiff's factual allegations are thin, the Court notes the particular cooperation which Plaintiff has alleged between Defendants Kraft and Hauck. Plaintiff alleges that the arrest was announced by Hauck; Hauck and Kraft performed the actual arrest; and Hauck and Kraft used excessive force. *Id*. at ¶¶ 22-24. Reading Plaintiff's allegations *very* charitably, and without deciding the veracity of those allegations, the Court takes as true for the purposes of this Motion that Hauck and Kraft worked together in retaliating against Plaintiff. Accordingly, the Court denies Defendants' Motion to dismiss Plaintiff's First Amendment claim against Hauck.[4]

**iv. Defendant Callison, Stone, Sipes, and Bockman**

Plaintiff has failed to plead any facts that would connect Defendants Callison or Stone to his disagreement with Defendant Best. *See generally* SAC. Plaintiff instead provides conclusory statements that all Defendants acted to "implement[] the ongoing harassment campaign directed by

[4] To overcome a defense motion for summary judgment, of course, Plaintiff will have to do far more to proceed with his retaliation claim against Defendant Hauck.

Best." *Id*. at ¶ 16. Plaintiff provides no statements from the other Defendants that link them to Defendant Best's alleged vendetta.

Defendant Callison is present at only two of the incidents described by Plaintiff. On June 15, 2008, Defendant Callison apparently waded into Monterey Bay, along with Defendant Kraft, to search Plaintiff's backpack. *Id*. at ¶ 13. Plaintiff's specific allegations, however, are entirely against Kraft. It is allegedly Kraft who spoke to Plaintiff, and who informed him that Defendant Best "ha[d] not forgotten" him. *Id*. Similarly, on July 31, 2009, Defendant Callison was present when Plaintiff was ejected from Seacliff. *Id*. at ¶ 28. Plaintiff has failed to allege any specific actions taken or statements made by Defendant Callison that would imply he was involved in any retaliation against Plaintiff. *Id*. Plaintiff has also failed to allege any facts that would indicate Callison knew of the dispute between Plaintiff and Best or, assuming such existed, knew of any retaliation campaign against Plaintiff. As Plaintiff has failed to allege a causal relationship between his exercise of his First Amendment rights and any of Defendant Callison's actions, the Court dismisses Plaintiff's claims against Defendant Callison.

Plaintiff's allegations against Defendant Stone pertain to the issuance of a parking citation, and Defendant Stone's presence at Plaintiff's arrest on June 24, 2009. *Id*. at ¶¶ 15, 22. Plaintiff contends that Defendant Stone issued a parking citation out of retaliation. *Id*. at ¶ 32. However, Plaintiff's description of the incident indicates that the citation was for being parked at Seacliff after closing, and that he was in fact parked at Seacliff after closing. *Id*. at ¶ 15. Plaintiff's true dispute is with Defendant's Stone's failure to provide warning that Seacliff was about to close: "the reason there was no announcement of beach closure . . . was to entrap [Plaintiff] into inadvertently overstaying." *Id*. However, Plaintiff has not alleged that Defendant Stone had a duty to provide notice that Seacliff was closing, and, as with Defendant Callison, has alleged no facts indicating that Defendant Stone knew of or intended to participate in a campaign of harassment against Plaintiff. Plaintiff thus has provided the Court with no reason to view the issuance of a valid parking citation to be retaliatory. Similarly, while Plaintiff states that Defendant Stone was present at the time of Plaintiff's arrest, he does not describe any action taken by Stone in furtherance of this arrest. *See generally* SAC ¶¶ 22-24. Defendant Stone's issuance of a valid citation and presence at

an unfortunate event are insufficient for this Court to infer he participated in a campaign of harassment, or that these actions were substantially caused by Plaintiff's exercise of his First Amendment rights.

The only incident in which Plaintiff alleges Defendants Sipes and Bockman took part was Plaintiff's arrest on June 24, 2009. *Id*. at ¶ 22. As with Defendant Stone, Plaintiff places Defendants Sipes and Bockman at the scene but ascribes no overt actions to them. *See id*. Without some indication that Defendants Sipes and Bockman knew of and intended to join in systematic retaliation against Plaintiff, their mere presence is insufficient to imply it bears a substantial relationship to Plaintiff's exercise of his rights to free speech.

