1
2
3
4
5
6
7
8
9
10

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| BERRY LYNN ADAMS, | ) | Case No.: 5:10-CV-00602-LHK |
| Plaintiff, | ) | |
| v. | ) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| DANIEL L. KRAFT, PHILLIP HAUCK, KIRK LINGENFELTER, K. P. BEST, J. I. STONE, CHIP BOCKMAN, R. CALLISON, SCOTT SIPES, | ) | |
| Defendants. | ) | |

Plaintiff Berry Lynn Adams ("Adams") brings this action under 42 U.S.C. §§ 1983 and 1988 against Defendants Daniel L. Kraft ("Kraft"), Phillip Hauck ("Hauck"), Kirk Lingenfelter ("Lingenfelter"), and K.P. Best ("Best"), (collectively "Defendants"), all of whom are California State Park Rangers ("Park Rangers"), alleging unlawful search and arrest, excessive force, and retaliation, in violation of his rights under the First and Fourth Amendments of the U.S. Constitution and Article I, §§ 2 and 3 of the California Constitution.[1]  Before the Court is Defendants' Motion for Summary Judgment.  The Court held a hearing on October 20, 2011.

---

[1] The Second Amended Complaint also names J.I. Stone ("Stone"), Chip Bockman ("Bockman"), R. Callison ("Callison"), and Scott Sipes ("Sipes") as additional defendants, but all claims against these four defendants were dismissed with prejudice in the Court's July 29, 2011 Order Denying Plaintiff's Motion for Leave to Amend, and Granting in Part and Denying in Part Defendants' Motion to Dismiss.  *See* ECF No. 126.

1

1    Having considered the parties' submission and arguments, the Court GRANTS in part and

2    DENIES in part Defendants' motion for summary judgment.

3        **I. BACKGROUND**

4            **A. Facts**

5            The following relevant facts are adopted, in large part, from the Court's July 29, 2011 Order

6    Denying Plaintiff's Motion for Leave to Amend, and Granting in Part and Denying in Part

7    Defendants' Motion to Dismiss.  *See* ECF No. 126.

8            Plaintiff alleges that Defendants, all of whom are California State Park Rangers, violated

9    his constitutional rights while acting in their individual capacities and under the color of state law.

10   SAC ¶ 5.  Plaintiff alleges that his problems with the California State Park Rangers began in 1985,

11   when the Rangers replaced the Santa Cruz Sheriff's Office in patrolling Seacliff State Park Beach

12   and Pier ("Seacliff").  *Id.* at ¶ 8; Adams Decl. ¶¶ 4-5.  Plaintiff, a self-proclaimed "expert" surf

13   fisher with over 25 years of experience fishing at Seacliff, claims that he never had any problems

14   with the Sheriff's Office.  SAC ¶ 7; Adams Decl. ¶¶3-4.

15           *Initial Interactions with Park Rangers*

16           Plaintiff's claims are based on a series of alleged encounters with various Park Rangers.

17   Plaintiff's first claimed interaction with the Defendants occurred on February 15, 2008.  SAC ¶ 10;

18   Adams Decl. ¶ 6.  Defendant Best issued a ticket to Plaintiff for unlawful possession of alcohol

19   while he was parked in a public parking lot.  SAC ¶ 10; Adams Decl. ¶ 6; Evans Decl. ¶¶ 2-4;

20   Dickie Decl. ¶¶ 2-4; Dunlop Decl. ¶ 2.  Plaintiff was in fact only drinking root beer and asked Best

21   to read the label on the bottle or to sniff the contents of the bottle, both of which Best refused to do.

22   Adams Decl. ¶ 6.  The following day, Plaintiff again encountered Best and told him that he

23   intended to contest the citation and had several witnesses who could corroborate his version of

24   events.  *Id.* ¶ 8.  Best agreed to rescind the citation from the previous day, but as he did so, he told

25   Plaintiff that never before in his career had he rescinded a citation, that he was not happy about

26   having to do so, and that he "would never forgive or forget [Adams]."  *Id.*; SAC ¶ 12.  Plaintiff

27   believes that Best felt humiliated by having to rescind his February 15, 2008 citation, and that this

28

**United States District Court**
For the Northern District of California

2

1  event triggered a series of retaliatory acts by Best and several of his subordinates designed to

2  punish Plaintiff for "humiliating" Best.  SAC ¶ 12; Adams Decl. ¶ 8.

3       Plaintiff describes several incidents that he believes resulted from Defendants' plan to exact

4  revenge on behalf of Best.  First, on June 15, 2008, Kraft and Callison "walked into Monterey

5  Bay" in their uniforms and "demanded to search ADAM's [sic] backpack."  SAC ¶ 13; Adams

6  Decl. ¶ 10; *see also* Valdez Decl. ¶ 2; Nelson Decl. ¶ 2.  During the search, Kraft allegedly told

7  Plaintiff, "My boss [Best] has not forgotten you."  SAC ¶ 13.  Second, Plaintiff states that "on

8  numerous occasions KRAFT approached ADAMS and required ADAMS to produce his water

9  bottle to KRAFT so that KRAFT could sniff the liquid contents (water) to confirm that it was not

10  alcohol."  SAC ¶ 14; Adams Decl. ¶ 9.

11       Third, on July 8, 2008, Stone issued Plaintiff a parking citation for parking at Seacliff after

12  it had closed.  SAC ¶ 15; Adams Decl. ¶ 11.  Plaintiff does not contest the validity of the citation,

13  but instead alleges that Stone issued the citation without the usual custom of announcing that the

14  park had closed and without issuing a warning.  SAC ¶ 15; Adams Decl. ¶ 11.  Plaintiff further

15  alleges that Stone did not give citations to other parked vehicles and told Plaintiff that he was "one

16  of the locals who were the worst offenders and needed to be taught a lesson."  SAC ¶ 15; Adams

17  Decl. ¶ 11.

18       Plaintiff claims that he later contacted the Rangers' supervisor, Defendant Lingenfelter, to

19  complain about this "harassment."  SAC ¶ 17; Adams Decl. ¶ 12.  Plaintiff alleges that Lingenfelter

20  told him to put his complaints in writing, which Adams did.  Adams Decl. ¶ 12; *see* Adams Decl.

21  Ex. 1.  Rather than respond to Plaintiff's complaints of harassment, however, Lingenfelter sought

22  to have the District Attorney obtain a court order prohibiting Plaintiff from being present on

23  several beaches, including Seacliff.  SAC ¶ 17; Adams Decl. ¶¶ 12-14.  Lingenfelter allegedly

24  wrote a July 23, 2009 letter to the District Attorney, which claimed Plaintiff was lodging baseless

25  complaints about State Park Peace Officers and consuming the officers' time, and that Plaintiff was

26  causing disturbances, which Lingenfelter believed would continue to occur.  SAC ¶ 17; Adams

27  Decl. ¶ 14.  Plaintiff alleges the disturbances were almost always in response to being erroneously

28

**United States District Court**
For the Northern District of California

3

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1   accused, with subsequent public outcry at how the Rangers were treating him.  SAC ¶ 17.  The

2   District Attorney allegedly sought a stay away order, but the Superior Court refused to issue one.

3   SAC ¶ 17; Adams Decl. ¶ 14.

4         Plaintiff believes that the Park Rangers' resolve to harass him heightened after he gave a

5   televised interview to a news channel during a June 22, 2009 rally at Seacliff opposing proposed

6   budget cuts to the State Parks System.  SAC ¶ 19; *see* Adams Decl. ¶ 15.  The rally, attended by

7   1,200 people, was covered by major news media, including joint coverage by KCBA-TV, a local

8   affiliate of the Fox and CBS networks and a main source of local news in the Monterey Bay area

9   widely viewed by the public.  SAC ¶ 19; Adams Decl. ¶ 15.  Plaintiff told the interviewer that the

10  State of California could save a lot of money by returning beach patrolling responsibility to the

11  Sheriff's Office.  SAC ¶ 19; Adams Decl. ¶ 15.  Plaintiff believes that his interview was either

12  viewed or reported to all the Park Rangers because one of their colleagues, Ranger Allyn Kaye,

13  was also interviewed during the same broadcast.  SAC ¶ 19; Adams Decl. ¶ 15.

14        Also on June 22, 2009, Plaintiff crossed paths with Greg Inloes ("Inloes"), another Seacliff

15  frequenter.  SAC ¶ 20; Adams Decl. ¶ 16.  In his initial complaint, Plaintiff alleged he was upset

16  with Inloes because Inloes had shared information about Plaintiff's new fishing lure with the

17  Western Outdoor News, without Plaintiff's permission.  Compl. ¶¶ 8-10; Adams Decl. ¶ 16.  The

18  two argued, and Plaintiff threatened to sue Inloes if he did not refrain from certain conduct in

19  relation to fishing journalism.  SAC ¶ 20; Adams Decl. ¶ 16; Nelson Decl. ¶ 4; Rodriguez Decl. ¶

20  2.  Plaintiff alleges that at no point did he threaten Inloes with any physical violence.  SAC ¶ 20;

21  Adams Decl. ¶ 16; Nelson Decl. ¶ 4; Rodriguez Decl. ¶ 2.

22        *June 24, 2009 Arrest and Criminal Prosecution*

23        Inloes subsequently complained to the Park Rangers about his interaction with Adams.

24  SAC ¶ 21; Adams Decl. ¶ 17.  According to Ranger Hauck, Inloes came into the Seacliff Ranger

25  office at about 12:30 p.m. on June 24, 2009 and reported that Adams threatened him two days

26  earlier, on June 22, 2009.  Hauck Decl. ¶ 6; Kraft Decl. ¶ 14.  Inloes allegedly reported that Adams

27  said the following things to Inloes in warning him not to continue writing news articles: "I will

28

4

United States District Court
For the Northern District of California

have to come fuck your crippled ass up"; "When you're in the ICU you will understand"; "I will fuck you up and put you in the ICU." Hauck Decl. ¶ 6. Hauck states that he promptly looked up the elements of California Penal Code § 422 and began asking Inloes follow-up questions to determine whether probable cause to arrest Adams existed. Inloes indicated to Hauck that he thought Adams would follow through on his threats, that Adams was not capable of controlling his physical rage, and that he had seen Adams attack other people on the pier after first making violent threats. *Id.* ¶ 7. Inloes "also noted a past instance of a knife fight on the pier when things got out of hand with people on the pier," without specifying that this knife fight involved Adams. *Id.* ¶ 8.