As Plaintiff provides no factual allegations tending to establish a causal relationship between his challenge of Defendant Best's authority and the actions of Defendants Callison, Stone, Sipes, and Bockman, the Court dismisses Plaintiff's first claim against those Defendants. In the March 8, 2011 Order deciding the prior Motion to Dismiss in this case, the Court specifically instructed Plaintiff that, if he chose to amend, "he must allege facts that allow the Court to reasonably infer that *each individual Defendant* acted to chill Plaintiff's speech *because of* Plaintiff's constitutionally protected activities." *See* March 8, 2011 Order at 8 (emphases added). Plaintiff was thus put on notice that he must establish that each of the Defendants acted "as a result" of Plaintiff's exercise of his First Amendment rights, and that he must establish a "substantial causal relationship" between those rights and the adverse actions taken by Defendants. *Blair*, 608 F.3d at 543. Plaintiff failed to establish the second two elements of a First Amendment claim against Defendants Callison, Stone, Sipes and Bockman in this now third attempt at stating a claim. The Court's dismissal of Plaintiff's First Amendment claims against these Defendants is thus granted without leave to amend.

**d. Plaintiff's Freedom of Association Allegations**

Although not identified as a separate claim, Plaintiff's SAC makes the vague allegation that he was "punished for his implied First Amendment freedom of association" when he was ejected from Seacliff on July 31, 2009. SAC ¶¶ 31-33. It is not clear that Plaintiff intends to bring a separate freedom of association claim aside from his First Amendment retaliation claim. In any

United States District Court
For the Northern District of California

event, the Court dismisses any such freedom of association claim because Plaintiff's sparse factual allegations are insufficient to establish that he was exercising his First Amendment right to freedom of association at the time he was ejected from Seacliff.

The First Amendment freedom of association is generally construed as the "freedom to engage in association for the advancement of beliefs and ideas." *See Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 543 (1963). The definition of association extends to "forms of 'association' that are not political in the customary sense but pertain to the social, legal, and economic benefit of the members." *Griswold v. Connecticut*, 381 U.S. 479, 483 (1965). The right thus "extends to groups organized to engage in speech that does not pertain directly to politics." *Dallas v. Stanglin*, 109 S. Ct. 1591, 1595 (1989).

Plaintiff alleges that he was ejected from Seacliff while fishing from the end of the pier. SAC ¶ 28. Nowhere does Plaintiff allege that he was at Seacliff for the purpose of engaging in protected speech with his associates. Plaintiff does not even allege that he had chosen Seacliff as a fishing spot for the purpose of associating with like-minded fishermen.

To the extent Plaintiff argues he was deprived of his freedom of association in retaliation for his exercise of free speech (SAC ¶ 33), Plaintiff has not alleged he was exercising this freedom while at Seacliff. Plaintiff instead alleges that he was exercising his right to fish. *Id.* at ¶ 28. The Court cannot see how Defendants deprived Plaintiff of a right he was not exercising. To the extent Plaintiff intended to claim he was deprived of his freedom of association as an act of retaliation, this claim is dismissed.

As Plaintiff does not allege he was engaging in an activity protected by the First Amendment, he has not fulfilled the first element required for this claim. Accordingly, the Court dismisses this claim without leave to amend.

**e. Accompanying Citations to California Constitution**

With his First Amendment claim, Plaintiff has cited to, but not made any specific allegations under, sections 1, 2, 3, 7, 15, and 25 of Article I of the California Constitution.

21

Case No.: 10-CV-00602-LHK
ORDER REGARDING MOTION FOR LEAVE TO AMEND AND MOTION TO DISMISS

United States District Court
For the Northern District of California

**i. Section 1**

Plaintiff states that he was "deprived of the pursuit of happiness under Article I, § 1 of the California Constitution." SAC ¶ 31. The Court agrees with Defendants that Plaintiff has insufficiently alleged an actual claim. Nowhere else in the SAC does Plaintiff indicate he has been deprived of happiness and, when it is introduced here, this deprivation is stated in only conclusory terms. Moreover, at least one other district court has ruled that §1 does not entitle Plaintiff to a private right of action for damages. *See Garcia v. County of Fresno*, 2005 U.S. Dist. LEXIS 31624 (E.D. Cal. Nov. 21, 2005) ("Plaintiffs, however, have failed to cite authority that this constitutional provision supports a private cause of action for damages [in the context of happiness]."). The Court therefore grants Defendants' Motion as to this claim.