Hauck alleges that after speaking with Inloes, he conferred with Kraft, his field-training officer, about whether there was sufficient probable cause under § 422, during which Kraft noted that his own past involvement with Inloes led him to believe Inloes was a credible witness. *Id.* ¶ 9; Kraft Decl. ¶ 14. Kraft then called the Santa Cruz County District Attorney's Office to obtain a second opinion, and the District Attorney's Office confirmed that, based on the facts as reported by Inloes, there was probable cause to arrest under § 422. Hauck Decl. ¶ 9; Kraft Dec. ¶¶ 16-17; Lingenfelter Decl. ¶ 11.

Hauck alleges that he thereafter spoke with both Rangers Stone and Sipes about whether they had any past experience with Adams threatening or verbally harassing people on the pier. Hauck Decl. ¶¶ 10-11. Stone reported an incident on May 12, 2009, in which there was a 911 call reporting a suspect, whose description matched Adams, on the pier yelling obscenities and threatening people. Adams, when questioned by Stone, was "uncooperative, confrontational, and yelled at Stone." Hauck Decl. ¶ 10. Sipes reported that on June 1, 2009, a park patron reported that a suspect on the pier whose description matched Adams was yelling obscenities at him. Again, when approached by Ranger Sipes, Adams was uncooperative, confrontational, and yelled at Sipes. *Id.* ¶ 11.

Hauck then called Inloes at 2:04 p.m. *Id.* ¶ 13. According to Hauck, Inloes provided further substantial details about the June 22, 2009 altercation that were consistent with his earlier account of events and led Hauck to believe Inloes was credible. *Id.* Both Hauck and Kraft

5

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1   determined that there was probable cause to arrest Adams for criminal threats under California

2   Penal Code § 422.  Hauck Decl. ¶ 14; Kraft Decl. ¶ 19.

3           In a letter later written to Plaintiff's former attorney, Inloes explained that he "was

4   demanded by Sea Cliff State park Rangers to write a letter of the events of 6-22-09," which he did.

5   Adams Decl. ¶ 17; SAC ¶ 21.  That letter was a 9-page handwritten statement "that was at times

6   rambling and at times incoherent and contained several exculpatory statements about [Adams]."

7   Adams Decl. ¶ 17; SAC § 21.  Plaintiff believes that the officers who made this request were Kraft,

8   Best, and Lingenfelter.  SAC ¶ 21.

9           According to Plaintiff, on June 24, 2009, Defendants Kraft, Hauck, Stone, Sipes and

10  Bockman arrived at the pier where Plaintiff was sitting and fishing.  SAC ¶ 22; Adams Decl. ¶ 18.

11  Hauck ordered Plaintiff to stand up and follow him.  Hauck refused to answer Plaintiff's queries as

12  to whether he was under arrest, and if so, for what.  Adams Decl. ¶ 18.  Hauck finally announced

13  that Plaintiff was under arrest, but still refused to tell Plaintiff why.  Plaintiff stood in response to

14  Hauck's command, gathering his cell phone, wallet, and keys to give to a fellow fisherman, Angel

15  Huerta, first handing the items to Ranger Sipes.  *Id.*  Plaintiff then attempted to put down a bag of

16  potato chips, but as he did so, Kraft kicked Plaintiff's right hand and wrist.  *Id.*; SAC ¶ 23; Evans

17  Decl. ¶ 7.  Plaintiff then turned around with his back to Hauck and Kraft and offered his arms to be

18  handcuffed.  Adams Decl. ¶ 18.  At this point, Kraft allegedly grabbed Plaintiff by the left arm and

19  forced him into a pain compliance hold, which was very painful for Plaintiff due to his severe

20  osteo-arthritis.  SAC ¶ 24; Adams Decl.¶ 19; *see* Arias Decl. ¶¶ 2-3.  As Kraft held Plaintiff in a

21  pain compliance hold, Hauck applied the handcuff to his right hand and yanked his right arm,

22  causing more pain.  Adams Decl. ¶ 19.  Kraft finally lifted the pain compliance hold, and the

23  officers applied the handcuffs to both wrists.  SAC ¶ 24; Adams Decl.  20.  According to Plaintiff,

24  none of the other Rangers intervened during the course of these events.  SAC ¶ 24.

25          When Plaintiff arrived at the jail, and his handcuffed were removed, his hands and wrists

26  were numb.  Adams Decl. ¶ 21.  He believed that the numbness would subside.  When it did, only

27  then did he realize that his right wrist was injured where Kraft had kicked him, and he sought

28

6

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1    treatment from "Doctors on Duty."  Adams Decl. ¶ 21.  He continues to experience pain and

2    numbness in his right wrist from time to time.  *Id.*

3         Lingenfelter and Kraft filed reports with the District Attorney, seeking prosecution of

4    Adams for misdemeanor charges of violating California Penal Code § 422 (communicating a

5    threat) and § 148 (resisting arrest).  Adams Decl. ¶ 22.  The District Attorney brought those charges

6    against Adams in Santa Cruz Superior Court.  *See* Wells Decl. Ex. 1; Adams Decl. ¶ 23.  Neither

7    Lingenfelter nor Kraft nor any other Park Ranger forwarded or disclosed the existence of Inloes' 9-

8    page written account of the June 22, 2009 events to the District Attorney.  *Id.*; SAC ¶ 25.  The

9    existence of Inloes's complaint was only revealed inadvertently during Plaintiff's September 2009

10   criminal trial.  SAC ¶ 25; Adams Decl. ¶ 24.  Judge Almquist, presiding over the proceeding,

11   dismissed all charges, finding that "if you read Inloes' letter, he wasn't afraid that anything was

12   going to happen immediately or imminently.  He waited 48 hours to even make a complaint about

13   this to law enforcement."  SAC ¶¶ 21, 25-26.  Judge Almquist found it "extremely disturbing that

14   this letter wasn't turned over, specifically since it was given to the officer who was essentially in

15   charge of Officer Hauck and made the decision to treat this as a felony arrest rather than treat it the

16   way it should have been treated."  Wells Decl. Ex. 1, 216:19-23.  Finally, Judge Almquist

17   concluded that probable cause for the § 422 and § 148 arrest was lacking and that the use of force

18   was excessive.  *Id.* at 216-19, 224-25.  Plaintiff was acquitted on "both charges pursuant to a

19   California Penal Code § 1118.1 motion that the prosecution's evidence failed to establish a *prima*

20   *facie* case of guilt."  SAC ¶ 26; Adams Decl. ¶ 25.

21        The last alleged incident occurred on July 31, 2009, while Plaintiff was fishing at Seacliff.

22   SAC ¶ 28.  Plaintiff yelled at another fisherman who was violating "the protocol and law of

23   fishing" by crossing his line with the lines of Plaintiff and others on the pier.  SAC ¶ 28; Adams

24   Decl. ¶ 26.  Plaintiff alleges that after expressing his complaint to a Lifeguard, Defendants Kraft,

25   Best, and Callison ejected Plaintiff from Seacliff for disturbing the peace.  SAC ¶ 28; Adams Decl.

26   ¶ 26.  No other fisherman was ejected, and several witnesses, apparently friends of Plaintiff, told

27

28

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

1  the Rangers of Plaintiff's innocence.  SAC ¶ 28; Adams Decl. ¶ 26; Evans Decl. ¶ 6; Dickie Decl. ¶

2  5; Dunlop Decl. ¶ 5.

3        Plaintiff alleges he filed a California Government Code § 945.4 claim with the state on

4  December 16, 2009 against all Defendants.  The claim was denied on February 18, 2010.  SAC ¶

5  29.

6        **B.  Procedural History**

7        This action commenced on February 10, 2010, and was reassigned to the undersigned on

8  August 2, 2010.  On November 30, 2010, the Court granted Plaintiff's motion for leave to file a

9  First Amended Complaint, *see* ECF No. 77, which Plaintiff filed on December 6, 2010, *see* ECF

10  No. 80.  Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint, which the

11  Court granted in part and denied in part on March 8, 2011.  *See* ECF No. 96.  In the March 8, 2011

12  Order, the Court again gave Plaintiff leave to amend certain claims, leading to Plaintiff's filing of

13  the operative Second Amended Complaint on April 7, 2011.  Defendants again moved to dismiss,

14  and on July 29, 2011, the Court issued an Order Granting in Part and Denying in Part Defendants'

15  Motion to Dismiss Plaintiff's Second Amended Complaint, and Denying Plaintiff's Motion for

16  Leave to Amend.  *See* ECF No. 126.  In light of that order, only the following claims remain:

17      • Plaintiff's false arrest claim under the Fourth Amendment to the U.S. Constitution, as to

18        Defendants Kraft and Hauck;[2]

19      • Plaintiff's excessive force claim under the Fourth Amendment to the U.S. Constitution, as

20        to Defendants Kraft and Hauck; and

21      • Plaintiff's claim under the First Amendment to the U.S. Constitution and Article I, §§ 2 and

22        3 of the California Constitution, as to Defendants Kraft, Hauck, Best, and Lingenfelter.

23

24  [2] In the conclusion section of the Court's July 29, 2011 Order Granting in Part and Denying in Part
Defendants' Motion to Dismiss, the Court inadvertently stated that Defendants' Motion to Dismiss

25  was denied with regard to Plaintiff's false arrest claims under the Fourth Amendment against
Defendants Best and Lingenfelter.  *See* ECF No. 126 at 35.  As was made clear in the substantive

26  body of the Order, however, Plaintiff's false arrest claim was pled against Best and Lingenfelter
solely in their supervisory capacities, and all supervisory liability claims against Best and

27  Lingenfelter were dismissed with prejudice for failure to plead sufficient facts to state a plausible

28  claim for relief.  *See id.* at 26 n.5, 33.