**ii. Sections 2 and 3**

Plaintiff contends that Defendants infringed on his right to free speech and to freedom of association under the California Constitution. SAC ¶¶ 31-33. Defendants contend that there is no private right of action for a violation of § 2, citing *Degrassi v. Cook*, 29 Cal. 4th 333 (Cal. 2002). However, the Court's review of *Degrassi* reveals that its holding was limited to "the present case. This does not mean that the free speech clause, in general, never will support an action for money damages. . . Rather, we conclude that the loss or damage of which plaintiff here complains--interference with her functioning and effectiveness as a legislator--does not support recognition of a constitutional tort for damages." *Id*. at 344. As Plaintiff alleges infringement of free speech in the Federal and California contexts, the Court will not dismiss Plaintiff's claim under § 2 as it extends to freedom of speech. However, as discussed above, Plaintiff has failed to show that he has exercised his freedom of association; the Court dismisses this claim to the extent it refers to freedom of association.

Plaintiff also contends that Defendants infringed upon his right to petition for redress of grievances under § 3. This is substantially similar to the Federal claim which the Court has declined to dismiss; the Court will therefore not dismiss this claim at this time.

The Court notes that the fact that the California Supreme Court has not precluded the granting of damages for violations of §§ 2 and 3 does not necessarily mean that damages are

United States District Court
For the Northern District of California

available in this case. In similar situations, district courts have required arguments from the parties as to whether, applying the so-called "*Katzberg* factors" laid out by the California Supreme Court, damages should be available for such violations. *See Manser v. Sierra Foothills Pub. Util. Dist.*, 2008 U.S. Dist. LEXIS 98189, at *16-17 (E.D. Cal. Dec. 4, 2008) (requiring the parties to brief the issue of damages); *MHC Financing Limited Partnership Two v. City of Santee*, 182 Cal. App. 4th 1169, 1186 (Cal. App. 4th Dist. 2010) (requiring the parties to brief the issue of damages); *see also Katzberg v. Regents of University of California*, 29 Cal. 4th 300, 324-29 (Cal. 2002) (outlining factors). Further, the California Supreme Court has decided such issues based on the specific facts before it. *See Degrassi*, 29 Cal. 4th at 344 ("we decline to recognize a constitutional tort action for damages to remedy the asserted violation of article I, section 2(a), *alleged in the present case*") (emphasis added). Given the current paucity of authority cited by either party, the Court does not find it appropriate to decide whether damages are available at this time.

Should Defendants be found to have infringed upon Plaintiff's constitutional rights, the Court will not grant Plaintiff duplicated damages under both the United States and California Constitutions. However, should Defendants be found to have infringed upon Plaintiff's rights under §§ 2 and 3, but not to have violated Plaintiff's federal rights, the Court will require the parties to provide briefing, with citation to relevant authority, on the state law damages question.

**iii. Section 7**

Plaintiff has cited, in a heading only, §7 of the California Constitution regarding due process. Plaintiff provides no factual allegations as to the manner in which Defendants violated any such rights under §7, nor does he refer to §7 in the text of his claims. In any event, Defendants are correct that there is no private right of action for damages under §7. *See Katzberg v. Regents of University of California*, 29 Cal. 4th 300, 324 (Cal. 2002) ("We conclude that there is no indication in the language of article I, section 7(a), nor any evidence in the history of that section, from which we may find, within that provision, an implied right to seek damages for a violation of the due process liberty interest."); *see also Javor v. Taggart*, 98 Cal.App.4th 795, 807 (2002) ("It is beyond question that a plaintiff is not entitled to damages for a violation of the due process clause or the

23

Case No.: 10-CV-00602-LHK
ORDER REGARDING MOTION FOR LEAVE TO AMEND AND MOTION TO DISMISS

United States District Court
For the Northern District of California

equal protection clause of the state Constitution."). This claim is accordingly dismissed, with prejudice.

**iv. Section 15**

In his SAC, Plaintiff states that his First Claim for Damages is brought under § 15 (regarding rights of a criminal defendant) of Article I of the California Constitution. SAC at 12. However, as with other sections noted above, this allegation appears only in the heading introducing Plaintiff's first claim, and Plaintiff nowhere informs the Court of the law or facts on which this claim is based. *See generally* SAC ¶¶ 30-37. Moreover, the Court's previous Order specifically informed Plaintiff that he "may not add new causes of action . . . without leave of Court or by stipulation of the parties." Dkt. No. 96 at 28. Plaintiff did not make a claim under §15 in his previous complaint. *See generally* FAC. The Court did not grant leave to add this new cause of action, and Defendants do not appear to have stipulated to this addition. Plaintiff is therefore making a new claim in direct contravention of the Court's Order. This claim is dismissed without leave to amend.