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

*See id.* at 34-35; SAC ¶¶ 30-54.

## II. LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party, *id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party, but on an issue for which the opposing party will have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

## III. EVIDENTIARY MATTERS

In ruling on a motion for summary judgment, the Court may consider only admissible evidence. *See* Fed. R. Civ. P. 56(c); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). A

9

party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

### A.   Defendants' Evidentiary Objections

Defendants filed a separate Objections to Evidence Offered in Opposition to Motion for Summary Judgment. *See* ECF No. 144. However, because Defendants did not comply with Local Rule 7-3(c), which requires all evidentiary and procedural objections to the opposition to be contained within the reply brief or memorandum, the Court will not consider Defendants' separate evidentiary objections. *See* Civil L.R. 7-3(c); *id.* 7-4(b) (limiting a reply brief or memorandum to 15 pages of text). To the extent necessary, the Court addresses Defendants' properly raised objections in the analysis sections below as they relate to summary judgment on each claim.

### B.   Deemed Admissions

Defendants also assert that Plaintiff's failure to respond to Requests for Admissions by Kraft, Hauck, Lingenfelter, and Best rendered such matters admitted on March 7, 2011, by operation of law pursuant to Federal Rule of Civil Procedure 36(a)(3). Br. at 7; Reply at 5-7. Specifically, Defendants argue that summary judgment should be granted based on Plaintiff's admissions that (1) Hauck and Kraft did not violate his First or Fourth Amendment rights, or falsely arrest him or use excessive force during his June 24, 2009 arrest; (2) there was probable cause for his arrest, and he was combative and resisted arrest on June 24, 2009; and (3) Lingenfelter and Best did not violate his First or Fourth Amendment rights and were not involved in the decision to arrest Adams or in Adams' actual arrest. Br. at 7; Reply at 5-7. Rule 36(a)(3) provides that

> [a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.

Fed. R. Civ. P. 36(a)(3).

Plaintiff explains that his failure to timely respond to Defendants' Requests for Admissions was because they were directed to a First Amended Complaint that was dismissed with leave to file

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

a Second Amended Complaint on March 8, 2011.  *See* ECF No. 96 (Order Granting in Part and Denying in Part First Amended Complaint); *see also* Alweiss Decl. Exs. A-D (Kraft's, Hauck's, Lingenfelter's, and Best's Requests for Admissions, all directed to the First Amended Complaint). On March 21, 2011, Defendants filed a motion to compel responses and production of documents, *see* ECF No. 98, and a motion for sanctions, *see* ECF No. 100.  On April 21, 2011, Magistrate Judge Lloyd issued an order (1) granting in part and denying in part Defendants' motion to compel, and (2) denying Defendants' motion for sanctions, on grounds that Defendants were not seriously prejudiced by Plaintiff's delay in serving his discovery responses.  ECF No. 114.  Magistrate Judge Lloyd's order granted Plaintiff ten days from the date of the order to answer Defendants' interrogatories and produce all responsive documents.  *Id.* at 3.

In compliance with Magistrate Judge Lloyd's April 21, 2011 Order, Plaintiff served a response to Lingenfelter's Request for Admissions on April 25, 2011, and a response to Best's Request for Admissions on May 2, 2011, denying the matters Defendants assert should be deemed admitted by operation of law.  *See* Wells Decl. Exs. 2-5.  In addition, Plaintiff served a response to Hauck's and Kraft's Requests for Admission on April 2, 2011.

In light of Plaintiff's eventual responses to Defendants' Requests for Admissions, Plaintiff's legitimate reason for withholding responses given dismissal of the First Amended Complaint, to which the Requests for Admissions were directed, and Magistrate Judge Lloyd's determination that Defendants were not prejudiced by Plaintiff's delayed discovery responses, the Court does not deem any of the matters in the Requests for Admissions admitted by operation of law for failure to timely respond.  *Cf.* Fed. R. Civ. P. 36(b) (permitting withdrawal or amendment of deemed admissions if it would promote the presentation of the merits of the actions and the requesting party would not be prejudiced by the withdrawal of admissions); *Conlon v. United States*, 474 F.3d 616, 623-24 (9th Cir. 2010) (instructing district courts to "focus on the prejudice that the nonmoving party would suffer at trial").

**IV. ANALYSIS**

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

A plaintiff asserting a claim under § 1983 must demonstrate that (1) the action occurred "under color of state law," and (2) the action resulted in the deprivation of a constitutional or federal statutory right. *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988) (internal citations omitted). The parties agree that the Park Rangers here were acting under color of state law. They dispute only whether Defendants violated Plaintiff's First and Fourth Amendment rights. Because Adams bears the burden of proof at trial on his § 1983 claims, Defendants, as the moving party, bears the initial burden on summary judgment of pointing out "an absence of evidence to support [Adams'] case." *Celotex Corp.*, 477 U.S. at 325.

## A. False Arrest

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment." *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001); *accord Lacey v. Maricopa Cnty.*, 649 F.3d 1118, 1131 (9th Cir. 2011). To prevail on such a claim, a plaintiff must demonstrate that the officers lacked probable cause to arrest him. *Norse v. City of Santa Cruz*, 629 F.3d 966, 978 (9th Cir. 2010). Although probable cause is "incapable of precise definition or quantification," *Maryland v. Pringle*, 540 U.S. 366, 371 (2003), it is widely understood that "[p]robable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested," *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *accord Edgerly v. City and Cnty. of S.F.*, 599 F.3d 946, 953 (9th Cir. 2010). To determine whether an arrest is supported by probable cause, the Court must consider "the totality of the circumstances known to the arresting officers" at the time of the arrest. *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008). "'Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part.'" *McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). Furthermore, "[p]olice may rely on hearsay and other evidence that would not be admissible in a court to determine probable cause," *Hart v. Parks*, 450 F.3d 1059, 1066 (9th Cir.

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1    2006), and probable cause may be "founded upon . . . information received from informants, as

2    well as upon information within the affiant's own knowledge that sometimes must be garnered

3    hastily," *id.* (quoting *Franks v. Delaware*, 438 U.S. 154, 165 (1978)).

4         Adams was arrested on charges of violating California Penal Code § 422, Criminal Threats,

5    and California Penal Code § 148, Resisting, Delaying, or Obstructing an Officer. *See* Hauck Decl.

6    Ex. A. Although the criminal case against Plaintiff was later dismissed on both charges, Plaintiff

7    suffered no constitutional violation if probable cause existed at the time of his arrest. *See Michigan*

8    *v. DeFillippo*, 443 U.S. 31, 36 (1979); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir.

9    1995). The Court considers whether there is a triable issue of fact as to whether Defendants had

10   probable cause to arrest Plaintiff under either § 422 or § 148 at the time of his arrest.

11              **1.      California Penal Code § 422, Criminal Threats**

12        California Penal Code § 422 renders it a punishable offense to "willfully threaten[] to

13   commit a crime which will result in death or great bodily injury to another person, with the specific

14   intent that the statement, made verbally, . . . be taken as a threat, even if there is no intent of

15   actually carrying it out." Cal. Pen. Code § 422. A violation of § 422 is punishable as a

16   misdemeanor or as a felony. *See id.* The five elements necessary to establish the offense are: "'(1)

17   the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily

18   injury to another person;" (2) the defendant made the threat "with the specific intent that the

19   statement ... is to be taken as a threat, even if there is no intent of actually carrying it out;" (3) the

20   threat . . . was "on its face and under the circumstances in which it [was] made, . . . so unequivocal,

21   unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose

22   and an immediate prospect of execution of the threat;" (4) the threat actually caused the person

23   threatened "to be in sustained fear for his or her own safety or for his or her immediate family's

24   safety;" and (5) the threatened person's fear was "reasonabl[e]" under the circumstances.'" *In re*

25   *George T.*, 33 Cal. 4th 620, 630 (2004) (internal citations omitted); *accord* Cal. Pen. Code § 422.

26   California Penal Code § 422 "does not require the showing of an immediate ability to carry out the

27   stated threat." *In re David L.*, 234 Cal. App. 3d 1655, 1660 (1991). Whether a person intended

28

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

*(left margin, rotated)* **United States District Court** For the Northern District of California

1    conduct as a threat should be determined based on all the surrounding circumstances.  *People v.*

2    *Gaut*, 95 Cal. App. 4th 1425, 1431 (2002).

3          Defendants identify five factors that they argue adequately established probable cause to

4    arrest Adams for rendering violent criminal threats.  First, Hauck alleges that he spoke with Inloes

5    twice on June 24, 2009, and that Inloes' story was sufficiently detailed and consistent on both

6    occasions.  Each time Inloes described Adams' verbal threats to "come fuck your crippled ass up"

7    and "put you in the ICU," followed by five to ten minutes of profanity.  Hauck found Inloes' victim

8    statements sufficiently detailed to be credible and to form a proper basis for probable cause.

9    Second, Hauck looked up the elements of § 422 and asked Inloes questions related to each of the

10   elements, to which Inloes responded that he thought Adams would follow through with the violent

11   threats, that Adams was not capable of controlling his physical rage, that Inloes had seen Adams

12   attack other people on the pier after first making violent threats, and that there was a past instance

13   of a knife fight when things got out of hand.  Third, Hauck and Kraft obtained a second opinion

14   from the Santa Cruz District Attorney's office confirming that Inloes' statements gave rise to

15   probable cause.  Fourth, Hauck spoke with other Park Rangers about their experiences with Adams

16   and learned that other park patrons had reported similar threats by Adams.  Rangers Stone and

17   Sipes reported that they received and investigated reports of violent threats on May 12, 2009 and

18   June 1, 2009, both times the description of the suspect matched Adams, and Adams was

19   confrontational and uncooperative on both occasions when questioned by the Rangers.  Finally,

20   Adams' uncooperative and confrontational behavior on the pier when Hauck approached him just

21   prior to the arrest confirmed that he was verbally abusive and not capable of controlling his

22   physical rage, as reported by Inloes.