**v. Section 25**

Finally, Plaintiff contends that he was deprived of his right to fish, as provided for in Article I § 25 of the California Constitution, when he was ejected from Seacliff. SAC ¶ 33. Plaintiff alleges that this ejection was done in retaliation for his earlier exercise of his First Amendment rights. *Id*. at ¶ 33. The Court has already acknowledged Plaintiff's petition to redress grievances, complaints to Lingenfelter, and interview with a journalist were all constitutionally protected activities.

Plaintiff alleges that, in retaliation for his exercise of his First Amendment rights, Defendants deprived him of freedom of association and the right to fish. *Id*. at ¶ 33. The Court notes that Plaintiff does not characterize the adverse action taken against him as ejection from Seacliff. Rather, Plaintiff specifically states that the adverse action taken against him is Defendants' deprivation of his right to fish. *Id*. As discussed above, Plaintiff was not exercising his freedom of association at the time he was ejected from Seacliff. However, as Plaintiff was fishing at this time, he arguably was exercising his right to fish. *Id*. at ¶ 28.

United States District Court
For the Northern District of California

As a preliminary matter, it is not clear that the "right to fish" provides an individual with a private right of action for damages. Article I, Section 25 of the California Constitution provides:

> *The people shall have the right to fish* upon and from the public lands of the State and in the waters thereof, excepting upon lands set aside for fish hatcheries, and no land owned by the State shall ever be sold or transferred without *reserving in the people the absolute right to fish thereupon*; and no law shall ever be passed making it a crime for the people to enter upon the public lands within this State for the purpose of fishing in any water containing fish that have been planted therein by the State; provided, that the Legislature may by statute, provide for the season when and the conditions under which the different species of fish may be taken.

Cal. Const. Art. I, § 25 (emphases added). California courts have focused on the "public" aspect of this right in terms of public trust and protection of waterways. *See, e.g., California v. San Luis Obispo Sportsman's Assn.*, 22 Cal. 3d 440, 448 (Cal. 1978) (describing the "public right" to recreational fishing). Plaintiff cites no authority, and this Court has found none, for the proposition that the right to fish provides him with an individual right of action for damages.

In addition, Plaintiff's allegations do not sufficiently establish a deprivation of this right. After acknowledging that he yelled at another fisherman multiple times for "crossing his line," Plaintiff alleges that Defendants "came to ADAMS and ejected him from Seacliff for the day." *Id*. at ¶ 28. Seacliff itself remained open for fishing. Plaintiff does not allege that Defendants seized his fishing license, or even his fishing gear. Plaintiff does not allege that Defendants prohibited him from traveling to another beach and continuing his fishing there. Plaintiff does not allege that Defendants permanently barred him from fishing at Seacliff. Inclement weather, park repairs, or a public event would have the same effect on Plaintiff's right to fish, yet the Court notes Plaintiff "has been surf fishing at Seacliff . . . for more than 25 years," and apparently throughout this litigation, without being deterred. *Id*. at ¶ 7. One individual's ejection from a single location does not strike the Court as the proper occasion to create a private right of action for damages for an individual right to fish, and certainly not as "adverse action by the defendant that would chill [Plaintiff] . . . from continuing to engage in" his First Amendment rights. *Blair*, 608 F.3d at 543.

Plaintiff has not alleged sufficient facts to establish that his right to his day-long exclusion from fishing at Seacliff meets the second element for a First Amendment cause of action. Therefore, the Court grants Defendants' Motion as to this claim.

United States District Court
For the Northern District of California

**5. Fourteenth Amendment**

Plaintiff's First Amendment claim is accompanied by a citation to the Fourteenth Amendment of the United States Constitution. Defendants argue that Plaintiff cannot bring a claim for violation of the due process clause of the Fourteenth Amendment for Defendants' alleged violation of the First Amendment. Defs.' Mot. at 12. The Court need not resolve this issue because Plaintiff states this section of the SAC "is simply a First Amendment claim that is applied to the states under the Fourteenth Amendment" and not a separate Fourteenth Amendment claim. Opp'n at 14. Accordingly, with Plaintiff's concession, the Court finds moot Defendants' Motion to dismiss any potential claim under the Fourteenth Amendment.