23          Although this "totality of circumstances," as described by Defendants, would establish

24   probable cause, Plaintiff offers a different picture.  While Plaintiff obviously is not privy to what

25   Inloes told Hauck, he offers evidence, presented during his criminal proceedings, that casts

26   sufficient doubt on the credibility of Defendants' assertions so as to create a triable issue of

27

28

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

material fact.[3]  Adams has raised substantial questions about the credibility of Hauck's and Kraft's declarations, as well as about whether a reasonable officer would have failed to undertake further investigation given the facts at hand.

First, it came to light during Adams' criminal trial that the Rangers' office withheld from Adams' defense lawyer and the court a 9-page letter written by Inloes "that the field training officer who wrote one of the reports in this case has had in his possession." Wells Decl. Ex. 1 at 215:12-16.  The state court judge described the letter as containing "a number of inconsistent statements to what Mr. Inloes testified to in this case, including being very wishy-washy about the actual effect of these, quote, unquote, threats on him. . . . And at one point he says that he wasn't intimidated by it.  There's a variety of statements like that that are contradictory." *Id.* at 216:14-217:9.  The state court judge also found it "extremely disturbing that this letter wasn't turned over, specifically since it was given to the officer who was essentially in charge of Officer Hauck and made the decision to treat this as a felony arrest rather than treat it the way it should have been treated." *Id.* at 216:18-23.  Although it is unclear from the record when Inloes wrote this exculpatory letter and whether Hauck and Kraft had it in their possession prior to the arrest,[4] the Court takes judicial notice of the criminal trial transcript and finds that, even if the Rangers did not have Inloes' 9-page letter prior to making the arrest, their failure to disclose it during Adams' criminal trial both undermines their credibility and casts doubt on their account of Inloes' in-person complaint.

---

[3] Defendants object to Plaintiff's introduction of excerpts from his criminal trial transcript on grounds of hearsay and lack of foundation.  *See* Reply Br. at 14.  The Court overrules Defendants' objection.  Pursuant to Federal Rule of Evidence 201, the Court will take judicial notice of the existence of documents from a criminal proceeding against Adams in Santa Clara County Superior Court as "matters of public record." *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001).  To the extent Plaintiff asks the Court to take judicial notice of facts that are "subject to reasonable dispute," *id.*, the Court does not accept as true the facts alleged in the documents, but does construe all evidence in the light most favorable to the nonmoving party.

[4] Defendants claim that the letter was written after the probable cause determination was already made and after Adams' arrest was completed, *see* Reply Br. at 3, but point to no evidence to support this bare assertion.

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    Second, although Hauck and Kraft stated in their declarations that they called the District

2    Attorney's Office to seek a second opinion on probable cause, neither mentioned doing so while

3    testifying in Adams' criminal proceedings on the § 422 and § 148 charges.  *See* Wells Decl. Ex. 1

4    at 138-39 (Hauck); 193-94 (Kraft).  This failure to mention contacting the District Attorney's

5    Office during trial testimony at least raises an inference that the Rangers did not, in fact, contact

6    the District Attorney's Office and therefore cannot rely on that factor as a basis for probable cause.

7    Third, although Hauck concludes, based on his conversations with Rangers Stone and

8    Sipes, that Adams exhibited a pattern of verbally accosting others and "following through with

9    those threats," Defendants in fact offers no evidence that Adams ever acted violently toward

10   anyone.  Viewed in the light most favorable to the Plaintiff, a jury could conclude that the pattern

11   of reported threats by Adams without any reports of actual violence in fact undermined the

12   Rangers' basis for believing Adams "willfully threatened to commit a crime" of violence.  Cal.

13   Pen. Code § 422.

14   Similarly, as Judge Almquist noted, the fact that Inloes waited two days before reporting

15   the alleged threat would likely put a reasonable officer on notice that the victim did not fear a threat

16   "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a

17   gravity of purpose and an immediate prospect of execution of the threat."  Cal. Pen. Code § 422;

18   *see* Wells Decl. Ex. 1 at 224-25 ("A decent investigation of something as serious as one that would

19   charge somebody with a felony and do a felony arrest in public on a public pier in the middle of the

20   day requires that you do more of an investigation than simply taking somebody's word for

21   something that happened two days before and turn it into a big event like this.").  Inloes' delay of

22   two days to report the alleged crime undercuts the Defendants' need to effect an immediate arrest

23   without undertaking further investigation.

24   Finally, having challenged Defendants' various grounds for establishing probable cause,

25   Adams presents evidence that further investigation and interview of witnesses would have

26   extinguished any basis for arresting Adams on a suspected § 422 charge.  Gavin Nelson submitted

27   a sworn declaration that he was present when Adams and Inloes had their altercation on June 22,

28

16

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1    2009 and that Adams made no threats of violence or injury to Inloes, but no Park Ranger ever

2    contacted him to ask him what he had witnessed.  Nelson Decl. ¶¶ 4, 6.  Lazaro Rodriguez also

3    submitted a sworn declaration that he witnessed Adams' and Inloes' argument on June 22, 2009,

4    stating that he "heard [Adams] tell [Inloes] not to use his name in the paper again.  As he was

5    walking away from [Inloes], [Adams] said 'If you use my name again, I'll sue your ass.'  [Adams]

6    made no threats of violence or injury to Inloes."  Rodriguez Decl. ¶ 2.  No Park Ranger questioned

7    Rodriguez about the incidents of June 22, 2009.  Rodriguez Decl. ¶ 3.

8           Defendants are correct that the Court may consider only what Hauck and Kraft knew at the

9    time of arrest in conducting its probable cause analysis.  Moreover, officers are not required, once

10   probable cause is established, to search for exculpatory evidence.  Under appropriate

11   circumstances, an officer may rely solely on a victim's credible statement in determining probable

12   cause exists to believe a crime has been committed.  *See Peng v. Penghu*, 335 F.3d 970, 979 (9th

13   Cir. 2003).  Nonetheless, this does not mean that the Court must take the officer's account of the

14   victim's alleged statement at face value on summary judgment, nor does it mean that the Court is

15   forbidden from looking beyond the officer's testimony to determine whether it was reasonable for

16   the officer to rely on the victim's statement or whether the officer's account of the victim's

17   statement is credible.  *See Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1292 (9th

18   Cir. 1999) (rejecting defendants' argument that their reasonable reliance on information provided

19   by FBI agents entitled them to qualified immunity where there were factual disputes as to what the

20   FBI agents actually said);  *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925

21   (9th Cir. 2001) ("[O]fficers may not solely rely on the claim of a citizen witness that he was a

22   victim of a crime, but must independently investigate the basis of the witness' knowledge or

23   interview other witnesses." (citing *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir. 1991)).

24   Furthermore, while "conclusive evidence of guilt is not necessary to establish probable cause,

25   'mere suspicion, common rumor, or even strong reason to suspect are not enough.'"  *Edgerly*, 599

26   F.3d at 953 (quoting *Lopez*, 482 F.3d at 1072).  Plaintiff's evidence revealing the existence of an

27   exculpatory letter written by the alleged victim and in the officers' possession is relevant to a fact-

28

United States District Court
For the Northern District of California

17

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

finder's assessment of the officers' credibility and, in turn, to the question of whether Inloes' oral statements to Hauck were sufficient to establish probable cause or would have prompted a reasonable officer to investigate further.

In light of the foregoing discussion, the Court finds that genuine issues of material fact exist as to whether Defendants had probable cause to believe that all five elements of § 422 were met at the time of Adams' arrest. *See Beck v. City of Upland*, 527 F.3d 853, 868 (9th Cir. 2008) (finding nonmoving party's evidence sufficient to withstand summary judgment where plaintiff showed that the police did not investigate the matter beyond making a few phone calls before going to the District Attorney to file charges and secure an arrest warrant, and where the police report omitted certain exculpatory facts and reported the crime as a potential felony, rather than as a misdemeanor). Accordingly, Defendants have not shown that they are entitled to summary judgment on this basis.

### 2.      California Penal Code § 148, Resisting Arrest

The Park Rangers assert that they also had probable cause to arrest Adams for violation of California Penal Code § 148, Resisting, Delaying, or Obstructing an Officer, which renders it a punishable offense to "willfully resist[], delay[], or obstruct[] any public officer . . . in the discharge or attempt to discharge any duty of his or her office or employment." Cal. Pen. Code § 148.

Again, Plaintiff and Defendants offer different accounts of the actual circumstances and nature of Plaintiff's arrest. According to Defendants, Hauck first approached Adams on the pier, stopping about four to six feet away, and asked him to confirm his identity and then to walk toward the shore with Hauck. Adams jumped up, yelled at Hauck to speak to him where they were standing, and then came closer to Hauck "in an in-and-out manner." Hauck Decl. ¶ 19. As soon as Hauck told Adams he was under arrest for making criminal threats, Adams began fidgeting with his hands and reaching across his body into his pockets. Adams refused to comply with Hauck's request to show his hands and instead reached for something in his pocket, pulling out a small black hand-held device and waving it at Hauck "in a threatening manner." Adams then called out

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

to his "friends" on the pier to assist him. Adams continued to reach for his hip-sack, which Hauck noticed held a variety of items, including scissors, and continued to move closer toward Hauck, all the while moving his arms about, reaching into his pockets, and "flail[ing] his hands wildly at [Hauck]." *Id.* ¶¶ 23-25.

Plaintiff's version of events differs from Defendants' in material ways. According to Plaintiff, he was sitting on the pier when Hauck approached him and ordered him to stand up, shut up, and follow him. When Adams asked why he was being asked to go, Hauck refused to answer. Adams asked whether he was under arrest, and if so, what for, but still Hauck gave no answer. Adams said he felt more comfortable answering questions in front of witnesses, at which point Hauck announced that Adams was under arrest but still did not explain why. Adams stood in response to Hauck's command but "did not approach him in any manner." Adams Decl. ¶ 19. Adams gathered his cell phone, wallet, and keys and handed them over to Ranger Snipes to give to a fellow fisherman, Angel Huerta, for safekeeping. At least two witnesses also submitted declarations confirming that "at no time did [Adams] resist the arrest. He did not make any threatening gestures towards the Rangers. [Adams] was verbally protesting their actions, however he made no physical moves to resist." Evans Decl. ¶ 7; Huerta Decl. ¶ 3 ("I observed that at no time did [Adams] resist the arrest. He did not make any threatening gestures towards the Rangers. The Rangers told [Adams] to stand up and shut up. At no time did he thrust his body towards the arresting officers. [Adams] kept asking why he was being arrested and what he was being charged with and the officers said 'we can't say.'"). Furthermore, the transcript from Adams' criminal trial reflects Hauck's sworn testimony that Adams "was not being aggressive towards [Hauck]" but rather was primarily asking why he was under arrest. Wells Decl. Ex. 1 at 178:8-18.