**6. Fourth Amendment – False Arrest**

Plaintiff also alleges that Defendants Kraft, Hauck, Best, and Lingenfelter subjected him to false arrest on June 24, 2009 in violation of his Fourth Amendment rights.[5] This claim requires Plaintiff to demonstrate that "there was no probable cause to arrest him." *Norse v. City of Santa Cruz*, 629 F.3d 966, 978 (9th Cir. 2010) (en banc) (internal quotation marks omitted). "Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009). However, "[p]robable cause is obviously lacking when the arrest is motivated purely by a desire to retaliate against a person who verbally challenges the authority to effect a seizure or arrest." *See Gasho v. United States,* 39 F.3d 1420, 1438 (9th Cir. 1994).

The SAC claim for damages for false arrest is only against Defendants Kraft and Hauck (e.g., the arresting officers on June 24, 2009), and then Best and Lingenfelter for supervisory liability. In Defendants' Reply, they state "Kraft and Hauck are agreeable to answering Adam's SAC, to the extent it asserts a Fourth Amendment violation against Kraft and Hauck for false arrest." Dkt. No. 122 at 1. With reference to false arrest, Plaintiff alleges that "Hauck and KRAFT are liable for the false arrest of ADAMS on June, 24, 2009 by reason of the fact that these two

[5] The false arrest allegations against Best and Lingenfelter are only made in their supervisory capacity. The Court discusses supervisory liability in a separate section below.

Defendants directly accomplished said arrest and did not have any probable cause to do so." SAC ¶¶ 22, 39. Plaintiff alleges an absence of probable cause based on the rationale that the officers should have known that the alleged threat he made to Inloes (i.e., to put Inloes into the ICU if he ever wrote about Plaintiff again) was not "immediate" enough to constitute a violation of California Penal Code § 422.[6] Defendants do not challenge the sufficiency of the Plaintiff's pleading as to his Fourth Amendment false arrest claims against Hauck and Kraft. Accordingly, the Court denies Defendants' Motion as to this claim.[7]

**6. Fourth Amendment -- Excessive Force**

The next issue is whether Plaintiff has properly stated a Fourth Amendment claim for excessive force or unlawful arrest against Defendants Kraft, Hauck, Stone Sipes and Bockman. "A claim for unlawful arrest is cognizable under section 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or justification" *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 964 (2001) (citing *Larson v. Neimi*, 9 F.3d 1397, 1400 (9th Cir. 1993)). Plaintiff claims the police officers arresting him on July 24, 2009, Kraft and Hauck, used excessive force in an unlawful arrest. The separate allegations of false arrest and failure to intervene as to Stone, Sipes, and Bockman are addressed below.

**a. Arresting Officers on June 24, 2009: Kraft and Hauck**

"Determining whether a police officer's use of force was reasonable or excessive therefore requires careful attention to the facts and circumstances of each particular case and a careful

---

[6] Section 422 provides: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

[7] Presumably, Defendants will attempt to establish that the arresting officers did have probable cause on a motion for summary judgment.

balancing of an individual's liberty with the government's interest in the application of force." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)) (quotation omitted). Therefore, the Court is to balance "the 'nature and quality of the intrusion' on a person's liberty with the 'countervailing governmental interests at stake' to determine whether the use of force was objectively reasonable under the circumstances." *Id.*; *see also Cunningham v. Gates*, 229 F.3d 1271 (9th Cir. 2000) ("Under U.S. Const. amend. IV, police may use only such force as is objectively reasonable under the circumstances. Determining whether force used in making an arrest is excessive or reasonable requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.").

The March 8, 2011 Order stated that "Defendants do not challenge the sufficiency of Plaintiff's pleadings as to his Fourth Amendment excessive force and unlawful arrest claims against Hauck and Kraft." Dkt. 96 at 12. The SAC now alleges "[u]pon HAUCK's announcement [that he was being placed under arrest] ADAMS leaned down to place a bag of potato chips on the ground. At this point and without any justification whatsoever, KRAFT kicked ADAMS in the right hand and wrist, injuring the same. KRAFT then subjected ADAMS to a pain compliance hold. HAUCK and KRAFT then accomplished the arrest of ADAMS and announced that it was a charge of resisting arrest." SAC ¶¶ 23, 24.