The Court finds that Plaintiff has raised a triable issue of material fact as to whether Hauck informed Adams of the basis for his arrest, whether Adams moved toward Hauck in a threatening manner, and whether Adams waved his hands wildly and reached into his pockets or rather simply removed his hip-sack and handed his belongings to Ranger Snipes. Given this dispute of material

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    facts as to whether Adams was resisting arrest, summary judgment on this ground would be

2    improper.

3          In sum, the Court concludes that triable issues of fact exist with respect to the existence of

4    probable cause to arrest Plaintiff, pursuant to Cal. Penal Code § 422 and § 148, and summary

5    judgment on Plaintiff's Fourth Amendment false arrest claim is accordingly DENIED.

6                    **B.  Excessive Force**

7          Plaintiff also seeks to hold Defendants Kraft and Hauck liable for using excessive force

8    during the course of his June 24, 2009 arrest.  *See* SAC ¶¶ 47-54.  Specifically, Plaintiff alleges that

9    Kraft applied excessive force when he "unnecessarily and gratuitously kicked Adams" in the wrist

10   as he was setting down his bag of potato chips, and that both Kraft and Hauck applied excessive

11   force when they forced him into a pain compliance hold.  *Id.* ¶¶ 48-49.  Plaintiff seeks damages for

12   his resulting physical and emotional injuries, including medical expenses and pain and suffering.

13   *Id.* ¶¶ 51-53.

14         An excessive force claim that arises in the context of an arrest is properly characterized as

15   one invoking the protections of the Fourth Amendment's prohibition against unreasonable seizures.

16   *See Graham v. Connor*, 490 U.S. 386, 394 (1989); *Norse*, 629 F.3d at 978.  The Court considers

17   "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances

18   confronting them, without regard to their underlying intent or motivation."  *Graham*, 490 U.S. at

19   397; *accord Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010).  Determining whether an

20   officer's actions are "objectively reasonable" requires the Court to balance "the 'nature and quality

21   of the intrusion' on a person's liberty with the 'countervailing governmental interests at stake.'"

22   *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (quoting *Graham*, 490 U.S. at 396); *accord*

23   *Scott v. Harris*, 550 U.S. 372, 383 (2007); *Tennessee v. Garner*, 471 U.S. 1, 8 (1985).  Stated

24   otherwise, the Court must "'balance the amount of force applied against the need for that force.'"

25   *Bryan*, 630 F.3d at 823-24 (quoting *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003)).

26                **1.    Nature and Quality of the Intrusion**

27

28

**United States District Court**
For the Northern District of California

20

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

Defendants argue that the nature and quality of the intrusion here was "less than *de minimis*," Br. at 13, quoting the Supreme Court's admonition that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted). In support of their argument, Defendants cite various cases holding that allegations of pain "as a result of being handcuffed" are insufficient to support an excessive force claim, in the absence of medical records establishing actual injury as a result of being handcuffed. Br. at 13 & n.1. *See Arpin*, 261 F.3d at 922 (citing *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990) ("Allegations of pain as a result of being handcuffed, without some evidence of more permanent injury," are insufficient to support a claim of excessive force)).

Adams' excessive force claim, however, arises not from the mere act of being handcuffed, but rather from allegations that Kraft kicked him in the wrist without justification and that both Kraft and Hauck unnecessarily put him in a pain compliance hold that caused him significant pain due to his osteo-arthritis. Although Kraft denies kicking Adams and states in his declaration that he used his right foot to "[sweep] aside Adams's hip-sack . . . so it would be out of Adams's reach," Kraft Decl. ¶ 23, Plaintiff offers evidence by several eyewitnesses contradicting Kraft's version of events. *See* Arias Decl. ¶ 2; Evans Decl. ¶ 7. One witness, Jeremy Evans, recalls that, upon Adams offering his hands to be handcuffed, "Officer Kraft and . . . Ranger Hauck[] grabbed [Adams'] arms and jerked him around violently." Evans Decl. ¶ 7. Another witness, Juan Arias, declared that the officers "jumped on [Adams] and twisted his arm violently," and they heard Adams tell the officers that he had arthritis and that they were hurting him. Arias Decl. ¶ 2. Arias also declares that he recorded the incident on his cell phone, although he stopped at one point at the officer's order to do so.[5] *See* Arias Decl. ¶ 3; Arias Decl. Ex. 1 (DVD).

---

[5] Defendants object to the admissibility of Exhibit 1 to the Arias Declaration on grounds that it constitutes hearsay and lacks authentication. On summary judgment, unauthenticated documents may be considered where it is apparent that they are capable of being reduced to admissible evidence at trial. *See Curnow v. Ridgecrest Police*, 952 F.2d 321 (9th Cir. 1991), *cert. denied*, 506 U.S. 972 (1992). However, the Court's summary judgment ruling does not rely on the video evidence, and thus the Court need not address Defendants' objection beyond reminding Plaintiff that all evidence at trial must be properly authenticated.

21

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Plaintiff also asserts that he suffered physical injury as a result of being kicked in the wrist.

2    While Plaintiff's submission of at least some medical records distinguishes his case from *Arpin v.*

3    *Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001), his delay of five days

4    before seeking medical treatment casts some doubt on the plausibility of his claim of physical

5    injury.  *See* Alweiss Decl. Ex. L.  Furthermore, Defendants submit a declaration by Ginny

6    Chiguaque, RN, a registered nurse with the Santa Cruz County Sheriff's Office who conducted an

7    intake evaluation of Adams shortly after his arrest and who noted that Adams did not complain of

8    any injury to his hands, wrists, or arms, nor did she personally observe any physical injury to his

9    hands or wrists during her intake evaluation.  Chiguaque Decl. ¶ 8; *see also* Hallas Decl. ¶ 7.

10   Nonetheless, the Court finds that Plaintiff has put forth enough evidence to create a triable issue of

11   fact as to whether this factor favors Defendants.

12                   **2.      Governmental Interest in the Use of Force**

13           The Court evaluates "the government's interest in the use of force by examining three core

14   factors: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to

15   the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to

16   evade arrest by flight."  *Bryan*, 630 F.3d at 826 (citing *Graham*, 490 U.S. at 396).  Defendants

17   argue that whatever minimal force Hauck and Kraft applied was justified by the strong

18   governmental interests at stake, in light of the violent nature of the § 422 charge for which Adams

19   was being arrested, the fact that Adams was armed with multiple weapons and posed an immediate

20   threat to officer safety, and his active resistance to arrest.  *See* Br. at 15-16.

21           Although Defendants' characterization of the three "core factors," if true, would establish a

22   substantial governmental interest in the use of force, not all factors are undisputed.

23                           **a.  Severity of the Crime**

24           Making violent threats as defined by § 422 is a serious crime, and therefore this factor

25   would seem to weigh in favor of Defendants.  However, as discussed above, Plaintiff has set forth

26   substantial evidence that Defendants lacked probable cause to arrest Plaintiff under § 422

27   altogether.  Because there are genuine issues of material fact as to whether Defendants not only

28

22

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

1    lacked probable cause to make a § 422 arrest, but may have even known that they lacked probable

2    cause and used Inloes' complaint as pretext to retaliate against Plaintiff for protected First

3    Amendment activity, *see* Section IV.C, *infra*, Defendants have not shown on summary judgment

4    that severity of the crime at issue is a factor in their favor.  Moreover, even if they had made such a

5    showing, the severity of the crime is mitigated by the fact that Plaintiff was outnumbered five to

6    one by law enforcement officers at the time of the arrest.  *See Chew v. Gates*, 27 F.3d 1432, 1443

7    (9th Cir. 1994) (significance of plaintiff's alleged crimes lessened by fact that he "was completely

8    surrounded by the police, and that the prospects for his imminent capture were far greater than are

9    those of the many fleeing suspects who are fleeter [sic] than the police officers chasing them").

10   The Court is unable to find conclusively that this factor favors either party, and the evidence must

11   be weighed by a jury.

12                          **b.  Immediate Threat to Safety of Officers or Others**

13           Whether Plaintiff posed an immediate threat to others' safety is "the most important single

14   element" of the *Graham* excessive force analysis.  *Chew*, 27 F.3d at 1441.  Defendants allege that

15   Plaintiff was "armed" as justification for their use of force.  Plaintiff admits that he carried a 110

16   Buck folding knife and a Gerber utility tool on his belt.  Alweiss Decl. Ex. G 119:9-14, 120:14-15.

17   Each of these tools was carried in its own separate sleeve or pouch.  *Id.* at 119:22-120:4.  Adams

18   also admits that he carried a pair of Fiskars scissors with a rounded nose, whose total length,

19   including the handles, is approximately three inches.  *Id.* at 126:14-20.  According to Adams' own

20   deposition testimony, when the Park Rangers arrived to arrest Adams, he was holding the Fiskars

21   scissors in his hand, using them to remove a splinter from his finger.  *Id.* 125:25-126:12.  Hauck,

22   however, states that he "noticed Adams had a hip-sack with various items, including scissor

23   handles sticking out."  Hauck Decl. ¶ 21.

24           Although Adams' admission that he was armed with two knives and a pair of scissors at the

25   time of his arrest is a factor strongly favoring Defendants, Adams also submits evidence that he

26   had already removed his tool belt and offered his hands for handcuffing, thereby substantially

27   minimizing any risk of immediate threat to officer safety, when Kraft put him in a pain compliance

28

                                                         23

1    hold.  Due to this dispute of material fact, the Court is unable to find conclusively that this factor

2    favors either party, and again, the evidence must be weighed by a jury.