Defendants challenge the claims against Hauck in the SAC, arguing that Plaintiff "fails to validly allege Hauck had any physical involvement" and that Plaintiff's "internal allegations in his SAC are inconsistent. Defs.' Mot. at 16. On the one hand, he alleges it was Kraft, and then later realizes Hauck did not have physical contact with him so he changes his story, mid-stream, to substantiate an allegation against Hauck." *Id.*; *see also* Reply at 6 ("facts alleged in a complaint are deemed an admission and the facts from Adam's FAC and SAC clearly show Hauck did not have physical contact with Adams.").

Although the Court agrees that Plaintiff's allegations are not a model of clarity, Plaintiff's allegations in the SAC are still sufficient to state an excessive force claim against both Kraft and

Hauck. Plaintiff alleges "KRAFT then subjected ADAMS to a pain compliance hold. HAUCK and KRAFT then accomplished the actual arrest of ADAMS." SAC ¶ 24. In the claims, he alleges "Defendant HAUCK is liable for the use of excessive force against ADAMS on June 24, 2009 by reason of his unnecessary and gratuitous employment of a pain compliance hold against ADAMS." *Id.* at ¶ 49. Read in the light most favorable to the Plaintiff, as the Court must do with respect to Defendants' Motion to dismiss, Plaintiff does allege that Hauck was involved with the arrest and assisted with the allegedly unlawful pain compliance hold. Moreover, the FAC also included allegations describing Hauck's role in the arrest. Specifically, Plaintiff alleged "KRAFT then grabbed plaintiff by the left arm forcing his arm to his upper back in a pain compliance hold. All of the other rangers present failed to intervene to protect plaintiff from the excessive force of KRAFT and HAUCK." FAC ¶ 17.

As Defendants did not challenge the sufficiency of Plaintiff's FAC as to his Fourth Amendment excessive force and unlawful arrest claims against Hauck and Kraft, and as those allegations have not substantially changed in the SAC, the Court will not dismiss the excessive force claim against Kraft and Hauck. Accordingly, the Court denies Defendants' Motion to Dismiss as to the excessive force claim against Kraft and Hauck.

**b. Failure to Intervene (Stone, Sipes, Bockman)**

The Court's previous Order found the Fourth Amendment claims against Stone, Sipes, and Bockman (three officers who were merely present at Plaintiff's arrest) to be insufficient because Plaintiff did not claim they had an opportunity to interfere with the events. *See* March 8, 2011 Order at 13-15. Police officers have a duty to intercede when fellow officers commit violations, but must have a realistic opportunity to intercede. *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) ("officers can be held liable for failing to intercede only if they had an opportunity to intercede"). Moreover, the inquiry is specific to the individual defendant. *See Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996) (holding that an officer could not be liable just because of his membership in a group committing an unlawful and excessive search of a woman's home without a showing of individual participation in the unlawful conduct).

Plaintiff's insufficient allegations still only allege that "none of the other Rangers present attempted to intervene on behalf of ADAMS either to protect him from false arrest or from the

excessive force used by HAUCK and KRAFT, despite the fact that they were in a position to and could have stopped the arrest and intervened to prevent the excessive use of force after KRAFT initially kicked ADAMS in the wrist for no apparent reason." SAC ¶ 24. Plaintiff claims the three officers "are liable for their failure to intervene when it was manifestly apparent to them that KRAFT and HAUCK were engaging in unnecessary and brutal force against ADAMS." *Id*. at ¶ 50. In a change from the FAC, Plaintiff does add that the three officers "were in a position to and could have stopped the arrest and intervened to prevent the excessive use of force after" the kick. *Id*. at ¶ 24.

Defendants acknowledge that they saw the event, but challenge both the basis for his "information and belief" that they could have interceded, and note that Adams failed to allege the officers had a "realistic opportunity to intercede." Defs.' Mot. at 15. Specifically Defendants argue Plaintiff failed to allege "sufficient time for the officers to intervene between the point they saw Kraft's kick and before the compliance hold, he would also have to allege that Stone, Sipes and Bockman actually saw this happening and were close enough to intervene and leave their positions, in the split second between Kraft's alleged kick and compliance hold." *Id*. at 15.

To state a claim against the three officers, Plaintiff must establish that they had a realistic opportunity to intervene. Plaintiff's conclusory allegation in the SAC that the officers had the opportunity to intervene is merely a formulaic recitation of the legal standard, and not a specific factual allegation. Nowhere does Plaintiff support his allegations against Stone, Sipes and Bockman with actual factual allegations regarding their opportunity to intervene or their exact role in Plaintiff's arrest.