3                           **c.   Actively Resisting Arrest**

4           An individual does not have the right to resist arrest simply because probable cause is

5    absent unless the resistance is triggered by an officer's bad faith or provocative conduct.  *Arpin*,

6    261 F.3d at 921.  However, noncompliance does not constitute active resistance.  *See Winterrowd*

7    *v. Nelson*, 480 F.3d 1181, 1185 (9th Cir. 2007) (holding that suspect's "belligerent attitude" did

8    "not justify the deliberate infliction of pain," where suspect's "objections were entirely verbal" and

9    he "pose[d] no physical danger"); *Santos*, 287 F.3d at 854 (suspect did not actively resist arrest

10   when he turned around as ordered but dropped his hands to his sides instead of placing them on his

11   head); *Meredith*, 342 F.3d at 1061 (finding excessive force where officer threw suspect to the

12   ground and twisted her arms to handcuff her, after suspect "objected vociferously" to a search of

13   her residence and merely "passively resisted" handcuffing).  "'While police, no less than anyone

14   else, may resent having obscene words and gestures directed at them, they may not exercise the

15   awesome power at their disposal to punish individuals for conduct that is not merely lawful, but

16   protected by the First Amendment.'"  *Winterrowd*, 480 F.3d at 1185 (quoting *Duran v. City of*

17   *Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990)).

18          The Park Rangers assert that they had reason to believe Adams would be confrontational

19   and noncompliant based on the Rangers' past experiences with him but have not "cite[d] a single

20   instance where [Adams] was physically abusive when stopped by the police.  *See Winterrowd*, 480

21   F.3d at 1185 (rejecting officers' "vague suspicions" that the suspect would resist arrest as

22   justification for the use of force where officers had no concrete examples of violence).

23   Furthermore, although Hauck and Kraft state that Adams was being uncooperative and resisted

24   arrest, Adams submitted declarations from several witnesses who attested to the contrary.  *See*

25   Huerta Decl. ¶ 3 ("I observed that at no time did [Adams] resist the arrest.  He did not make any

26   threatening gestures towards the Rangers.  The Rangers told Berry to stand up and shut up.  At no

27   time did he thrust his body towards the arresting officers.  [Adams] kept asking why he was being

28

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

**United States District Court**
For the Northern District of California

arrested and what he was being charged with and the officers said 'we can't say.'"); Evans Decl. ¶ 7 ("I can state with certainty that at no time did Berry make any threatening gestures or comments to the arresting Rangers—Berry's actions were never aggressive in any way.").

Finally, Adams submits evidence that Defendants had a retaliatory motive for arresting him and using excessive force while doing so.  *See* Section IV.C, *infra*.  While the Court must consider the facts without regard to the arresting officer's subjective motivation for using force, "the officers' underlying motivations could cast doubt on their version of the incident."  *Winterrowd*, 480 F.3d at 1185 n.7 (internal quotation marks omitted).  "This is a matter to be sorted out by the trier of fact," *id.*, and therefore the Court cannot conclude that the officers' use of force was justified.

### 3.       Balancing the Competing Interests

Although Defendants argue that the use of force was "de minimis" and justified by the strong governmental interests at stake, Plaintiff has set forth sufficient facts from which a reasonable jury could conclude that (1) Kraft kicked Adams' wrist, (2) Kraft and Hauck put Adams into a pain compliance hold, (3) neither of these actions was prompted by aggressive or uncooperative behavior on Adams' part, and (4) the officers lacked probable cause to arrest Adams in the first place.  The Ninth Circuit has cautioned that "[b]ecause the reasonableness standard 'nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, . . . summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.'"  *Torres v. City of Madera*, 648 F.3d 1119, 1125 (9th Cir. 2011) (quoting *Santos*, 287 F.3d at 853 (internal citation omitted)).  A reasonable jury could weigh the evidence and conclude that the balance of competing interests did not justify Defendants' use of force, no matter how minimal, such that Defendants' actions were objectively unreasonable and thus violative of Plaintiff's Fourth Amendment rights.  For these reasons, the Court denies Defendants' motion for summary judgment on Plaintiff's Fourth Amendment claim or excessive force.

### C.  First Amendment Retaliation and California Constitution Article I, §§ 2, 3

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    Plaintiff alleges that the June 24, 2009 unlawful arrest, use of excessive force during said

2    arrest, and other incidents in which he was generally harassed, were done in retaliation against him

3    for exercising his free speech rights under the First Amendment and the California Constitution,

4    including the rights to publicly criticize officials without fear of retaliation and to petition for

5    redress of grievances.  *See* SAC ¶¶ 30-37.  Plaintiff alleges that, as a result of publicly criticizing

6    the Park Rangers and petitioning for redress of his grievances against them, Defendants Kraft,

7    Hauck, Best, and Lingenfelter subjected him to "harassment, citation without probable cause,

8    searches without probable cause, threat of arrest, use of unnecessary force in connection with an

9    arrest, ejectment from Seacliff, attempted barring from Seacliff and other beaches, promotion of

10   the criminal prosecution of [him], and/or impaired ready access to evidence necessary and helpful

11   to his defense of a criminal prosecution."  *Id.* ¶ 32.  Plaintiff alleges to have suffered emotional

12   distress as a result of Defendants' retaliatory actions.  *Id.* ¶ 34.

### 1.    First Amendment

14   "The First Amendment forbids government officials from retaliating against individuals for

15   speaking out."  *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (citing *Hartman v.*

16   *Moore*, 547 U.S. 250, 256 (2006)); *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)).

17   To demonstrate a First Amendment violation, a plaintiff "must provide evidence showing that by

18   his actions the defendant deterred or chilled the plaintiff's political speech and such deterrence was

19   a substantial or motivating factor in the defendant's conduct."  *Mendocino Envt'l Ctr.*, 192 F.3d at

20   1300 (internal quotation marks and alterations omitted).  Specifically, a plaintiff must make three

21   showings: "(1) he engaged in activity that is constitutionally protected; (2) as a result, he was

22   subjected to adverse action by the defendant that would chill a person of ordinary firmness from

23   continuing to engage in the protected activity; and (3) there was a substantial causal relationship

24   between the constitutionally protected activity and the adverse action."  *Blair*, 608 F.3d at 543

25   (citing *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)); *see also Skoog v.*

26   *Cnty. of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006).

### a.   Constitutionally Protected Speech

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1    In his SAC, Plaintiff claims that he engaged in several forms of protected speech, including

2    (1) endeavoring to have his open container citation rescinded; (2) complaining to Lingenfelter

3    about the behavior of subordinate Park Rangers; and (3) openly criticizing the Park Rangers in a

4    televised interview at the June 22, 2009 rally.  *See* SAC ¶¶ 12, 17, 19.  These allegations are

5    supported by Adams' own declaration, as well as those of several witnesses.  *See* Evans Decl. ¶¶ 2-

6    4 (describing the February 18, 2008 open container incident and subsequent rescinding of the

7    ticket); Dickie Decl. ¶¶ 2-4; Dunlop Decl. ¶ 2.  These activities constitute protected speech, *see*

8    *CarePartners LLC v. Lashway*, 545 F.3d 867, 876-77 (9th Cir. 2008) (holding that the right to

9    petition the government for redress of grievances is a protected First Amendment right); *Soranno's*

10   *Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (observing that plaintiff had a

11   protected interest in commenting on the actions of government officials)—a fact that Defendants

12   do not appear to contest.  "[C]itizens who are allegedly targeted by law enforcement because of

13   their political speech activities" are "prototypical" plaintiffs for a § 1983 claim of retaliation.

14   *Blair*, 608 F.3d at 544 (citing *Mendocino Envtl. Ctr.*, 192 F.3d at 1288-89).  Accordingly, the Court

15   finds that Plaintiff has set forth sufficient evidence supporting the first element of his First

16   Amendment retaliation claim to withstand summary judgment.

17                          **b.  Adverse Action**

18           Next, Plaintiff must prove that he was subjected to adverse action that would discourage an

19   ordinary person from further engagement in the protected activity.  To satisfy this second element

20   of a First Amendment claim, Plaintiff alleges that Defendants targeted him for harassment in the

21   form of: illegal searches by Defendants Kraft and Callison on June 15, 2008 and other unknown

22   dates, *see* SAC ¶¶ 13-14; an unfair citation by Defendant Stone on July 8, 2008, *id.* at ¶ 15; a false

23   arrest by Defendants Hauck and Kraft on June 24, 2009, *id.* at ¶¶ 22-24; excessive use of force

24   during an arrest by Defendants Hauck and Kraft on June 24, 2009, *id.*; a baseless stay away order

25   requested by Defendant Lingenfelter, *id.* at ¶ 17; promotion of his criminal prosecution, *id.* at ¶ 32;

26   and withholding of exculpatory evidence from the District Attorney during his criminal

27   prosecution, *id.* at ¶¶ 25-27.

28

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

1    As the Court previously held in denying Defendants' motion to dismiss Plaintiff's First

2 Amendment claim, "if true, this pattern of behavior culminating in the June 24, 2009 false arrest,

3 constitutes substantial adverse action that would discourage Plaintiff from challenging the behavior

4 of Park Rangers in the future."  Order Granting in Part and Denying in Part Defendants' Motion to

5 Dismiss, ECF No. 126 at 15 (citing *Beck*, 527 F.3d at 868).  Now on summary judgment, the Court

6 finds that Plaintiff has set forth sufficient evidence to create a genuine issue of material fact as to

7 whether at least some of these alleged incidents of adverse action in fact took place.  *See generally*

8 Background Section, *supra*.  Plaintiff therefore satisfies the second element of a First Amendment

9 claim for summary judgment purposes.