In sum, in his now third attempt at stating a claim, Plaintiff still only alleges that officers Stone, Sipes, and Bockman were merely present at his arrest. These allegations are insufficient to state a claim for failure to intervene. As this is the third attempt to allege these facts and Plaintiff is still unable to adequately state a claim for failure to intervene, the claim is dismissed without leave to amend.

United States District Court
For the Northern District of California

**7. Fourth Amendment -- Unlawful Search**

Plaintiff also alleges that "Defendants Kraft and Callison are liable for the unlawful search of ADAMS' backpack on June 15, 2008." *Id.* at ¶ 56. To establish an unlawful search, "Plaintiff must show that a search or seizure occurred and that the search or seizure was unreasonable." *Freece v. Clackamas Cnty.*, 442 F. Supp. 2d 1080, 1086 (9th Cir. 2006) (citing *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989)). The Court's March 8, 2011 Order held that Plaintiff alleged a search occurred, but that "Plaintiff has not alleged supporting facts that the search was unreasonable or unconstitutional." Dkt. 96 at 11. The claim was dismissed with leave to amend against Defendant Kraft and Callison only. The SAC states, "[i]n support of this claim, Adams alleges "on or about June 15, 2008 KRAFT and CALLISON walked into Monterey Bay and demanded to search ADAM's [sic] backpack KRAFT advised ADAMS that they were looking for fish." SAC ¶ 13.

Despite express notice that he had to provide additional allegations that the search was somehow unreasonable or unlawful, Plaintiff still does not clearly allege that a search occurred and does not provide enough information to determine that the search was unlawful. Moreover, the California Supreme Court recently noted that "California authority has interpreted [Fish & G. Code, § 2012] as authorizing a stop of a vehicle occupied by an angler or hunter for such purposes, and the United States Supreme Court has held in a number of decisions that an administrative search or seizure may be conducted, consistent with the Fourth Amendment, in the absence of reasonable suspicion that violation of a statute or administrative regulation has occurred." *People v. Maikhio*, 51 Cal. 4th 1074, 1080 (Cal. 2011) (holding officer's demand that the fisherman display all fish or game that he caught without probable cause did not violate a reasonable expectation of privacy because the state's interest in protecting and preserving the wildlife of this state outweighs the minimal impingement upon privacy engendered by such a stop and demand procedure.) Given that Plaintiff has provided only minimal and conclusory factual allegations, and that California law appears to allow such "administrative searches" of fish or game, even without reasonable suspicion, the Court grants Defendants' Motion to Dismiss the unlawful search claim as to officers Kraft and Callison without leave to amend.

**8. Supervisory Liability**

Throughout the SAC, Plaintiff made claims against Defendants Kraft, Best, and Lingenfelter for their alleged supervisory roles in the incidents in question. "Generally, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability under 42 U.S.C. § 1983." *Jeffers v. Gomez*, 267 F3d 895, 915 (9th Cir 2001) (citing *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989)). "Supervisors can be held liable for: (1) their own culpable action or inaction in the training, supervision, or control of subordinates; (2) their acquiescence in the constitutional deprivation of which a complaint is made; or (3) for conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *See Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (internal citation omitted).

The March 8, 2011 Order dismissed the supervisory liability claims because Plaintiff did not clearly delineate which constitutional violations Defendants allegedly failed to properly supervise or train. Dkt. No. 96 at 16. Specifically, the Court dismissed Plaintiff's FAC claims for supervisory liability for the charge of false arrest because the Court was "sympathetic to the Defendants' interest in having their alleged constitutional violations clearly outlined in Plaintiff's complaint" so that Defendants could better assert their qualified immunity defenses. *See* March 8 2011 Order at 16. "Government officials who perform discretionary functions generally are entitled to qualified immunity from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). However, Defendants have not raised qualified immunity as a defense to the claims in the SAC. Instead, Defendants challenge the sufficiency of the allegations themselves.

With regard to the First Amendment retaliation supervisory liability claim, Plaintiff makes the conclusory allegations that Best, Lingenfelter and Kraft had "supervisory duties and are liable for their own actions or inactions that violated ADAMS' constitutional rights for failure to train,

United States District Court
For the Northern District of California

supervise and control their subordinates." SAC ¶ 36. Also, Plaintiff alleges that Best and Lingenfelter failed to supervise Kraft and Hauck for their involvement with the false arrest. SAC ¶ 40. With the hodgepodge of allegations thrown into the SAC, it is not clear whether Plaintiff actually intends to plead these supervisory liability allegations as separate claims. To the extent Plaintiff does intend to plead separate claims, aside from the conclusory allegations that these Defendants failed to train and/or supervise, the SAC still fails to delineate sufficient facts to state a claim for supervisory liability. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (U.S. 2009) (rejecting argument that supervisor's "mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution" because a supervisor is "only liable for his or her own misconduct").