10                                **c.  Causation**

11    Finally, Plaintiff must set forth sufficient facts from which a reasonable jury could conclude

12 that there was a "substantial causal relationship" between Plaintiff's constitutionally protected

13 activity and the adverse actions he suffered.  *See Blair*, 608 F.3d at 543.  Because Adams asserts

14 only an "ordinary retaliation claim" and not a claim for retaliatory prosecution, which involves

15 more complicated matters of causation, *Beck*, 527 F.3d at 864 n.12 (internal quotation marks

16 omitted), he "need not plead the absence of probable cause in order to state a claim for retaliation,"

17 *Skoog*, 469 F.3d at 1232.  Rather, he must prove only that the adverse action was "motivated by

18 retaliatory animus."  *Id.* at 1235.

19    Retaliatory intent can be demonstrated through either direct or circumstantial evidence.

20 *Mendocino Envt'l Ctr.*, 192 F.3d at 1301-02; *see Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir.

21 1997) (circumstantial evidence that inmate had reputation for filing grievances and had told a guard

22 that he planned to file a grievance, combined with jury's rejection of the guard's purported reason

23 for punishing the inmate, warranted jury's finding that the guard filed the disciplinary report in

24 retaliation for the prisoner's use of the grievance system).  As noted by the Ninth Circuit, "[d]irect

25 evidence of improper motive . . . will only rarely be available."  *Mendocino Envt'l Ctr.*, 192 F.3d at

26 1302.  "Moreover, 'questions involving a person's state of mind . . . are generally factual issues

27 inappropriate for resolution by summary judgment.'"  *Id.* at 1302 (quoting *Braxton-Secret v.*

28

                                    28

*Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985)).  To prevail on a § 1983 First Amendment claim, Plaintiff is not required to offer "'clear and convincing evidence on the [defendant's] state-of-mind,'" either at summary judgment or at trial.  *Skoog*, 469 F.3d at 1232 (quoting *Crawford-El v. Britton*, 523 U.S. 574, 583 (1998)) (alterations omitted).

### i.  Best

On the summary judgment record, a rational jury could find for Adams on his retaliation claim against Best.  Adams presents evidence showing that, following his efforts to have Best rescind his open container citation, Best's subordinate officers would single him out for harassment, treating him differently from others on the pier, each time attributing the adverse action to payback for their boss, Best.  Plaintiff submits declarations from multiple witnesses who allege that they saw the Park Rangers "hassling [Adams]," accompanied by such comments as "My boss has not forgotten you" and "This is for my boss."  *See* Huerta Decl. ¶ 5; Evans Decl. ¶10; Dickie Decl. ¶ 5; Dunlop Decl. ¶ 5; Nelson Decl. ¶ 8; Valdez Decl. ¶ 7.  Plaintiff also submits declarations from witnesses who assert that they have seen the Park Rangers "single[] out Berry Adams for punishment," "hassl[ing]" him alone even though several fishermen were engaged in the same conduct.  Evans Decl. ¶ 6; Dickie Decl. ¶ 5; Dunlop Decl. ¶ 5; Nelson Decl. ¶ 3; Valdez Decl. ¶ 3.  The Court finds that Plaintiff has presented sufficient evidence of Best's alleged retaliatory intent to withstand summary judgment.  Summary judgment on Plaintiff's First Amendment claim as to Best is accordingly DENIED.

### ii.  Kraft

Although Kraft was not with Best when he issued the citation on February 15, 2008, he was on patrol with Best as a senior park aid the following day, February 16, 2008, when Adams successfully convinced Best to rescind the open container citation.  *See* Kraft Decl. ¶ 4.  Kraft states that he had no direct law enforcement contact with Adams prior to the June 24, 2009 arrest; however, he was aware of who Adams was and had exchanged "social greetings" with him.  *Id.*

The Court finds Plaintiff's circumstantial evidence just barely sufficient to raise an inference of retaliatory intent.  When combined with the genuine issues of material fact that exist

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    as to whether the officers had probable cause to arrest Adams for §§ 422 and 148, the Court

2    concludes that summary judgment on Plaintiff's First Amendment claims against Kraft is not

3    appropriate.  *See, e.g.*, *Duran*, 904 F.2d at 1377 (denying summary judgment where plaintiff's First

4    Amendment conduct "suggest[ed] a possible motive for his detention," even though defendant

5    claimed that "he had no retaliatory motive—that he honestly believed [plaintiff's] actions indicated

6    that criminal activity might be afoot"); *Mendocino Env't Ctr.*, 192 F.3d at 1300 (denying summary

7    judgment where genuine issues of material fact existed regarding probable cause for plaintiffs'

8    arrests and there was circumstantial evidence of retaliatory motive).  Accordingly, summary

9    judgment on Plaintiff's First Amendment claim as to Kraft is DENIED.

10                              **iii.  Hauck**

11            In this Court's July 29, 2011 Order Granting in Part and Denying in Part Defendants'

12   Motion to Dismiss, the Court noted that "[t]o overcome a defense motion for summary judgment . .

13   . Plaintiff will have to do far more to proceed with his retaliation claim against Defendant Hauck.

14   ECF No. 126 at 18 n.4.  Plaintiff must demonstrate, either through direct or circumstantial

15   evidence, that Hauck had knowledge of his protected First Amended activities.  Now before the

16   Court on summary judgment, Plaintiff has not come forward with more specific allegations or any

17   evidence to support his retaliation claim against Hauck.  Unlike Best and Kraft, who had been

18   peace officers with the Department of Parks and Recreation for ten and eight years, respectively,

19   and who had prior familiarity with Adams, *see* Best Decl. ¶ 1; Kraft Decl. ¶ 1, Hauck only joined

20   the department as a peace officer in April 2009, Hauck Decl. ¶ 4.  Hauck claims that he had no

21   prior knowledge of or communication with Inloes or Adams before the June 24, 2009 incident, and

22   furthermore that he did not know Best had issued a citation to Adams or that Adams had made any

23   complaints to Lingenfelter about the Park Rangers until this lawsuit was filed.  Hauck Decl. ¶¶ 5,

24   31.

25            Plaintiff produces no evidence to rebut these claims.  Plaintiff argues that a reasonable

26   inference of retaliatory intent can be drawn from the sheer timing of the June 24, 2009 arrest,

27   which occurred just two days after Adams' critical interview of the Park Rangers was televised on

28

                                            30

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1    a widely watched local network, but Plaintiff has no evidence that Hauck saw or heard about the

2    broadcast.  Unlike in *Hines*, where there was evidence that the defendant knew of at least one

3    instance of plaintiff's First Amendment activity, in addition to evidence of plaintiff's general

4    "reputation for 'complaining' or 'whining,'" *see* 108 F.3d at 268, here, Plaintiff has nothing more

5    than pure speculation as to Hauck's alleged retaliatory motive.  Plaintiff cannot drag a defendant to

6    trial on pure speculation alone.  The Court accordingly GRANTS summary judgment on Plaintiff's

7    First Amendment claim as to Hauck.

8                                            **iv.  Lingenfelter**

9           The only remaining basis for Plaintiff's First Amendment claim against Lingenfelter is

10   Plaintiff's allegation that he pressured Inloes into pursuing a criminal complaint.  *See* Order

11   Granting in Part and Denying in Part Defendants' Motion to Dismiss, ECF No. 126 at 16-18 (July

12   29, 2011) (dismissing other allegations of retaliatory conduct).  However, Lingenfelter states that

13   he never spoke with Inloes prior to Adams' arrest on June 24, 2009 and denies ever asking Inloes

14   to draft a complaint or pursue a criminal complaint against Adams.  Lingenfelter Decl. ¶¶ 3-7.

15   Plaintiff produces no evidence to rebut these sworn statements.  Again, Plaintiff cannot withstand

16   summary judgment on mere speculation of retaliatory intent, without any supporting evidence,

17   direct or circumstantial.  The Court accordingly GRANTS summary judgment on Plaintiff's First

18   Amendment claim as to Lingenfelter.

19                       **2.       California Constitution, Article I, §§ 2 and 3**

20          The Court previously held in its July 29, 2011 Order Denying Plaintiff's Motion for Leave

21   to Amend, and Granting in Part and Denying in Part Defendants' Motion to Dismiss, that

22          [s]hould Defendants be found to have infringed upon Plaintiff's constitutional
            rights, the Court will not grant Plaintiff duplicative damages under both the United
23          States and California Constitutions.  However, should Defendants be found to have
            infringed upon Plaintiff's rights under §§ 2 and 3, but not to have violated Plaintiff's
24          federal rights, the Court will require the parties to provide briefing, with citation to
            relevant authority, on the state law damages question.
25

26   ECF No. 126 at 23.

27

28
                                                  31

1    Plaintiff conceded at the hearing on this motion that his claims under §§ 2 and 3 of Article I

2   of the California Constitution rise and fall with his First Amendment claim.  The Court therefore

3   needs not separately address Plaintiff's claim under the California Constitution.

4   **V.   Qualified Immunity**

5    Defendants also argue that they should be granted qualified immunity because they are

6   entitled to qualified immunity as a matter of law.  Br. at 17.  The doctrine of qualified immunity

7   protects government officials "from liability for civil damages insofar as their conduct does not

8   violate clearly established statutory or constitutional rights of which a reasonable person would

9   have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Lacey*, 649 F.3d at 1130-

10   31.  Because qualified immunity is "an immunity from suit rather than a mere defense to liability . .

11   . it is effectively lost if a case is erroneously permitted to go to trial."  *Mitchell v. Forsyth*, 472 U.S.

12   511, 526 (1985).  For this reason, immunity questions should be resolved "at the earliest possible

13   stage in litigation."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).  If, drawing all

14   reasonable inferences in favor of the nonmoving party, it is clear as a matter of law that the

15   defendants are entitled to qualified immunity, then summary judgment should be granted.  *See*

16   *Wilkinson v. Torres*, 610 F.3d 546, 548 (9th Cir. 2010) (reversing denial of summary judgment

17   where defendants were entitled to qualified immunity as a matter of law).  However, where a

18   defendant's entitlement to qualified immunity turns on genuinely disputed issues of fact, summary

19   judgment is not appropriate.  *See Espinosa v. City and Cnty. of S.F.*, 598 F.3d 528, 532 (9th Cir.