With regard to Best and Lingenfelter's supervisory liability, Plaintiff does not specify whom Defendant Best supervised, or even to which constitutional violation either Best or Lingenfelter was deliberately indifferent. Plaintiff's vague allegation that Best "actively promoted" his arrest does not specify what, if anything, Best did to promote Plaintiff's arrest. Plaintiff's conclusory allegation that Lingenfelter was a supervisor at the time does not, in itself, establish supervisory liability. Plaintiff does not allege that Lingenfelter took any specific actions or inactions with regard to training the officers. There are no factual allegations as to the training of subordinate officers, let alone sufficient facts to establish a causal connection between Lingenfelter's actions and the alleged constitutional violations. Moreover, Plaintiff does not even allege that Best or Lingenfelter knew of subordinate officer's alleged constitutional violations or exhibited reckless disregard to those alleged constitutional violations. *See Iqbal*, 129 S. Ct. at 1949 (for an official charged with violations arising from supervisory responsibilities, requiring plaintiff to establish that supervisor had requisite mental state). Because Plaintiff has still not clearly outlined specific allegations in this now second amended pleading, the Court dismisses the supervisory liability claims against Defendants Best and Lingenfelter without leave to amend.

With regard to Defendant Kraft, this is the first time Plaintiff alleges Kraft had any supervisory role and Plaintiff does not allege any facts to support this assertion. In fact, he alleges "the supervisor of KRAFT at this time was BEST." SAC ¶ 13. Accordingly, the claim of

33
Case No.: 10-CV-00602-LHK
ORDER REGARDING MOTION FOR LEAVE TO AMEND AND MOTION TO DISMISS

United States District Court
For the Northern District of California

supervisory liability against Defendant Kraft is dismissed without leave to amend.[8]

## IV. CONCLUSION

For the reasons explained above, the Court DENIES Plaintiff's motion for leave to file a Third Amended Complaint. The Court GRANTS in part and DENIES in part Defendants' motion to dismiss the Second Amended Complaint as follows:

A. The Court **GRANTS** Defendants' Motion with respect to the following claims, and dismisses them without leave to amend:

1. Plaintiff's claims against Defendant Callison,
2. Plaintiff's claims against Defendant Stone,
3. Plaintiff's claims against Defendant Sipes,
4. Plaintiff's claims against Defendant Bockman
5. Plaintiff's claims for supervisory liability against Defendants Best, Kraft, and Lingenfelter,
6. Plaintiff's claims under the Fourteenth Amendment, as to all Defendants,
7. Plaintiff's claims under the Fourth Amendment, for the June 15, 2008 unlawful search, as to all Defendants,
8. Plaintiff's claims under the First Amendment, as they relate to the freedom of association, against all Defendants, and
9. Plaintiff's claims under Article I, Sections 1, 7, 15, and 25 of the California Constitution, against all Defendants.

B. The Court **DENIES** Defendants' Motion with respect to the following claims:

1. Plaintiff's claims against Defendant Kraft, under the First Amendment and for false arrest and excessive force under the Fourth Amendment,
2. Plaintiff's claims against Defendant Hauck, under the First Amendment and for false arrest and excessive force under the Fourth Amendment,

[8] Plaintiff's SAC does not allege supervisory liability for excessive force against any Defendant.

United States District Court
For the Northern District of California

3. Plaintiff's claim against Defendant Best, under the First Amendment,
4. Plaintiff's claim against Defendant Lingenfelter, under the First Amendment,
5. Plaintiff's claims under the Fourth Amendment, as they relate to false arrest, against Defendants Kraft, Hauck, Best, and Lingenfelter, and
6. Plaintiff's claims under Article I, Sections 2 and 3 of the California Constitution, against Defendants Kraft, Hauck, Best, and Lingenfelter.

**IT IS SO ORDERED.**

Dated: July 29, 2011

Lucy H. Koh
LUCY H. KOH
United States District Judge

35

Case No.: 10-CV-00602-LHK
ORDER REGARDING MOTION FOR LEAVE TO AMEND AND MOTION TO DISMISS