20   2010) (affirming denial of summary judgment where there remained genuine issues of fact

21   regarding whether officers violated plaintiff's Fourth Amendment rights); *Serrano v. Francis*, 345

22   F.3d 1071, 1077 (9th Cir. 2003) ("If a genuine issue of material fact exists that prevents a

23   determination of qualified immunity at summary judgment, the case must proceed to trial.");

24   *Santos*, 287 F.3d at 855 n.12 (finding it premature to decide the qualified immunity issue "because

25   whether the officers may be said to have made a 'reasonable mistake' of law or fact may depend on

26   the jury's resolution of disputed facts and the inferences it draws therefrom").

27

28

**United States District Court**
For the Northern District of California

32

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

1   A public official's shield of qualified immunity is lost only if a plaintiff can establish both

2   that (1) taken in the light most favorable to the party asserting injury, the facts alleged show that

3   the officer's conduct violated a constitutional right, and (2) the right at issue was "clearly

4   established" at the time of the defendant's alleged misconduct.  *Saucier v. Katz*, 533 U.S. 194, 201

5   (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).  "For a

6   right to be 'clearly established,' 'the contours of the right must be sufficiently clear that a

7   reasonable official would understand that what he is doing violates that right."  *Ammons v. Wash.*

8   *Dep't of Social & Health Servs.*, 648 F.3d 1020, 1026 (9th Cir. 2011) (quoting *Anderson v.*

9   *Creighton*, 483 U.S. 635, 640 (1987)); *accord Rodis v. City and Cnty. of S.F.*, 558 F.3d 964, 969

10  (9th Cir. 2009).   The Court has the discretion to decide "which of the two prongs of the qualified

11  immunity analysis should be addressed first in light of the circumstances in the particular case at

12  hand."  *Pearson*, 555 U.S. at 236.

### 1.    False Arrest

14  The basic right to be free from warrantless arrest in the absence of probable cause was

15  clearly established in June 2009.  The immunity inquiry, however, is more specific.  The Court

16  must determine whether it would have been clear to a reasonable officer in Defendants' position

17  that their conduct was unlawful in the situation they confronted, though it is not necessary to locate

18  a prior case "on 'all fours' with the facts of the instant case" for a right to be clearly established.

19  *Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1297 (9th Cir. 2007).

20  Defendants argue that they are entitled to qualified immunity because, even if they were

21  mistaken in their belief that Inloes' statements and their own background knowledge established

22  probable cause, "[a] reasonable officer could believe there was probable cause to arrest under the

23  facts of this case," and thus their mistake of law was a reasonable one.  Br. at 19.  *See Ramirez v.*

24  *City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009).  As previously discussed, however,

25  Plaintiff sets forth evidence creating a genuine factual dispute as to what information Hauck and

26  Kraft had at the time of the arrest, and this factual dispute is also "material to a proper

27  determination of the reasonableness of the officers' belief in the legality of their actions."

28

33

1    *Espinosa*, 598 F.3d at 532.  In determining on a motion for summary judgment whether an officer

2    is entitled to qualified immunity, the Court must resolve all factual disputes in the nonmoving

3    party's favor.  *See Bardzik v. Cnty. of Orange*, 635 F.3d 1138, 1144 (9th Cir. 2011).  Viewed in the

4    light most favorable to the Plaintiff, the facts of this case do not support a reasonable officer's

5    belief that there was probable cause to arrest Plaintiff for either criminal threats or for resisting

6    arrest under California Penal Code §§ 422 and 148.  Defendants are therefore not entitled at this

7    time to qualified immunity against Plaintiff's unlawful arrest claims, and summary judgment on

8    that basis is accordingly denied.

9                                    **2.    Excessive Force**

10           It has long been clearly established law that the use of excessive force in the course of an

11   arrest violates the Fourth Amendment's prohibition against unreasonable seizures.  *See Graham*,

12   490 U.S. at 394.  Nevertheless, Defendants argue that they are entitled to qualified immunity

13   because "[a] reasonable officer could believe . . . that the force used was reasonable."  Br. at 19.

14   More specifically, Defendants argue that a reasonable officer could believe a wrist compliance hold

15   and the use of handcuffs was necessary under the totality of the circumstances, and that "Hauck

16   and Kraft could have believed their use of force to be reasonable because Adams was armed, non-

17   compliant, confrontational, moving his arms about and reaching into his pockets, resisting arrest,

18   and continuing to jerk and pull away even after being handcuffed."  Br. at 20.

19           Again, although Defendants' conclusion that their use of force was reasonable would be

20   correct under their account of the facts, Plaintiff has set forth evidence creating a genuine dispute

21   about the material facts surrounding the circumstances of the arrest and the use of force.  *See*

22   Adams Decl. ¶¶ 18-20 (recounting under oath his version of events); Evans Decl. ¶ 7 (declaring

23   under oath that Adams "did not make any threatening gestures towards the Rangers" and "made no

24   physical moves to resist"); Huerta Decl. ¶ 3 (declaring under oath that "[a]t no time did [Adams]

25   thrust his body towards the arresting officers").  Resolving all factual disputes in the nonmoving

26   party's favor, the Court concludes that no reasonable officer could believe that the use of force

27   applied by Kraft and Hauck in effectuating Adams' arrest was objectively reasonable.  *See Bardzik*,

28

**United States District Court**
For the Northern District of California

34

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

635 F.3d at 1144.  Because the facts, if resolved in Adams' favor, would show that Hauck and Kraft violated his clearly established constitutional rights, Defendants are not entitled to summary judgment on Plaintiff's excessive force claim on the basis of qualified immunity.  *See Winterrowd*, 480 F.3d at 1186; *see also Meredith*, 342 F.3d at 1061 (finding it clearly established that the officers acted unreasonably in "grabb[ing] [the suspect] by the arms, throw[ing] her to the ground, and twist[ing] her arms while handcuffing her," where the suspect "loudly asked . . . to see a search warrant" and "passively resisted" handcuffing, but did not use physical force).

### 3.      Retaliation

Defendants do not appear to argue that they are entitled to qualified immunity against Plaintiff's First Amendment retaliation claims, and therefore the Court need not consider this question.  *See generally* Br.  In any event, the Court finds it was clearly established as of the dates in question that the First Amendment forbids government officials from retaliating against individuals for criticizing government officials.  *See MacKinney v. Neilsen*, 69 F.3d 1002, 1007 (9th Cir. 1995); *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)).  It is a well established "principle that government officials in general, and police officers in particular, may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity." *Duran*, 904 F.2d at 1378 (denying summary judgment on plaintiff's § 1983 claim of retaliatory detention).  Even if a jury ultimately finds that Defendants had probable cause to arrest Plaintiff, thereby extinguishing his Fourth Amendment false arrest claim, it was clearly established as of November 2006 that Plaintiff may still be able to assert a First Amendment retaliation claim.  *See Skoog*, 469 F.3d at 1235 (establishing that a "right exists to be free of police action for which retaliation is a but-for cause even if probable cause exists for that action").

### VI. Punitive Damages

To recover punitive damages against an individual officer in a § 1983 case, a plaintiff must show that the officers' conduct is "motivated by evil motive or intent" or "involves reckless or callous indifference to the federally protected rights of others." *Wade v. Smith*, 461 U.S. 30, 56

35

Case No.: 10-CV-00602-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

(1983); *accord Dubner*, 266 F.3d at 969.  The Ninth Circuit has further explained that "[t]he standard for punitive damages under § 1983 mirrors the standard for punitive damages under common law tort cases," which extends to "malicious, wanton, or oppressive acts or omissions." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (citing *Wade*, 461 U.S. at 49).  Punitive damages may be available in a § 1983 suit "even in the absence of a compensable injury"; indeed, "[i]n such situations 'punitive damages may be the only significant remedy available.'"  *Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1122 (9th Cir. 2008) (quoting *Wade*, 461 U.S. at 55 n.21).

The standard for awarding punitive damages under California law is similar.  Under California law, punitive damages may be appropriate "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294.  Malice may be shown where the defendant exhibits "the motive and willingness to vex, harass, annoy, or injure," *Nolin v. Nat'l Convenience Stores, Inc.*, 95 Cal. App. 3d 279, 285 (1979) (internal quotation marks omitted), or a "conscious disregard of the rights and safety of others," *Potter v. Firestone Tire & Rubber Co*., 6 Cal. 4th 965, 1000 (1993).  A plaintiff may establish malice "by indirect evidence from which the jury may draw inferences." *Taylor v. Superior Court*, 24 Cal. 3d 890, 894 (1979).

Defendants argue that there is no evidence demonstrating oppression, fraud, malice, evil motive, or callous indifference towards Adams.  *See* Br. at 22; Reply at 15-16.  According to Defendants, the "undisputed facts" demonstrate that Defendants' actions were objectively reasonable, supported by probable cause, and fully in accordance with the law.  The record before the Court, however, is far from undisputed.  As discussed above, the Court finds ample disagreement on material facts from which a reasonable jury could infer that the June 24, 2009 arrest was not supported by probable cause, nor was the use of force in effectuating the arrest objectively reasonable, and furthermore that Defendants' conduct was, in reality, motivated by intent to retaliate against Adams for exercising his free speech rights in complaining about the Park Rangers and petitioning for redress of his grievances.  In light of these genuine issues of material facts, the Court finds that Plaintiff has set forth sufficient facts to support a reasonable jury's

36

finding that Defendants' actions were "malicious, wanton, or oppressive." *Dang*, 422 F.3d at 807 (citing *Wade*, 461 U.S. at 49). Accordingly, the Court denies Defendants' motion for summary judgment on the issue of punitive damages.

## VII.        CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion for summary judgment. The Court GRANTS summary judgment in favor of Defendants HAUCK and LINGENFELTER as to Plaintiff's retaliation claims under the First Amendment and Article I, §§ 2 and 3 of the California Constitution. In all other respects and as to all other Defendants, summary judgment is DENIED.

The final pretrial conference remains set for November 7, 2011 at 1:30 p.m., and jury selection will begin on November 14, 2011 at 9:00 a.m.

**IT IS SO ORDERED.**

Dated: October 25, 2011

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

United States District Court
For the Northern District of California